UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          3:16CR00220(AWT)

       vs.

DAVID DEMOS

                   HARTFORD, CONNECTICUT
          Defendant    JANUARY 30, 2017

- - - - - - - - - - - - - - - - x




**STATUS CONFERENCE**




BEFORE:

       HON. ALVIN W. THOMPSON, U.S.D.J.








Corinna F. Thompson, RPR
Official Court Reporter

```
 1
        APPEARANCES:
 2

 3          FOR THE GOVERNMENT:

 4              OFFICE OF THE UNITED STATES ATTORNEY
                915 Lafayette Boulevard,  Room 309
 5              Bridgeport,  Connecticut 06604
                BY:  HEATHER CHERRY, AUSA
 6
                OFFICE OF THE UNITED STATES ATTORNEY
 7              157 Church Street
                New Haven, Connecticut  06510
 8              BY:  JONATHAN N. FRANCIS, AUSA

 9          FOR THE DEFENDANT:

10              MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO
                Chrysler Center
11              666 Third Avenue
                New York, New York  10017
12
            FOR THE DEFENDANT:
13
                DAY PITNEY
14              One Canterbury Green
                201 Broad Street
15              Stamford, Connecticut  06901-2047
                BY:  STANLEY A. TWARDY, ESQ.
16
                DAY PITNEY
17              242 Trumbull Street
                Hartford, Connecticut  06103-1212
18              BY:  DANIEL E. WENNER, ESQ.

19

20

21

22

23

24

25
```

1                          <u>**11:04 AM**</u>

2              THE COURT:  Good morning.  Please be seated

3     everyone.

4              We're hear for a status conference in docket

5     number 3:16CR220.

6              Could I ask counsel to please state their

7     appearances for the record.

8              MS. CHERRY:  For the government, Your Honor at

9     counsel table, AUSA Heather Cherry.  With me is AUSA

10    John Francis, Special Agent Jim O'Connor from SIGTARP.

11    Also with me is Special Agent Jason Green of the FBI and

12    Bob Marston, an investigator with our office.

13             THE COURT:  Thank you.

14             MR. TWARDY:  Your Honor, for the defendant,

15    Stan A. Twardy, Jr.  To my left is the defendant, David

16    Demos, to my right is Peter Chavkin, and to my far left

17    is Dan Wenner.

18             THE COURT:  Thank you.

19             We're here to talk about our schedule.  I'm

20    fighting a losing battle with a cold, so if you don't

21    understand something I say I won't be insulted or

22    offended if you ask me to repeat it, okay?

23             Let me organize my notes here.

24             I thank counsel for their submissions in terms

25    of the proposals for the schedule.  Maybe I'll start

```
 1    with, since I did get the letter from the defense and
 2    its scheduling order after I got the government's
 3    proposal, so maybe I'll just work with the scheduling
 4    order from the defense that is dated January 9, 2017 as
 5    a way to discuss things.  It's the one that has a jury
 6    selection date of April 9th and has the government's
 7    completion of discovery January 31.
 8            What I think I'd like to do first is talk
 9    about the first item on the schedule and Footnote
10    Number 1.  Where do we stand in terms of government's
11    completion of discovery and can the government comment
12    on Footnote Number 1?
13            MS. CHERRY:  Yes, Your Honor.  At this point
14    we have sent over to the defense the discovery related
15    specifically to Cantor Fitzgerald.  So that discovery is
16    in it their possession.
17            As to discovery that relates to related cases
18    of different broker dealers, those -- that data is
19    coming over the month of February.  The defendants
20    requested a specific order and we're trying to send over
21    that discovery in the order that the defense has
22    prioritized.  So it should be done by mid-February,
23    hopefully by February 17th they should have all of
24    that discovery.
25            But as I mentioned, the discovery relating
```

1    specifically to Cantor Fitzgerald and the charges in the

2    indictment and specifically to David Demos, that has all

3    been provided to the defense.

4         THE COURT:  What thoughts does the government

5    have about the defendant's proposed schedule?

