UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:16CR220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| DAVID DEMOS | : | May 12, 2017 |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S OMNIBUS SUPPLEMENTAL MOTION

The United States submits this opposition to the defendant David Demos's omnibus supplemental motion [Dkt. #58]. That motion seeks (1) a bill of particulars to identify the victim of Count Three, or, in the alternative, to dismiss that count, Def's Mem. [Dkt. #59] at 3-5, (2) to strike the phrase "including but not limited to" from the paragraph of the Superseding Indictment identifying victims of the charged scheme, *id.* at 6-8, and (3) to preclude the Government from offering evidence of any other fraudulent trades conducted by Demos as part of the alleged scheme other than the six charged in the Superseding Indictment, *id.* at 8-12. Because Demos's arguments for his requested relief are without merit, the Government respectfully requests that the Court deny his supplemental motion in its entirety.

## BACKGROUND

For a summary of the charged scheme to commit securities fraud, we respectfully refer the Court to the background section found at pages 1-4 of the Government's opposition to Demos's original "Group I" motion [Dkt. #51].

Demos's supplemental motion arises from two procedural events that occurred after he filed his "Group I" motion. First, on March 21, 2017, the Grand Jury returned a Superseding Indictment [Dkt. #47] that corrected typographical errors (that the Government had previously brought to the defense's attention) and named the victims of the exemplary fraudulent trades (to

conform with the Government's policy regarding identification of victims). Second, on March 6, 2017, the Government clarified its position regarding "other crimes" evidence under Federal Rule of Evidence 404(b) by sending an email to the defense stating:

> In reviewing your motion to dismiss, we noticed that you commented that the Government did not provide you with notice of other crimes or bad acts evidence it intends to offer in its case in chief, pursuant to Fed. R. Evid. 404(b). To eliminate any ambiguity, this email provides notice that the Government does not currently intend to offer any 404(b) evidence in its case-in-chief against the defendant. Of course, the Government's investigation is ongoing and if the Government finds any new 404(b) material against the defendant, it reserves its right to offer notice of and use such evidence.[1]
>
> Please note that the above concerns only 404(b) evidence. The Government will certainly introduce evidence in its case-in-chief concerning the defendant's acts, misrepresentations and omissions in connection with bond transactions not referenced in the Indictment which were part of the charged scheme to defraud. The Government is not required to provide notice of such evidence under 404(b). Nonetheless, in the spirit of cooperation and to avoid unnecessary motion practice, the Government intends to provide you with a list of any uncharged trades that it intends to offer as part of the charged scheme in its case-in-chief on December 1, 2017, when the parties exchange witness and exhibit lists.

Ex. A to Def's Mem.

## **ARGUMENT**

Rather than take up Demos's intemperate rhetoric, the Government addresses its opposition to the merits (or the lack thereof) of his legal arguments.

---

[1] Demos claims to find it "remarkable" and "of some concern" that the Government continues to investigate this case. Def's Mem. at 2, 12. As the Court knows (and as defense counsel can likely personally attest from their prior experience as federal prosecutors), the Government never stops investigating an ongoing matter. By requesting a 17-month delay between his indictment and trial, Demos elected to take the risk that the Government may find additional inculpatory evidence.

## I. THE COURT SHOULD DENY THE MOTION FOR A BILL OF PARTICULARS IDENTIFYING THE VICTIM OF COUNT THREE

Demos moves for a bill of particulars identifying the victim of Count Three.[2] Def's Mem. at 3-5. Because he is already on notice that the victim of Count Three is DW Investments, the Court should reject this application.

