IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16 CR 220 (AWT) |
| v. | : | |
| DAVID S. DEMOS | : | May 26, 2017 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DAVID DEMOS'S SUPPLEMENTAL MOTION**

The case against David Demos rests on a novel theory that (with the *Litvak*, *Shapiro* and *Demos* cases) applies securities fraud concepts for the first time to RMBS trading that has been going on since the 1980s. Judge Chatigny hinted at the potentially troubling nature of judging a criminal case in these circumstances, as he warned that he would make clear to the jury that due process does not allow the government to use prosecution of individuals as a means to regulate conduct; that market conduct never before prohibited should be achieved through regulations; and that the criminal justice process cannot be used to initially draw that line.[1]

In the face of these unprecedented charges, it is especially important that David learn what he is accused of doing so he can defend himself. The government's previous failure to identify the existence of a third victim in this case, its opaque and confusing 404(b) notice, and its superseding indictment that broadly expands the universe of victims – all frustrate that right.

The Government's Memorandum in Opposition to Defendant's Omnibus Supplemental Motion ("Government Memo" or "Gov. Mem.") was the first filing to reveal that three, not two, of David's counterparties are alleged victims of the six charges in the indictment. While that

---

[1] Judge Chatigny's comments were made early in the trial and while we would have preferred to quote them for the Court, the rules of the Court Reporters require that we make no use of their rough transcripts.

1

disclosure satisfies one of the issues raised in our supplemental motion, more remains for the Court to resolve. The government through its 404(b) notice and its "including but not limited to" language expanding the superseding indictment have left David in the dark about what he will face at trial. Although stated in a different context, the Second Circuit captured our frustration when it said, "It is incomprehensible to us why such cloak and dagger games should be played by the prosecution . . ." *United States v. Parrott*, 425 F.2d 972, 976 (2d Cir. 1970).

This kind of government approach further undercuts David's due process rights and leads to unnecessary motion practice that unnecessarily burdens the Court.

1. **Our requests for a bill of particulars to identify the victim of the trade charged in Count 3 and, alternatively, to dismiss that count have finally been answered in writing, as we requested in our motion.**

In light of the Government Memorandum, we finally know that the alleged victim of Count 3 is neither Ellington nor Marathon, but DW Investments. However, the government's failure to include that information in its charging documents has frustrated David's due process rights. The Federal Rules of Criminal Procedure command that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged...." Fed. R. Crim. P. 7(c)(1). Requiring an indictment to indicate that the victim of a particular count is an entity different from the victims of the other counts would appear to be obvious. But in this case, getting to the point where the government identified, in a filing, the very existence of a distinct victim of Count 3 was far more difficult than it should have been.

The inexplicably winding path chosen by the government began when it filed an indictment that described *only two* victims ("Victims 1 and 2"), leading us to believe that all six charges were related to those two victims (an assumption fueled by the fact that in the *Litvak* and *Shapiro* indictments, all of the victims of the charged conduct were identified). Then, the

government superseded with an indictment that disclosed that Victims 1 and 2 were Ellington and Marathon, but that remained silent on whether there was a third victim by number or name. In addition, its voluminous discovery included "chats" in which two entities potentially involved in Count 3 could have been deemed the "victim" of that trade.

None of this made clear that DW Investments was a victim or even that there was a third victim. It was not until we filed our supplemental motion that we learned the existence and identity of a third victim.[2] While the existence and identity of the third victim were revealed in the grand jury transcript of December 7, 2016, that transcript – as the government notes – had "inadvertently been left out of its production," Gov. Mem. at 4 n.3, and was only sent to us the day before the government filed the Government Memo. The government sent it *not* as a result of our communications with them. Instead, the government provided it (as the government acknowledged) only when it realized its omission "[i]n preparing [its] brief [in opposition to our supplemental motion]." Gov. Mem. at 3.

This torturous process (which required us to file two sets of motions) frustrates the due process rights of a defendant to be timely apprised, in writing (either in the indictment or by way of a bill of particulars) of the identity of the individuals or entities that he is accused of defrauding. Neither we nor our client should have to work so hard to get information which, in the end, the government could supply (and did supply) in a single sentence.

