UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16-CR-220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DEMOS, | : | |
| | : | |
| Defendant. | : | December 28, 2017 |

**DEFENDANT DEMOS'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISCLOSE
THE GRAND JURY LEGAL INSTRUCTIONS**

Defendant Demos moves this Honorable Court to order the Government to disclose the Grand Jury legal instructions, from the ███████████████████ Grand Jury proceedings, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii), because (1) the Government has continually misstated applicable securities fraud law, even to this day, and (2) for the reasons stated in Defendant Demos Group II Motions, which gave examples ███████ ████████████████████████████ in the Grand Jury proceedings. For both of these reasons, there is ample demonstration of particularized need for the disclosure of the Grand Jury legal instructions.

**BACKGROUND**

In response, to Defendant Demos prosecutorial misconduct argument the Government stated ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Thereafter, in Defendant Demos Reply Memorandum of Law ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ It was Defendant Demos understanding that the Court was being provided a copy of the entire Grand Jury proceedings, which include the legal instructions. It was only after oral arguments on December 14, 2017, for Defendant's Group I, Supplemental, and Group II Motions, that Defendant Demos learned that the Government had not provided the Court with a transcript of the legal instructions to the Grand Jury.

Counsel for Defendant Demos inquired of AUSA Francis, in a phone call on December 19, 2017, whether the Government had a copy of the legal instructions from the Grand Jury. AUSA Francis informed counsel for Defendant Demos that the Government had not ordered a copy of the stenographic record for this part of the proceedings. Thereafter, on December 20, 2017, counsel for Defendant Demos emailed AUSAs Francis and Cherry and inquired whether the Government would immediately arrange for the legal instructions to be provided to the Court and the defense. *See* **Exhibit A**, Email from Attorney George Leontire, to AUSA Jonathan Francis and AUSA Heather Cherry (Dec. 20, 2017, 11:06 AM).

The Government responded to counsel for Defendant Demos on December 21, 2017, and clarified its position with regard to the legal instructions.

> Second, we believe that the Government has met and exceeded its discovery obligations. Consistent with those obligations, it has produced the grand jury testimony and evidence to you. The Government is unaware of any requirement that it also produce transcripts of its instructions to the grand jurors to further disprove the defense's meritless claim of misconduct. However, if you are aware of authority for your request, please identify it and we will be happy to reconsider our position. We further note that the Court has not indicated its desire to review these materials *in camera* in connection with your claim, despite having your Group II motions for four months and hearing hours of argument from the parties last week.

*See* **Exhibit B**, Email from AUSA Jonathan Francis, to Attorney George Leontire (Dec. 21, 2017, 9:47 PM EST).

Thereafter, Counsel for Defendant Demos responded to the Government citing the authority to move for production of the Grand Jury legal instructions. *See* **Exhibit C**, Email String between Attorney George Leontire, and AUSAs Jonathan Francis and Heather Cherry (Dec. 22, 2017, 11:10 AM EST and Dec. 26, 2015, 6:38 PM EST). Thereafter, the Government responded to clarify that they would not produce the Grand Jury legal instructions. *Id.*

Defendant Demos now respectfully moves this Honorable Court to order the Government to disclose the Grand Jury legal instructions, from the ▮▮▮▮▮▮▮▮▮▮ Grand Jury proceedings, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii). As detailed below the Defendant has met his burden of showing particularized need for the transcripts requested.

## ARGUMENT

**I.    This Court Should Order Disclosure of the Grand Jury Legal Instructions**

Disclosure of grand jury proceedings is permitted "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(C)(ii).

Indeed, the Grand Jury plays a key role in the criminal process. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." U.S. Const. amend. V. This guarantee preserves the grand jury's two historical duties: (1) "whether there is probable cause to believe a crime has been committed; and (2) to "protect [] . . . citizens against unfounded criminal prosecutions." *See United States v. Fisher*, 25 F.Supp.2d 151, 161 (W.D.N.Y. 2016) *citing United States v. Calandra*, 414 U.S. 338, 343 (1974).