6         MS. CHERRY:  Your Honor, as we had mentioned

7    on the earlier teleconference a few weeks prior, we

8    believe that a trial date earlier than 2018 gives us

9    sufficient time for the defense to prepare.  When we

10   were on that call you had mentioned you had some

11   availability in October, so that's why we picked that

12   October 2017 date and then worked backwards.

13        We understand that our proposed scheduling

14   order does have pretrial motions on February 10th and

15   that that's fast approaching and we have no objection to

16   obviously moving that date.  But we do think that an

17   October or fall 2017 date gives them ample time to

18   prepare.

19        THE COURT:  Well, how would you change some of

20   the time frames that the defense seems to have built

21   into their schedule?

22        MS. CHERRY:  Well, I mean, first off, it

23   starts with a discovery -- sorry -- the Rule 12 motions

24   in August of 2017.  So I think we would really just take

25   their schedule and move it up considerably.  We don't

1    really see a need to wait until August for the Rule 12

2    motions to start.  If they wanted to have additional

3    time, for whatever reason, for the Rule 12 motions, I

4    don't think we would object, but I do think that we

5    would then want to still move up some of the other items

6    in the list, the witness list and even the motions in

7    limine so that we could have the trial occur in 2017.

8              THE COURT:  I will say I looked at the -- this

9    is directed to the defense.  I looked at the draft

10   motions that are in the January 26th letter.  I think

11   during the call the defense mentioned, well, there'll be

12   some motions where it'll be more appropriate for us to

13   wait until we get discovery before we file those

14   motions.  But it seems to me that for most of them that

15   that's not necessary.  Even if I were to go with

16   something closer to the defense schedule, I don't see

17   why we should have all the motions backloaded, as I

18   think of it.  It seems to me a lot of these motions, a

19   bill of particulars, for example, there's no need to

20   have discovery to file that motion.  And if they're all

21   filed at once, what happens is everybody who has to look

22   at the motions and evaluate them or respond to them has

23   a big pile of stuff to do all at once, as opposed to

24   getting things spread out over time, and then we can be

25   working on things over time.  So that's a general

1    observation about the defense question.

2              Mr. Chavkin.

3              MR. CHAVKIN:  Your Honor, Peter Chavkin for

4    Mr. Demos.

5              THE COURT:  Yes.

6              MR. CHAVKIN:  First of all, thank you very

7    much for having us in court.  It's a lot easier than the

8    phone --

9              THE COURT:  It is.

10             MR. CHAVKIN:  -- as Your Honor noted.

11             May I take a moment to give a little context

12   for our requests?

13             THE COURT:  Yes.

14             MR. CHAVKIN:  This is a complex case.  And I

15   use that word advisedly.  It's not me or Mr. Twardy or

16   Mr. Wenner saying that.  It's the government and Judge

17   Chatigny.  We're essentially the -- we are going to be

18   the fourth trial that the government will have on quite

19   similar issues.  For us it's the first time.  It

20   requires a tremendous amount of learning, of work

21   through the discovery.  For the government, I suspect

22   they were ready to go, based on certain conversations

23   I've had with them, a year ago.  So they're quite

24   familiar with what they've turned over and we're not.

25   That's the first point I wanted to make.

1          And as I said, and we quoted it in our

2     letters, Your Honor, Judge Chatigny made clear that one

3     of the reasons Nomura, the three-defendant case that's

4     in May was going to be 18 months from arraignment, and

5     the basis for that was his belief that it is an

6     extremely complex case, that there was a good amount of

7     discovery and that there were a number of motions in

8     limine, including, by the way, discovery Rule 17

9     responses, and the government reiterated that in their

10    request for an additional two months.

11          THE COURT:  I read the docket for both Litvak

12    and Nomura, and I read Judge Chatigny's entry there

13    about the joint motion to continue.

14          I know that there's some questions that are

15    not simple in terms of materiality so I understand that.

16    I don't think 18 months is really where he landed

17    though.  Be that as it may, I think -- you're not asking

18    for 18 months.  You're asking for April.

19          I interrupted you.  I'm sorry.

20          MR. CHAVKIN:  Not at all, Your Honor.  I

21    appreciate hearing your thoughts so I can be a little

22    more responsive.

23          Let me, if I may, segue from the complexity to

24    the discovery.  Obviously these are documents the

25    government is producing that they've had for years.  The

1   investigation of Mr. Demos began at least three or more

2   years ago.  So they've had a good deal of comfort and

3   knowledge of the document base.