A bill of particulars is necessary "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quotation marks and citation omitted). In weighing a motion for a bill of particulars, "the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000). "Generally, if the information sought by the defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). *See also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.") (quotation and citation omitted). Extensive disclosure of documents and testimony is one such "acceptable alternate form." *Bortnovsky*, 820 F.2d at 574. Courts have also taken into account a prosecutor's explanation to the defense of the charges and its offer to provide all relevant documents in

---

[2] This request is duplicative of Demos's prior motion for a bill of particulars that answers, *inter alia*, "[t]o whom was the device, scheme, artifice to defraud or untrue statement of fact or omission to state a fact made?" Def's "Group I" Mem. [Dkt. #45] at 38. Rather than re-iterate its entire opposition to Demos's broader motion, herein the Government address only Demos's current, more limited application for a bill of particulars.

denying a bill of particulars. *See United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984); *United States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004).

Demos knows or should know the victim of Count Three. First, the Government identified for the defense "hot" documents relevant to the six charged trades, which were the Government's grand jury exhibits; Grand Jury Exhibit 14 is the only "hot" document containing statements by Demos in connection with the Count Three trade, and is a chat between him and DW Investments. Second, the Government produced grand jury transcripts to the defense;[3] pages 67-71 of the December 7, 2016 transcript and page 31 of the March 21, 2017 grand jury transcript each identify the victim of Count Three as DW Investments. Third, when counsel met on April 15, 2017 to discuss Demos's supplemental motion, counsel or the Government explicitly stated that the victim of Count Three is DW Investments.

A bill of particulars identifying the victim of Count Three is therefore unnecessary to the defense's preparation for trial because it already has that information.[4] Accordingly, the Court should deny Demos's motion.

## II. THE COURT SHOULD DENY THE MOTION TO STRIKE THE PHRASE "INCLUDING BUT NOT LIMITED TO"

Demos moves to strike the phrase "including but not limited to" from paragraph 4 of the Superseding Indictment on the grounds that it unconstitutionally expands the charge. Def's Mem. at 6-8. Paragraph 4 alleges that "DEMOS's victims are known by the Grand Jury to have been certain of Cantor's customers, including but not limited to the institutions described in Paragraphs 7 and 8," which are the victims Ellington Financial and Marathon Asset

---

[3] In preparing this brief, the Government learned that the December 7, 2016 grand jury transcript had inadvertently been left out of its production and rectified the oversight.

[4] Demos's alternative request that the Court dismiss Count Three also fails for the same reason.

Management, respectively. There is no constitutional violation in the use of open-ended language in this type of allegation, and Demos's application is meritless.

Typically, a motion to strike is "only granted where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'" *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *see also United States v. Mulder,* 273 F.3d 91, 99-100 (2d Cir. 2004). Here, however, Demos raises a constitutional challenge as to whether "including but not limited to" impermissibly expands upon the crime charged by the Grand Jury. Demos misinterprets the leading case in this area, *United States v. Pope*, 189 F. Supp. 12 (S.D.N.Y. 1960), as imposing a blanket prohibition on open-ended language in indictments.

In *Pope*, Judge Weinfeld struck the indefinite phrase "among other things" from "the charging paragraph of each count," which alleged that the defendants' statements were "false and misleading 'in that, among other things,'" they contained a specific falsehood. 189 F. Supp. at 24-25 & n.48. *Pope* and the cases that followed establish that indefinite language—such as "including but not limited to"—should be stricken only from charging paragraphs. *See United States v. Kassir*, No. S2 04 Cr. 356(JFK), 2009 WL 995139, at *3 (Apr. 9, 2009) ("The problem identified in *Pope* only arises, however, if the broadening language appears in a charging paragraph."). For instance, in a later case akin to this one, Judge Weinfeld distinguished *Pope* and refused to strike the phrase "among others" from an indictment because it was "contained in the means paragraph, which goes to the matter of proof to sustain the charges." *United States v. Mayo*, 230 F. Supp. 85, 86 (S.D.N.Y. 1964). *See also United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (bill of particulars defining indictment phrase "among other things" was not constructive amendment because "[t]he acts alleged in the Bill regard the 'matter of proof to sustain' the charges in the indictment"); *United States v. Caine*, 441 F.2d 454, 456 (2d Cir. 1971)