---

[2] The government claims that "when counsel met on April 15, 2017 to discuss Demos's supplemental motion, counsel or [*sic*] the Government explicitly stated that the victim of Count Three is DW Investments." Gov. Mem. at 4. The implication of that statement is that the government need not identify the victims of the defendant's alleged crime in its charging documents or in a formal filing but, instead by disclosing them during an oral discussion. Our frustration with this nonchalance and the other steps taken by the government in this case – a case where David is charged with securities frauds each punishable by 20 years in jail – left us questioning the government's overall approach to David's due process rights. That caused the government to label our frustration as "intemperate rhetoric" (Gov. Mem. at 2).

> **2. Our requests that the Court strike the phrase "including but not limited to" and preclude the government from offering uncharged conduct to prove the alleged scheme are undiminished by the government's response.**

According to the testimony of one of the government agents investigating this matter, there are dozens of additional trades and the government has charged David with six. That means there are numerous unidentified trades with unidentified counterparties that the government might use at trial against David in its effort to prove his guilt of the six charges against him. The government has not identified what those trades are, who the counterparties are, or where, within the troves of documents it has disclosed, we might find evidence about them.

When the Court set its scheduling order requiring the government to disclose its 404(b) evidence on March 1, 2017, we assumed the government would make these identifications to allow us to properly prepare for trial. But, as set forth in our supplemental memorandum and as confirmed in the Government's Memorandum, that is not what happened. Instead, the government indicated on March 3 that it would be introducing no 404(b) evidence and then obtained a superseding indictment identifying David's victims as Cantor's customers "including but not limited to" Ellington and Marathon. The government's failure to identify any 404(b) evidence combined with its limitless expansion of the charged conduct requires a bill of particulars to identify which of the other allegedly fraudulent transactions David has to defend against at trial.

The government claims in its response that in adding the "including but not limited to language," it merely is expanding *the means* by which the charged scheme was conducted. But the fact is that the "scheme" charged in this case is not the unitary scheme for which that principle of law was created. The scheme charged against David is far removed from schemes

where additional unnamed victims may be introduced because they are precisely the same as every other explicitly described victim.  So, for example, in a mortgage fraud scheme, originated and carried forward to cheat every home owner or lending institution, an uncharged victim adds nothing meaningful to the charges.  Or in a health care fraud, carried out through a Medicare mill whose very reason for existence is to fraudulently bill, an additional false bill or two does not significantly alter the scheme.

That is not our case.

The scheme alleged against David involves the sale and delivery of a legitimate product (an RMBS bond) at a fully disclosed total price where the contents of the product were not hidden or disguised but were, instead, fully available to each of the alleged victims, who extensively analyzed those contents before paying the a price that was well within the range their analyses had yielded.  The uncharged conduct the government seeks to offer involves *other trades* by *other victims* – not additional mailings in a mail fraud scheme or additional related actions (uncharged in the indictment) taken to effectuate a single scheme.  In short, unlike the Medicare billing fraud or mortgage fraud scheme where the product itself is without value (indeed, the whole venture rests on the failure to deliver the promised item), David's activity, even by the government's own measure, led to the delivery of a product that was real – a product whose components were fully available for the alleged victim's analysis  – all at a price that was disclosed, at fair value identified by the alleged victims, and with the cash flows expected by the victims' modeling.

In these circumstances, it is especially dangerous to allow the government to make up with quantity for the lack of quality that Judge Chatigny appeared to be concerned about.  As a result, these uncharged transactions should not be reflexively admitted as further means of the

5

alleged scheme. Instead, they should be offered and evaluated under Rule 404(b), where analysis and balancing (under Rule 403) are required. For some reason, the government has consistently rejected this option (and therefore precluded itself from using it). One has to wonder why. Perhaps it is because the government fears that the uncharged conduct cannot meet Rules 404(b) and 403's requirements and that even if it did, that evidence would require a strong limiting instruction.