The United States Attorney and the grand jury have a unique relationship, because the United States Attorney serves as the grand jury's legal advisor, and the grand jury also serves as the buffer between the Government and the suspect of the alleged criminal activity. *Fisher*, 225 F.Supp.3d at 162; *see United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) ("[I]t is the prosecutor who draws up the indictment, calls and examines the grand jury witnesses, advises the grand jury as to the law, and is in constant attendance during its proceedings."). The Second Circuit has recognized that "prosecutors, by virtue of their position, have gained such influence over grand juries that these bodies' historic independence has been eroded." *Hogan*, at 759. Moreover, the Second Circuit has highlighted that the corrosive impact on grand jury independence, because of a prosecutor's opinion, merits scrutiny. *Id.* The Appellate Court recognized that "the gain in prosecutors' influence over grand juries is all the more reason to insist that these limitations be observed strictly", including making "statements or argue[ing] in a manner calculated to inflame the grand jury unfairly against an accused." *Hogan* at 759.

Indeed, Federal Courts may use their supervisory powers to dismiss an indictment where there is misconduct before the grand jury which "amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *United States v. Williams*, 504 U.S. 36, 46 (1992) *citing United States v. Mechanik*, 475 U.S. 66, 74 (1986). The United States Supreme Court clarifies in *Williams* that the holding in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 (1988) provides that the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury. *Williams*, 504 U.S. at 46-47. Indeed, in *Bank of Nova Scotia* the Supreme Court held that that the standard for dismissal is one of

prejudice and requires dismissal "'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, *citing United States v. Mechanik*, 475 U.S. at 78.

Moreover, disclosure of grand jury proceedings is permitted "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(C)(ii). The disclosure is committed to the discretion of the trial judge. *See Pitsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). It is well settled that to seek disclosure of grand jury minutes the defendant "has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." *United States v. Forde*, 740 F.Supp.2d 406, 413 (S.D.N.Y. 2010) *quoting United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978). The rule of secrecy is embodied in Federal Rule of Criminal Procedure 6(e), and is not absolute. *See In re Biaggi*, 478 F.2d 489, 492 (2d. Cir. 1973) (discussing "[that] [t]he secrecy of grand jury testimony . . . is not absolute" because the Federal Rules of Criminal Procedure deal with the subject and provide exceptions to the rule of secrecy).

The particularized need standard was explained by the United States Supreme Court as requiring the "[p]arties seeking grand jury transcripts under Rule 6(e) [to] show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Northwest Petrol Shops Northwest*, 441 U.S. 211, 222 (1979). Moreover, the standard is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some

situations than in others. *United States v. Sells Engineering, Inc.* 463 U.S. 418, 444-45 (1983); *see also United States v. John Doe, Inc. I*, 481 U.S. 102, 116-17 (1987) (affirming the flexibility of the governing standard).

Additionally, the requirement of particularized need, as set forth in *Douglas Oil Co.* extends to legal instructions which are given to the jury. *United States v. Smith*, 105 F.Supp.3d 255, 259 (2015); *see also United States v. Hoey*, No. S3 11-CR-337 (PKC), 2014 WL 2998523, at *3, 2014 U.S. Dist. LEXIS 91093, at *7-8 (S.D.N.Y. July 2, 2014); *United States v. Jailall*, No. 00-CR-069 (RWS), 2000 WL 1368055, at *2, 2000 U.S. Dist. LEXIS 13733, at *4 (S.D.N.Y. Sept. 20, 2000), *aff'd*, 23 Fed. Appx. 94 (2d Cir. 2002).

**A. Defendant Demos Has Made a Particularized Showing of Need to Obtain the Legal Instructions Based on the Government's Continual Misstatements on the Law of Securities Fraud**

Defendant Demos submits to this Court that there are several instances where the Government has repeatedly failed to properly describe the law of securities fraud. In *Shapiro*, the AUSAs misstated the law of willfulness, even after Judge Chatigny gave specific instructions. *See Shapiro* Tr. at 2989 (Judge Chatigny stated: "[w]ith regard to willfulness, I don't know if [the prosecutor] intended to differ with me and in effect take it upon himself to overrule me on what the law provides. I don't need to assess that. But I do understand the defendants' position that this is what it seemed to be. The government is entitled to argue as it wishes, but it's not entitled to in effect contradict me on my statement of the law, particularly when, as I have explained more than once, the willfulness element of securities fraud poses a real challenge for a Court trying to instruct a jury."); *see also United States v. Shapiro*, 3:15-CR-155 (RNC), Criminal Docket Sheet (listing AUSA Heather L. Cherry, as representing the USA).