4          Ms. Cherry is 100 percent correct that they

5   have turned over what they had described as the Cantor

6   documents, but that was only a week ago.  We don't even

7   have the ability to search those documents yet.  No

8   fault of the government's, but the encryption process

9   has made putting 380,000 pages into a searchable format

10  much more difficult and elongated from what it normally

11  would be.  I dare say, Your Honor, no attempt to judge

12  your age, but I'm guessing you have been, as I have, had

13  experience in the days when 380,000 documents was a heck

14  of a lot, or 380,000 pages was a heck of a lot of

15  information and it still is.  We've just gotten

16  accustomed to talking in millions of pages.

17         So we need to familiarize ourselves with those

18  380,000 pages and those are current documents, even from

19  the government's perspective.  They contain the hot docs

20  for this case.  They contain documents related to Cantor

21  Fitzgerald, which is Mr. Demos' former employer.

22         We, unlike what I understood happened in

23  Litvak, the trial that just concluded before Judge Hall,

24  we are going to make a major issue, at least it is our

25  current plan, of intent, not just materiality.

1           I know from Your Honor's comments you're aware

2    of the two issues that loom largest in these cases.

3    Intent requires us to really understand how Cantor

4    itself dealt with Mr. Demos as a trader.  We've heard

5    the government describe before there were a million

6    pages in that bucket.  And again, it may be my

7    misunderstanding, but there were others on our team who

8    heard the same number.  We've gotten 380,000 pages.  I

9    suspect -- and I'm not suggesting for the moment that

10   the government has withheld anything -- but what I'm

11   suggesting is that there very well may be a need for us

12   to issue Rule 17 subpoenas to get additional important

13   information that the government thought was not

14   pertinent to its preparation but we believe is highly

15   pertinent to ours.

16           That is just the tranche of documents that

17   they've turned over.  As I said, the bulk of which, 81

18   documents in the month of January and then the 380,000

19   pages came about a week ago and has not been searched

20   yet.

21           There's going to be -- again, I defer to the

22   government if they have a different number, but they

23   have nearly 30 million pages worth of information

24   relating to other investigations.  And Your Honor may

25   quite reasonably wonder why that has to impede or to

```
 1    slow us down at all.  It's crucial for us to understand
 2    whether any of the alleged victims in this case were
 3    engaged in conduct that could bear on materiality by
 4    virtue of their conduct with other entities.  That's
 5    what I understand we're going to get in those 30 million
 6    pages is not only the alleged victims, but other trading
 7    scenarios with other companies and other parties and
 8    Mr. Demos' role.  That's really important information to
 9    our preparation of this case.
10              I'm all in favor of Your Honor's suggestion --
11    and I suspect Mr. Twardy and Mr. Wenner are too -- that
12    this doesn't all have to be at once.  I totally respect
13    that.  I think that makes a lot of sense to have
14    different milestones for particulars.  That strikes me
15    as probably something we could get done sooner than
16    having it all in one bucket.
17              I'm not sure I can foresee how the motions to
18    dismiss could be front loaded.  I think we're going to
19    need the discovery to make a full -- to have a full
20    understanding and a full ability to make those motions,
21    both as a matter of law -- and I think we've alluded to
22    this, Your Honor, in our letters -- as a matter of law,
23    as a matter of fact and as a matter of selective
24    prosecution, recognizing the last is a tall burden, I
25    note, and I'm sure the Court is aware too.
```

1          THE COURT:  Yes.

2          MR. CHAVKIN:  So in terms of both motion

3   preparation and pretrial preparation, there is an

4   extraordinary amount of work that we still need to do.

5   And as I mentioned, that's before we even get to issue,

6   and hopefully the Court will so order, pretrial

7   production by Rule 17 of vital information from the

8   number of entities and a number of individuals which I

9   believe, if I'm not mistaken -- and Your Honor probably

10  knows better than I -- that was itself a source of

11  litigation in Nomura, according to Judge Chatigny.

12          THE COURT:  I read the docket sheet.  I didn't

13  read any filings.

14          Do counsel for the government know about that,

15  Rule 17(c)?

16          MS. CHERRY:  I think that there was some

17  discussion about Rule 17 motions, both with Judge

18  Chatigny and then obviously between defense counsel and

19  the counter parties that they had requested the Rule 17

20  information from.