(decided on other grounds, but noting in *dicta* that distinction between indefinite language in means and charging paragraphs is "not without force"); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976) ("[T]he reference to 'by other means' in the indictment in question here goes only to the matter of proof and does not constitute a basis for asserting that the notice provided in Count 2 is constitutionally defective."); *United States v. Mostafa*, 965 F. Supp. 2d 451, 467 (S.D.N.Y. 2013) (open-ended phrases in "sections of the indictment which go to means and methods do not create the same issue"); *United States v. Gupta*, No. 11 Cr. 907(JSR), 2012 WL 1066804, at *2 (S.D.N.Y. Mar. 27, 2012) (phrases "for example" and "among other things" in indictment "do not in any material respect broaden or otherwise alter the essential allegations of the crimes charged, *i.e.*, conspiracy and substantive insider trading, but simply indicate that the Government's proof of the charges will not be limited only to certain items of proof that the indictment specifies"); *United States v. Washington*, 947 F. Supp. 87, 90 (S.D.N.Y. 1996) ("[W]hen a means paragraph, which refers to the matter of proof to sustain the charges, contains surplusage, a court should not strike the language."); *United States v. DePalma*, 461 F. Supp. 778, 798-99 (S.D.N.Y. 1978) (distinguishing between "charging" paragraphs, which describe gravamen of an offense, and "means" paragraphs, which alleges "matter of proof to sustain the charges").[5]

Here, paragraph 4 is not a charging paragraph, insofar as it does not set forth the gravamen of the charged crime of securities fraud. Instead, this paragraph deals with the scope

---

[5] Demos's attempts to confine this rule to conspiracy cases (Def's Mem. at 7 n.7) is unfounded. In *Mayo*, Judge Weinfeld reasoned that indefiniteness is tolerable in a means paragraph by analogizing it to an allegation of overt acts, but did not limit his logic to conspiracy cases: "The Court agrees with the prosecution's position that accordingly they *are to be equated* to allegations of overt acts in a conspiracy charge where the government is not required to set forth all the acts relied upon to effectuate the conspiracy." *Mayo*, 230 F. Supp. at 86 (emphasis added). In any event, courts have accepted indefinite language in non-charging paragraphs bearing on crimes other than conspiracy. *See, e.g., Rigas*, 490 F.3d at 237 (conspiracy, securities fraud and bank fraud); *Gupta*, 2012 WL 1066804, at *2 (conspiracy and securities fraud); *Washington*, 947 F. Supp. at 88, 90 (tax evasion).

of the alleged scheme and puts Demos on notice that the Government's proof will include evidence that his victims included customers other than Ellington and Marathon. The Superseding Indictment's charging paragraph (¶ 26), does not use open-ended language such as "including but not limited to" and specifically identifies the six RMBS trades that the Grand Jury charged as fraudulent. These are the six counts of securities fraud which Demos will face at trial, and they are in no way expanded upon because a previous non-charging paragraph alleges the scheme (that these six trades were made in furtherance of) had more than two victims.

Because there is no constitutional defect in the Superseding Indictment's use of the phrase "including but not limited to," the Court should deny Demos's motion to strike.

## III. THE COURT SHOULD DENY THE MOTION TO PRECLUDE EVIDENCE OF UNCHARGED CONDUCT OFFERED TO PROVE THE ALLEGED SCHEME

Demos argues that the Government should be precluded from offering proof of any "uncharged conduct"—specifically, RMBS trades in which he made misrepresentations in furtherance of the alleged scheme—claiming that (1) the Superseding Indictment "expressly circumscribes the 'scheme' to the six expressly charged transactions" and (2) such evidence "does not qualify as 'scheme' evidence as a matter of law." Def's Mem. at 9. Both of these rationales are incorrect, and the Government should be permitted to introduce evidence of uncharged trades that were part of the fraudulent scheme, just as is it was able to do in both trials before Judge Hall in *United States v. Litvak*, 3:13-cr-19 (JCH), and as it is currently doing in the trial before Judge Chatigny in *United States v. Shapiro*, 3:15-cr-155 (RNC).