Moreover, and in any event, whether considered an additional part of the charged scheme or as similar act evidence, the government is obliged to describe those uncharged transactions now. That is what the cases in this Circuit (cited in our initial briefs) require. *See also United States v. Wilson*, 493 F. Supp. 2d 364, 373 (E.D.N.Y. 2006) (requiring government promptly to divulge identity of victims of charged crimes). And, even more to the point, that is what the Court's carefully constructed Scheduling Order was designed to achieve: to limit the unknown as much as fairly possible. The milestone in the Scheduling Order was designed to get the government to declare early on what it planned to offer so that the trial would not become unwieldy (for example, a trial in which there are six charged transactions and multiples of that in uncharged conduct) and would not need to be delayed while we did the requisite investigation of the alleged victims (including issuing 17(c) subpoenas) and, where appropriate, we moved to preclude. Indeed, if the government knew when it agreed to the scheduling order's 404(b) milestone that it would be classifying other act evidence as part of the scheme (as it surely must have known), why did it not tell us then instead of agreeing to a commitment which it then knew to be meaningless?

In the end, much like the torturous path we had to travel to get the government to finally state, in one sentence, the alleged victim of Count 3, here too the government is forcing us to

draft motions and requests when the correct and simple solution is so easily at hand.[3] The correct and simple solution – the solution that avoids our having to unnecessarily seek relief and that preserves judicial resources – is for the government to now name the other transactions that it seeks to offer so that we can, if appropriate, move to preclude the government from offering those transactions or, alternatively, timely prepare to address them.

---

[3] Just like its many responses to thwart our effort to learn the victim of Count 3, the government has chosen to make tortured arguments to support its offer of uncharged conduct despite the plain words of the Indictment. For example, when we pointed out that the Indictment's ultimate paragraph (26) is titled "Executions of the Scheme" and that that paragraph then goes on to state, expressly, that David's means were used "in the purchase and sale of securities, to wit, the RMBS set forth below" (the RMBS listed in the six counts), the government responded by saying that the words "to wit" should not be construed to mean what they say and that these words were in the *Litvak* and *Shapiro* indictments as well. Prior mistakes do not justify current errors and the government could easily have chosen different words for paragraph 26 when it superseded. Instead, it obstinately clings to its mistakes, torturing the plain meaning of English beyond recognition.

**Conclusion**

Our motions relating to Count 3 are now resolved by the government's finally disclosing what we had sought.  We respectfully request that the government be precluded from offering uncharged conduct as part of the charged scheme, and that the phrase "including but not limited to" be struck from the Indictment, and alternatively, that the government be required to delineate the nature of the uncharged conduct now. [4]

---

[4] The government has not accurately identified our concern over the government's statement that its investigation is ongoing.  We understand that the government can continue to investigate.  What troubles us is whether the government is using the grand jury process to investigate in order to prepare for trial.  We do not know if this is so but worry that it could be, given the fact that the government had been investigating David and/or his employer, Cantor Fitzgerald, for several years before it indicted and told us that it felt there was no reason to wait (we offered to extend the statute of limitations if that was a concern) despite the pendency of the *Litvak* and *Shapiro* trials and possible appeals.

Respectfully submitted,

DAVID DEMOS

By:   */s/ Daniel E. Wenner*
     Peter A. Chavkin (PHV08660)
     Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
     Chrysler Center
     666 Third Avenue
     New York, NY  10017
     (212) 692-6231
     pchavkin@mintz.com

     Patrick J. Sharkey (CT00654)
     Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
     One Financial Center
     Boston, MA  02111
     (617) 348-1819
     pjsharkey@mintz.com

     Stanley A. Twardy, Jr. (ct05096)
     Day Pitney LLP
     One Canterbury Green
     201 Broad Street
     Stamford, Connecticut 06901
     (203) 977-7300
     satwardy@daypitney.com

     — and —

     Daniel E. Wenner (ct27852)
     Day Pitney LLP
     242 Trumbull Street
     Hartford, Connecticut 06103
     (860) 275-0100
     dwenner@daypitney.com

     His Attorneys

97203206.9