The AUSAs also misstated the standard of materiality in their Opposition to the Group II Motions, and continued their arguments based on the materiality standard which Judge Hall did not agree with in either of the *Litvak* trials, and which the AUSAs in this case were aware of, as they were Prosecutors in that matter. *See United States v. Litvak*, 3:13-CR-019 (JCH), Criminal Docket Sheet (listing AUSA Jonathan N. Francis and AUSA Heather L. Cherry, as representing the USA); *see also* Gov't Mem. in Opp. to Def. Grp. II Mot. at 10. (ECF 85) (The Government wrote: "[i]n this Circuit, '[a] misrepresentation is material under Section 10(b) of the Securities Exchange Act and Rule 10b-5 where there is a substantial likelihood that a reasonable investor *would find the . . . misrepresentation important in making an investment decision*.' *Litvak*, 808 F.3d at 175 (internal quotation marks omitted).") (emphasis added).

This improper instruction was rejected by Judge Chatigny in *Shapiro*. *See Shapiro* Jury Instructions, Tr. at 2646-2647. ("[T]he government must prove beyond a reasonable doubt that there was a substantial likelihood a reasonable investor in the non-agency RMBS market would *view the misstated fact as one that significantly altered the total mix of information available to the investor*; in other words, the government must prove that the misstated fact likely would have assumed significance in the deliberations of a reasonable investor.") (emphasis added). Indeed, AUSA Heather Cherry was a prosecutor in the *Shapiro* trial and was aware of the proper standard. *See United States v. Shapiro*, 3:15-CR-155 (RNC), Criminal Docket Sheet (listing AUSA Heather L. Cherry, as representing the USA).

Over and over, the government claims that materiality means only that there is "a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision." Gov't Mem. in Opp. to Def. Grp. II Mot. at 10. (ECF 85). That is not the correct standard. The instruction in the *Litvak* and *Shapiro* cases requires much

7

more than mere "importance". *See e.g. Shapiro* Jury Instructions, Tr. at 2646-2647. (Judge Chatigny stated: "[t]he word 'material' serves to distinguish certain statements of fact that a reasonable investor would likely view as significantly altering the total mix of available information from statements that would not be given weight by a reasonable investor . . . ask whether, in the context of the operations of the non-agency RMBS market at the pertinent time as shown by the evidence, a reasonable investor would consider the statement at issue as significantly altering the total mix of information available or would discount the statement as unreliable"). Indeed, the United States Supreme Court, makes it clear that evidence must reach the meaningfully higher threshold to enable a finding of materiality, *i.e.,* although importance is a component of a material misrepresentation, the misrepresentation is only material where it is so significant "that it alters the total mix of information." *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988) (citing and adopting the standard set forth in *TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)* requiring "…that to fulfill the materiality [element] 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available").

Therefore, for the Grand Jury to determine whether there was probable cause to believe that Defendant Demos committed securities fraud as alleged by the Government, the Grand Jurors required accurate legal instructions on what securities fraud entails, and significantly this includes an accurate and full explanation of the law on willfulness and materiality. Without an accurate explanation of the law of securities fraud, Grand Jurors could not possibly meaningfully evaluate the evidence to determine that Defendant Demos market conduct was a violation of securities fraud law.

### B. Defendant Demos Has Made a Particularized Showing of Need to Obtain the Legal Instructions Based on the High Probability of Significant Prosecutorial Error in the Legal Instructions to the Grand Jury

As further support for Defendant Demos particularized need, Defendant Demos submits that he has briefed this Court on his request for dismissal based on the prosecutorial misconduct before the Grand Jury. In Defendant Demos Group II Motion to dismiss, he cites to *United States v. Hogan* an analogous Second Circuit case where the use of the supervisory power to dismiss was deemed appropriate. In *Hogan*, the Second Circuit reversed the district court's decision to deny a motion to dismiss the indictment for prosecutorial misconduct before the grand jury— because "the impartiality and independent nature of the grand jury process was seriously impaired by the AUSA's argument." *Hogan*, 712 F.2d at 761.[1] The Second Circuit acknowledged that the Grand Jury "functions as a shield, standing between he accuser and the accused, protecting the individual citizen against oppressive and unfounded government prosecutions." *Id.* at 761; *citing United States v. Calandra*, 414 U.S. 338, 342-43 (1974) and *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972).