21          MR. CHAVKIN:  Finally, Your Honor -- I

22  appreciate you indulging me this long -- there are the

23  experts.  They are vital, as Your Honor knows from the

24  Second Circuit opinion.  The failure to allow experts in

25  the first Litvak trial was one of the reasons it was

1    sent back for a second trial.  The defense did call an

2    expert in Litvak.  Your Honor, I apologize if you're

3    already aware of this but there were nine not guilty

4    verdicts out of ten in Litvak.  I say that because that

5    helps put all of what we're doing in perhaps a better

6    framework for the Court.  These are, at best for the

7    government -- and I'm speaking as an advocate -- at best

8    for the government, these are close questions, and a

9    detailed and rigorous review of the data that we're

10   getting in the form of discovery under Rule 17 is going

11   to be vital to that, as is our ability to retain good

12   experts, who are currently tied up, at least some we

13   would consider retaining are currently tied up preparing

14   for the Nomura trial in early May.  And frankly, we

15   would love to see how they do in that trial before we

16   know who we're going to be retaining and what

17   disclosures we're going to make to the government once

18   we retain them.

19        So I think that pretty much covers the

20   difficulties we face in anticipating why we have

21   established the timeline as we have.

22        THE COURT:  And when do you see the Rule 17(c)

23   subpoenas being issued?

24        MR. CHAVKIN:  Well, in fairness to the Court,

25   we'd like to make sure we don't have that information

1     already in the discovery, but we haven't been through --

2     we haven't been able to get through the bulk of it

3     because of the encryption process.  And then there's

4     going to be a good deal more coming as I understand from

5     Ms. Cherry in February.

6               THE COURT:  Right.

7               MR. CHAVKIN:  So I think I can fairly say we

8     could have Rule 17s for the Court's review by mid-March.

9               THE COURT:  Okay.

10              MR. CHAVKIN:  Or thereabouts.  I hate to

11    renege on a promise.  Maybe the end of March.

12              THE COURT:  I notice it's not on your schedule

13    and I'm not asking for a specific date.  I just wanted

14    some sense of things.

15              MR. CHAVKIN:  In fairness to the Court, we'd

16    like to get it in as early as possible.  The Court will

17    obviously need time to review them, and then the

18    production may be hundreds of thousands of pages that

19    we'll need to review.

20              THE COURT:  Thank you.

21              MR. CHAVKIN:  Thank you.

22              THE COURT:  Does the government have anything

23    else it wants to add, Ms. Cherry?

24              MS. CHERRY:  May I have a moment, Your Honor?

25              THE COURT:  Take your time.  I'm looking at a

1    couple of things anyway.

2                (Pause.)

3                MS. CHERRY:  Your Honor, I just wanted to, for

4    the record, add just a little more information about the

5    experts.  In the Litvak trial they noticed four experts.

6    They called one of those four.  In U.S. v Shapiro, they

7    have noticed four experts.  Obviously, we don't know how

8    many they will call.  There's an abundance of experts.

9    We also don't think it's appropriate to delay a trial to

10   figure out if you liked the way an expert performed in

11   the upcoming U.S. v Shapiro trial.

12               THE COURT:  I don't think that's the only

13   reason.  I agree with that principle.

14               MR. CHAVKIN:  As do we, Your Honor.

15               THE COURT:  The indictment in this case was

16   returned December 7, 2016.

17               MS. CHERRY:  Yes, Your Honor.

18               THE COURT:  So October 10th jury selection

19   date would be roughly ten months.

20               MS. CHERRY:  Yes, Your Honor.

21               THE COURT:  Which would be even faster than

22   Judge Hall's case, I believe.

23               MS. CHERRY:  Yes.  Partly that was due to

24   conflicts.  Judge Hall had another trial prior to the

25   Litvak trial at the end of last year.

1          THE COURT:  I guess I find persuasive the

2     point that the government's had these documents quite a

3     while and is familiar with these cases and it will be

4     the government's third or fourth case -- third case,

5     fourth trial.

6          MS. CHERRY:  Yes, Your Honor.

7          THE COURT:  And the defense counsels' first.

8     So I'm inclined to gravitate in the direction of the

9     defense's requests because I think they've given me

10    specific reasons for specific time frames.