As it wrote in its email to the defense, the Government does not intend to offer in its case-in-chief evidence of Demos's "other crimes" under Federal Rule of Evidence 404(b). However, the Government does intend to prove the securities fraud scheme alleged against

Demos, including with evidence of his fraudulent misrepresentations in trades other than the six charged in the Superseding Indictment.

A. **Demos's Alleged Scheme Is Broader Than The Six Charged Trades**

Like many fraud offenses, the charged securities fraud statute prohibits schemes to defraud. 15 U.S.C. § 78j(b) (incorporating 17 C.F.R 240.10b-5, which states "[i]t shall be unlawful for any person…[t]o employ any device, scheme, or artifice to defraud…in connection with the purchase or sale of any security."). In a mail or wire fraud prosecution, the charged mailings or use of interstate wires almost never constitute a scheme in and of themselves, and the Government is permitted to put on evidence of the entire fraud. Similarly, here, the six charged trades were made in furtherance and are executions of Demos's alleged scheme to defraud in RMBS bond trades.

Demos argues that the Superseding Indictment limits the alleged scheme to the six charged trades by using the phrase "to wit" in paragraph 26. Paragraph 26 (entitled "Executions of the Scheme") sets forth the counts against Demos:

> Beginning in approximately November 2011 and continuing until approximately February 2013,…DAVID DEMOS…in connection with the purchase and sale of securities, to wit, the RMBS set forth below, would and did use and employ manipulative and deceptive devises and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by (i) employing the aforementioned devices, schemes and artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary to make the statement made not misleading in light of the circumstances under which they were made; and (iii) engaging in acts, practices and course of business that would and did operate as a fraud and deceit on purchasers and sellers of such securities as set forth below, each constituting a separate count of this Indictment….

Superseding Indictment ¶ 26 [Dkt. #47] (emphasis added). This is standard charging language, virtually identical to that used without controversy in the *Litvak* indictment. *United States v.*

*Litvak*, 3:13-cr-19 (JCH), Dkt. #1. Read in context, the phrase "to wit" in paragraph 26 specifies that the "the purchase and sale of securities" are the enumerated "RMBS set forth below." No plausible reading of that paragraph would construe "to wit" as imposing a restriction on the "aforementioned devices, schemes and artifices to defraud" that is alleged three lines and several clauses later.

Moreover, the "aforementioned devices, schemes and artifices to defraud" language in paragraph 26 refers to the preceding section, "The Scheme and Artifice," which extends from paragraphs 15 to 25. That section describes Demos's scheme at length:

- Paragraph 15 alleges his scheme's time period ("Between in or about November 2011 and February 2013"), location ("in the District of Connecticut and elsewhere"), and existence (using standard securities fraud charging language);

- Paragraph 16 alleges his scheme's financial purpose and motive ("The purpose of DEMOS's scheme was to enrich Cantor and himself by using materially false and fraudulent misrepresentations and omissions to take secret and unearned compensation from victims on RMBS trades");

- Paragraph 17 alleges his scheme's financial impact on victims ("As a result of this scheme, DEMOS caused victims to sustain millions of dollars of losses.");

- Paragraphs 18 alleges certain of his methods for communicating with victims ("DEMOS used electronic communications with victims, including email, instant messages, and electronic group 'chats'");

- Paragraphs 19 alleges how his scheme defrauded buying victims ("by falsely overstating the price that Cantor had agreed to pay to the selling customer in order

to fraudulently induce the victims to pay a higher overall price") and paragraphs 20-22 describes two examples (later charged in Counts Four and Five); and

- Paragraph 23 alleges how his scheme defrauded selling victims ("DEMOS would and did falsely understate the price at which the buyer had agreed to purchase the RMBS in order to fraudulently induce the victims to sell the RMBS at a price lower than they otherwise would achieve") and paragraphs 24 & 25 describes an example (later charged in Count One).