Indeed, in the Second Circuit, Grand Jury independence is very important, and the law of the Circuit provides that even after a conviction by a jury following trial on the merits, dismissal

---

[1] In *Hogan,* a Grand Juror troubled by the proposed prosecution inquired "[w]hat I don't understand is if this case fell through, in other words, if there was no deal made what is the purpose of us listening to this?" *Hogan*, 712 F.2d at 760. The AUSA responded: "[i]f the deal would have gone forward we would have a real hoodlum trying to sell heroin. . . . I think even though in a general case where somebody backs out and decides not to do the crime it probably shouldn't be prosecuted. In a case like this I think is [sic] a matter of equity." *Id.* , 712 F.2d at 760. Thereafter, the AUSA introduced testimony that the target "was a 'suspect' in the apparently unrelated murders" of others (a drug dealer and police officer). *Id.* The Grand Jury was never asked to return indictments as related to these two murders. *Id.* Moreover, the AUSA made "himself an unsworn witness" by suggesting that the person of interest "was guilty of misconduct while he was a police officer" and that the AUSA "had read various articles in newspaper[s] which accused a high-ranking officer of receiving bribes from gamblers." *Id.* Thereafter, the AUSA attempted to explain why Hogan had refused to go through with the drug deal, and yet the identity of the person who speculated to the testifying agent, or the basis of the conclusions were not explored. *Id.* The most disturbing conduct to the Second Circuit was that the witnesses introduced false testimony of the DEA Agents, on predisposition. *Id.* at 761-62. "While factual misstatements in the agents' testimony may have been inadvertent . . . the fact remains that the appellants were prejudiced by the misstatements of important facts and the grand jury's independent role was impaired." *Id.* at 762.

9

of an underlying indictment which was tainted by serious prosecutorial misconduct is required. *See Hogan*, 712 F.2d at 762. In *Hogan,* the AUSA took advantage of his position of special trust, and "impaired the grand jury's integrity as an independent body", and therefore the Second Circuit held "that the indictment below must be dismissed." *Id.* at 762.

        **i.    There was a Highly Probability of Prosecutorial Misconduct Before the Grand Jury Because** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In Defendant Demos Group II Motions, he argued that *United States v. Hogan* is applicable because of the factual similarities between the Grand Jury proceedings that occurred connected with his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and the Grand Jury proceedings which occurred in *Hogan*. Indeed, Defendant Demos cited to several examples including: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

        **a.    **▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮





b.

Indeed, Defendant Demos cited to *United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979), which defines the Prosecutors right to exercise discretion and selectivity in its presentation of evidence to a Grand Jury as limited in that it does not entitle the Prosecutor to

mislead the Grand Jury or engage in fundamentally unfair tactics before it. *Ciambrone*, 601 F.2d at 623 (analyzing the AUSA's responses to grand jurors' inquiries regarding the Defendant's motive for testifying falsely).[3]



---

[3] In *Ciambrone*, the Defendant was indicted for perjury and he argued that the Prosecutor failed to advise the Grand Jury that the Defendant had been threatened prior to his testimony, as a DEA informant, at the trial of a drug dealer he informed on. *Ciambrone*, 601 F.2d at 618-19. In *Ciambrone*, in analyzing the omitted information of the AUSA in the grand jury—namely that the Defendant had been threatened prior to his testimony— it was a critical point for the Second Circuit that the Defendant had been invited to testify before the Grand Jury and that his lawyer was given the opportunity to submit his views or contentions to the Grand Jury. *Id.* at 625. The Second Circuit stated "[these opportunities] tend[] to negate any deliberate omission by the prosecutor . . . of the rumor of threats, since it was always possible that Ciambrone, whose attorney had been advised of the time and place of the grand jury sitting, would appear with his attorney and assert the coercion defense they later chose to adopt." *Id.* Moreover, the Court found that there was no evidence that the AUSA had been apprised that an unidentified FBI informant relayed to the DEA and AUSAs information regarding threats to Ciambrone. *Id.* at 624. Finally, the Second Circuit pointed out that even if these rumored threats had been presented to the jury, because of the later guilty verdict for perjury, it would be unlikely the grand jury would have failed to indict. *Id.* at 625. Based on these reasons the Second Circuit reasonably concluded that the grand jury would surely have found probable cause to charge the Defendant with perjury—and any error would not warrant dismissal of the indictment. *Id.*

███ AUSAs Francis and Cherry were both involved in the trials of *United States v. Litvak I & II*, and *United States v. Shapiro*, which charged closely related conduct to the alleged market conduct of Defendant Demos. Indeed, they have been involved in, either or both, the motion and trial practice of these related trials, and have seen the significant development of the case law since Jesse Litvak's first trial, and therefore are considerably aware ███ unlike the AUSAs in *Ciambrone*. Finally, unlike *Ciambrone* Defendant Demos has not been convicted and therefore the concern that a later guilty verdict would have made it unlikely that the Grand Jury would have indicted, just frankly is not present here.