11          I do want to make a couple of adjustments.  I

12    think I mentioned the point about the motions.  I'd like

13    to have those in at least two tranches.

14          And the other thing I'm going to want to do is

15    have periodic status conferences because, in my

16    experience in a case of this type, that helps me keep

17    abreast of what issues may be lurking in the background

18    and it will help us keep on schedule.  Because I would

19    like to, given the fact that I'm going to have a

20    schedule that is a little more extended than the

21    government would like, and the more extended the

22    schedule, the more issues tend to come up, I think

23    staying on the schedule will be particularly

24    appropriate.

25          There isn't any mention in the defendant's --

1    have there been any Daubert hearings in any of these

2    cases?

3          MS. CHERRY:  No, Your Honor.

4          THE COURT:  And I assume by the time we get to

5    the expert disclosures in this case, everybody will have

6    been through this dynamic enough that you'll have --

7    you'll know what to anticipate so you'll make all the

8    issues that could be there for me go away.

9          So I guess what I'd like to do is I'm thinking

10   just a quick telephonic status conference maybe every

11   three weeks.  Does that seem too frequent to counsel or

12   not frequent enough?

13         MS. CHERRY:  We defer to the Court.

14         THE COURT:  We'll start with every three

15   weeks.  What I'd like to do is I set the next two

16   conferences so that we don't have to get on one

17   conference and have a long time to figure out when the

18   next one is and people's schedules aren't filled up.

19         So maybe I'll have my law clerk caucus with

20   people before you go.  I think usually 4:00.  If I have

21   a trial that day, I'll just end early.  If people have

22   issues that they're going to want to raise or concerns

23   they're going to want to raise, you can circulate an

24   e-mail beforehand so everybody knows what we want to

25   talk about.  So we'll have our first conference in

1    roughly three weeks and then we'll pick the date for the

2    next one too.

3              And then let's talk about Tranche 1 of the

4    motions, or whatever you want to call it, Phase 1 of the

5    motions, a deadline for those.

6              What works?

7              MR. CHAVKIN:  Your Honor, if phase one

8    includes a motion for a bill of particulars, any venue

9    motion if we think there's one that's appropriate, I

10   think -- what I would suggest is the end of March for

11   those.

12             THE COURT:  I want to get the government's

13   input too, because what I'd like to know, from the

14   government's perspective, what motions is the defense

15   well equipped to file by the end of March, and then if

16   there's disagreement over them, I'll ask the defense to

17   explain what's the rationale for having it in the second

18   phase and then I'll decide which ones are in which

19   phase.  But if there's one that the should be filed in

20   the first phase, we'll know it's either filed or it's

21   waived.

22             Fair enough?

23             MS. CHERRY:  Yes, Your Honor.  I think the

24   government thinks that the Rule 12 motions can be filed

25   in this first phase, which would include a bill of

1     particulars as well as any motion to dismiss because the

2     face of the indictment is not correct.  I think that's

3     our understanding.  That's sort of what we had intended

4     to include when we originally said Rule 12 motions in

5     February.

6             THE COURT:  Mr. Chavkin.

7             MR. CHAVKIN:  Yes, Your Honor.  The problem we

8     have with the Rule 12 motion is not based on what

9     Ms. Cherry described.  If it were simply whether the

10    words in the indictment are sufficient, I think we can

11    safely make those, along with a bill of particulars.

12    We're going to be making a motion to dismiss based on

13    the indictment alleging, and with the underlying facts

14    that we're going to be getting through discovery

15    elucidated, we're going to make the motion to dismiss

16    for failure to plead materiality as a matter of law,

17    which we'll bring to the Court's attention.  There are

18    cases actually in the Second Circuit where a de minimis

19    injury is considered by the circuit to equate with

20    immateriality as a matter of law.  So that would be one

21    motion.  That requires us to really understand better

22    what the potential injury was if the government is right

23    in the indictment.

24           And then the other one will be a motion to

25    dismiss the indictment based upon insufficient facts.

1      Now, I recognize, and the Court has been around long

2      enough to be probably skeptical of that motion being one

3      that's appropriate pretrial, but there is case law in

4      certain circumstances where it is absolutely clear, as

5      we will contend, that the underlying facts in this case

6      do not support materiality.  And we're going to be able

7      to know that from the discovery and we're going to know

8      that based on certain things that transpired in the

9      government's presentation during Litvak.