By its own terms, the "aforementioned" scheme is necessarily broader in scope than the six trades executed in furtherance in paragraph 26. For instance, although the earliest of the charged trade occurred on May 11, 2012, paragraphs 15 & 26 both allege that Demos perpetrated a scheme that began at least six months earlier (November 2011). Similarly, although the last charged trade occurred on January 4, 2013, paragraphs 15 & 26 both allege that Demos's scheme ended at least one month later (February 2013). Likewise, although the Government currently calculates that the six charged trades resulted in approximately $1.065 million of loss, paragraph 17 alleges that Demos's entire scheme caused victims to "sustain millions of dollars of losses."

Thus, the Superseding Indictment charges that Demos executed the six charged trades in furtherance of a broader scheme to commit securities fraud in RMBS trades with his customers.

**B.     Uncharged Fraudulent Trades Are Part Of The Alleged Scheme To Defraud**

Despite Demos's claim to the contrary, evidence of uncharged transactions in which he made the same type of misrepresentations regarding pricing, for the same purpose, and to the same effect as the charged trades are evidence of the scheme that resulted in the six charged trades.

Federal Rule of Evidence 404(b) provides for the admission of "other crimes, wrongs, or acts" for certain purposes. "However, evidence of uncharged criminal activity is not considered 'other crimes' evidence 'if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010) (quotation and citation omitted). Here, Demos is alleged to have perpetrated a scheme to defraud in connection with RMBS trades by misrepresenting material pricing information to his customers. Evidence that Demos had a scheme to defraud, which the six charged trades were made in furtherance of, at least pertains to the same series of transactions as, or is inextricably intertwined with, or is necessary to complete the story of Demos's crime. In fact, evidence of those misrepresentations in uncharged trades is direct proof of the alleged scheme.

Demos's attempt to draw an unfavorable comparison between these facts and *Kaiser* is unavailing. In that case, the Second Circuit held that evidence of the defendant's fraudulent dealings in corporate transactions struck before the charged securities fraud and conspiracy began in April 2000 were "inextricably intertwined with the evidence regarding the charged offense" because they bore on whether the defendant made false statements to auditors and falsified accounting rates. *Kaiser*, 609 F.3d at 570-71. This case presents an even clearer example of scheme evidence than *Kaiser* in at least two respects. First, unlike in *Kaiser*, the uncharged trades in which Demos made misrepresentations did not precede Demos's alleged fraud scheme—they all occurred during the alleged scheme "[b]eginning in approximately November 2011 and continuing until approximately February 2013." Superseding Ind. ¶ 26; *see also id.* ¶ 15 ("Between in or about November 2011 and February 2013…"). Second, unlike in

*Kaiser*, the misrepresentations made by Demos in uncharged trades are not extraneous to the charged crime of securities fraud—they are intrinsic to the alleged scheme to lie to customers about pricing in RMBS deals over a 16-month span to cheat them and their investors out of money to which he and Cantor Fitzgerald were not entitled, which resulted in the six charged trades. Superseding Ind. ¶¶ 15, 19, 23, 26.

Thus, Demos's uncharged fraudulent trade are classic "scheme" evidence.

\*       \*       \*

Because the six charged trades were executed in furtherance of an alleged scheme to defraud, and Demos's misrepresentations in uncharged trades are evidence of that scheme, the Court should deny his motion to preclude.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court deny Demos's omnibus supplemental motion in its entirety.

    Respectfully submitted,

    DEIRDRE M. DALY
    UNITED STATES ATTORNEY

    _____/s/_____
    JONATHAN N. FRANCIS
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. phv05083
    jonathan.francis@usdoj.gov
    HEATHER L. CHERRY
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. phv07037
    heather.cherry@usdoj.gov
    157 Church Street, 25th Floor
    New Haven, CT 06510
    Tel.: (203) 821-3700

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                              /s/
                                    JONATHAN N. FRANCIS
                                    ASSISTANT UNITED STATES ATTORNEY