13





██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████

c. ███████████████████████████████
████████████████████████████████████
████████████████

████████ Defendant Demos cited to *United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979), for the proposition that Prosecutors are not entitled to mislead the Grand Jury or engage in fundamentally unfair tactics before it. *Ciambrone*, 601 F.2d at 623 (The Second Circuit also stated "[w]e should add that where a prosecutor is aware of any substantial evidence negating guilt he should, in the interests of justice, make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict.").

████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

16



**C. Defendant Demos Need For Disclosure is Greater Than The Need For Continued Secrecy Because Defendant Demos has Been Indicted**

The rule of secrecy is embodied in Federal Rule of Criminal Procedure 6(e), and is not absolute. *See In re Biaggi*, 478 F.2d 489 (2d. Cir. 1973) (discussing "[that] [t]he secrecy of grand jury testimony . . . is not absolute" because the Federal Rules of Criminal Procedure deal with the subject and provide exceptions to the rule of secrecy). The United States Supreme Court has identified several interests served by maintaining the secrecy of grand jury proceedings including: in pre-indictment proceedings protecting prospective witnesses who otherwise might not come forward if they knew that who they testified against would be aware of the testimony; that witnesses may be less likely to testify fully and frankly in the event they were open to retribution; and that there are risks that those to be indicted would flee or attempt to influence individual grand jurors. *Douglas Oil Co.*, 441 U.S. at 218-219. Moreover, the United States Supreme Court has stated that by "preserving the secrecy of the proceedings, we assure that

persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Id.* at 219.

Here, the interests in maintaining grand jury secrecy are reduced, because the grand jury has ended its activities. *See Douglas Oil*, 441 U.S. at 222. There are no concerns that prospective witnesses who would otherwise come forward may not now come forward, because ███████ ████████████████████████████████████████████ Moreover, there is no concern that ███████ would be less likely to fully and frankly testify, for fear of retribution. Additionally, Defendant Demos has already been indicted, and public statements about his indictment have been made, therefore there is no risk he would flee prior to indictment or attempt to influence individual grand jurors. Finally, Defendant Demos cannot possibly face public ridicule after being exonerated by the Grand Jury, because he was indeed indicted.

### D. Defendant Demos Request is Structured to Cover Only Material Needed Because the Request is Limited to the Legal Instructions

This request is limited to the legal instructions provided to the Grand Jury, and does not request any material beyond that.

## CONCLUSION

For the foregoing reasons, Defendant Demos moves this Honorable Court to order the Government to disclose the Grand Jury legal instructions, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii), because he has a particularized need which outweighs the need to maintain the secrecy of the Grand Jury deliberations.

Respectfully submitted,

DAVID DEMOS

By: /s/ George Leontire

Jose Baez
The Baez Law Firm
40 SW 13th Street, Suite 901
Miami, FL 33130
(305) 999-5111
jose@baezlawfirm.com

George Leontire
The Baez Law Firm
66 N. Second Street
New Bedford, MA 02108
(855) 223-9080
george@baezlawfirm.com

Ronald S. Sullivan, Jr.
6 Everett Street
Cambridge, MA 02138
(617) 496-4777
prof.ron.sullivan@gmail.com

Peter A. Chavkin (PHV08660)
Mintz Levin Cohn Ferris Glovsky
and Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
(212) 692-6231
pchavkin@mintz.com

Patrick J. Sharkey (CT00654)
Mintz Levin Cohn Ferris Glovsky
and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1819
pjsharkey@mintz.com

– and –

Michael L. Chambers, Jr. (ct28580)
100 Wells Street, Suite 2C
Hartford, Connecticut 06103
(860) 231-9535
chamberslegalservices@gmail.com

His Attorneys