10             I would really beseech the Court to give us

11      extra time for the motions to dismiss the indictment.

12             I'm perfectly content, Your Honor, to have an

13      earlier date for the bill of particulars, for any venue

14      motion.  And if we were to make a motion that the

15      literal words, express words used in the indictment are

16      insufficient, we could also have that in that first

17      phase as well.

18             With respect to the other Rule 12 motions, we

19      desperately need the time to review the discovery to be

20      able to make those intelligently.

21             THE COURT:  And at this point you've

22      identified two other Rule 12 motions.

23             MR. CHAVKIN:  Well, there's one other, Your

24      Honor, which is the selective prosecution motion.  I may

25      have alluded to that earlier.

1          THE COURT:  You mentioned it earlier but not

2     just now.

3          MR. CHAVKIN:  I should have.  I don't know

4     whether the government would put that into the Rule 12

5     category but some might.  So if that's considered a

6     Rule 12 motion, we need more time on that as well.

7          THE COURT:  Why do you need more time on that?

8          MR. CHAVKIN:  Well, the problem -- what we're

9     going to be addressing there is a comparison of

10    Mr. Demos' circumstances to the circumstances of others

11    who were not charged.  So there's a little more work we

12    need to do to understand.  It's essentially an equal

13    protection argument, although I will tell you right up

14    front, Your Honor, it's not based on a suspect

15    classification claim.

16         THE COURT:  I've had selective prosecution

17    motions before.  Not many, and not in this context

18    certainly.

19         MR. CHAVKIN:  Yes, Your Honor.  That's why I

20    say it is somewhat unusual, but Judge Rakoff in the

21    Gupta case began to explore the legal basis for that

22    kind of selective prosecution where there's not a

23    suspect classification.  We would like extra time on

24    that because we want to make sure we've garnered the

25    necessary facts to make the comparison.

```
 1              THE COURT:  That sounds reasonable.

 2              MR. CHAVKIN:  Thank you.

 3              THE COURT:  What verbiage works for you in

 4   terms of working?  Group 1?  Phase 1?  Tranche 1?

 5              MR. CHAVKIN:  I like any of them.

 6              THE COURT:  I'll just call them group.  That's

 7   simple.  Group 1, end of March for Group 1 and I'll have

 8   the scheduling -- briefing schedules that we have for

 9   the other motions.  Do those work for counsel?

10              MS. CHERRY:  Your Honor, given that now

11   Group 1 is essentially it sounds like a bill of

12   particulars and the words on the face of the indictment,

13   we would just request that maybe we could move up the

14   date from the end of March maybe to the beginning of

15   March, knowing that we do have another trial coming up.

16   It doesn't seem like there's additional discovery needed

17   or really a whole lot of additional work.

18              THE COURT:  I'm sure the defense is happy to

19   accommodate you.

20              MR. CHAVKIN:  I was just going to suggest in a

21   very Solomonic way that maybe we could split it and do

22   the middle of March.  We're comfortable with that.

23              THE COURT:  Ms. Cherry, is that equally --

24              MS. CHERRY:  Again, we would ask for something

25   as early as possible.
```

 1           THE COURT:  I'll make it March 1 and then you
 2    owe one.  How's that?
 3           And then so what I'm going to do is I'm going
 4    to take this and do a draft and circulate it to people
 5    just to make sure that you think it is what we
 6    discussed.  We'll also get those two dates for the first
 7    two status conferences.
 8           I'm looking over at the second page where
 9    right after we have -- look at December 1st.  We have
10    the government's witness list and then we have the
11    government's exhibit list and exhibits.  Then we have
12    the defendant's witness list and we have the defendant's
13    exhibit list and exhibits for defendant's case in chief.
14    Was that intentionally left out in the government's
15    entry there for December 1, the reference to case in
16    chief?
17           MR. CHAVKIN:  I think the notion was that it
18    was put in for the defendant's side because we don't
19    know what we're going to use to cross-examine, to
20    distinguish between any exhibit we might use to
21    cross-examine, Your Honor, as opposed to what we put on,
22    if we put on a case in chief.
23           THE COURT:  Well, when the defense puts its
24    case on, the government is going to be cross-examining
25    defense witnesses too.

1            MR. CHAVKIN:  Correct.

2            THE COURT:  They're not required to disclose

3     those exhibits on December 1.

4            MR. CHAVKIN:  That's correct.

5            THE COURT:  So I was assuming the government

6     would only be disclosing its exhibits for its case in

7     chief also.

8            MR. CHAVKIN:  Yes.

9            THE COURT:  So I'll add "case in chief."

10            MR. CHAVKIN:  Absolutely, Your Honor.

11     100 percent.

12            MS. CHERRY:  Your Honor, I think the

13     government would request that our witness list and

14     exhibit list would be exchanged simultaneously with the

15     defendant's exhibit list and witness list, instead of a

16     14-day interim period, 15-day interim period.

17            THE COURT:  What's the rationale for the lag

18     time?

19            MR. CHAVKIN:  So as Mr. Wenner aptly points

20     out, it was just to eliminate duplication.  I don't

21     think we feel strongly about it.

22            THE COURT:  I'll make them simultaneous.

23            I'm going to just check to see.  October 20

24     works for me so I'm going to block that out for the

25     hearing.

1          I have noticed that we're looking at a couple

2     weeks for trial, two to four I think is what I wanted to

3     make sure I had available, but at least a couple weeks

4     and maybe four.

5          MR. CHAVKIN:  I think that's perfectly

6     correct.

7          THE COURT:  I think I have some meetings I

8     attend and there's one that's April 11 to the 14, or 12,

9     13, 14, but I may have to travel.  So I think we might

10    want to do jury selection on the 17th of April and

11    start evidence on the 23rd.

12         Yes?

13         MS. CHERRY:  Your Honor, if I may, if we can

14    just go back to the expert notice.

15         THE COURT:  Yes.

16         MS. CHERRY:  The date is November 10, 2017 as

17    defense counsel laid out in their scheduling order.  The

18    government would suggest that maybe we could move that

19    up some since there may be motion practice around that

20    expert notice.  There has been considerable back and

21    forth in the Nomura case.  So we thought, just to give

22    as much time as we could prior to the trial, so that

23    both parties can get ready for the trial appropriately,

24    we might move that up.

25         THE COURT:  How much time do you think we'll

1    need for any issues that need to be resolved?

2           You're talking about there have been issues

3    raised with respect to the government's experts?

4           MS. CHERRY:  No.

5           THE COURT:  Or the defense experts?

6           MS. CHERRY:  The government has not noticed

7    any experts.  When the defense noticed their experts,

8    there was considerable motion practice as to the

9    sufficiency of the notice and then there was some back

10   and forth as to the notice, and the government just

11   wants to make sure that all of that is done with plenty

12   of time to then prepare for their cross of the experts

13   at trial.  So maybe if we can move that up a month or

14   two.

15          MR. CHAVKIN:  Your Honor, it's six months in

16   advance of trial, as currently stated.  We will apprise

17   ourselves of the back and forth on the experts in Nomura

18   so we can avoid as much as possible any of the issues

19   Ms. Cherry is raising in terms of adequate notice.  This

20   particular date was chosen because of the difficulties

21   of determining who our experts will be and what they

22   will disclose.

23          THE COURT:  Maybe what we can do is sort of a

24   blended approach.  Maybe what we can do is prior to the

25   expert notice and summary deadline have a conference

1    where we talk about what the expectations and

2    assumptions are with respect to those disclosures and

3    what's been deficient in other cases so we at least know

4    people are on notice that that's not going to be the

5    case.

6              I mean what frequently happens with these

7    issues is the disclosure is made and then people review

8    the reports and then there's briefing and then we have

9    to find a date to have a hearing.  So what we also ought

10   to do is have a date blocked out for a hearing with

11   respect to any issues with respect to experts.

12             MR. CHAVKIN:  We would welcome that and also

13   Your Honor's thought about --

14             THE COURT:  And then we'll have a

15   pre-disclosure date conference.

16             MR. CHAVKIN:  That would be great.

17             THE COURT:  I don't know what the issues were

18   that were raised in Nomura, but I have had cases where

19   there were deficiencies and disagreements about whether

20   there were deficiencies.

21             Anything else that anybody can think of?

22             MR. CHAVKIN:  Your Honor, not on the subject

23   of the scheduling.

24             THE COURT:  Okay.  Anything else?  Any other

25   subjects then?

1             MR. CHAVKIN:  I hesitate to --

2             THE COURT:  That was a suggestion.

3             MR. CHAVKIN:  I hesitate to bother the Court

4      with this.

5             THE COURT:  That's okay.

6             MR. CHAVKIN:  Mr. Demos' travel allows him to

7      go to Vermont on notice to Pretrial.  And he is -- he's

8      made a promise to his pretrial officer who asked him to

9      ask the Court --

10            THE COURT:  Who is his pretrial officer?  I

11     don't remember.  What's the first name?

12            MR. CHAVKIN:  Jorge has asked Mr. Demos to ask

13     the Court through us to extend his travel without

14     notice, or without permission being asked of pretrial,

15     because apparently it adds to their workload and they

16     would appreciate, with the frequency with which he goes

17     to Vermont, not having to do that.

18            THE COURT:  What office is the person who's

19     supervising you in?

20            MR. CHAVKIN:  In Bridgeport.

21            THE COURT:  Let me look that up.  I'll contact

22     the pretrial services officer.

23            Do you know who it is?

24            MS. CHERRY:  I was just going to say that the

25     government has not been made aware of that request

1     either by defense or probation.  So we just want to

2     alert the Court of that.

3               THE COURT:  I will follow up with the

4     probation officer.

5               MR. CHAVKIN:  Terrific, Your Honor.  Thank

6     you.

7               THE COURT:  Usually they send me a memo and

8     copy counsel.  I'll have them do that so we have our

9     regular procedure followed.

10              MS. CHERRY:  Thank you, Your Honor.

11              THE COURT:  Anything else that anybody can

12    think of?

13              MR. CHAVKIN:  No, Your Honor.  Thank you so

14    much for having us.

15              MR. FRANCIS:  Your Honor.

16              THE COURT:  Yes, Mr. Francis?

17                  (Pause.)

18              MR. FRANCIS:  I'm sorry, Your Honor.  We just

19    raised something that was discussed among the parties to

20    see whether or not they want to raise it.  If you would

21    bear with us a moment?

22              THE COURT:  Sure.  I'm talking with my team

23    here about something else.

24                  (Off the record.)

25              MR. CHAVKIN:  Your Honor, one last issue that

1    relates to the bond.  Mr. Demos was released on a PRB

2    that was a guaranteed -- secured by his home.  We have

3    asked the government to consider whether they would take

4    the home out of security and in its place put $250,000

5    in cash.  I don't want to speak for Ms. Cherry.  I

6    believe they're taking no position on that.  Not

7    objecting but not endorsing.

8              THE COURT:  What I like to do, so I keep

9    track, just file a motion and I will consult with the

10   probation office and just make sure they don't have any

11   questions or concerns.

12             MR. CHAVKIN:  Thank you, Your Honor.

13             THE COURT:  When you did the home, was a

14   mortgage filed and all that or was it just an agreement?

15             MS. CHERRY:  We don't know, Your Honor.  We

16   were just talking amongst ourselves at the table.  We

17   thought the dollar amount that was secured for was

18   higher than $250,000, but we don't remember.

19             THE COURT:  A motion might be helpful just so

20   everybody has a chance to process things and

21   double-check things.

22             MR. CHAVKIN:  Will do, Your Honor.

23             THE COURT:  Okay.  Thank you.

24                 (Whereupon, a recess followed.)

25

```
1                    C E R T I F I C A T E

2

3              UNITED STATES V DAVID DEMOS

4                    3:16CR00220(AWT)

5

6

7         I, Corinna F. Thompson, RPR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages, pages 1 - 30, are a true and accurate

11   transcription of AN EXCERPT OF my shorthand notes taken

12   in the aforementioned matter on January 30, 2017, to the

13   best of my skill and ability.

14

15

16

17

18              /s/_____

19              CORINNA F. THOMPSON, RPR
                  Official Court Reporter
20              450 Main Street, Room #225
                Hartford, Connecticut 06103
21                   (860) 547-0580

22

23

24

25
```