UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16-CR-220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| DAVID DEMOS, | : | |
| | : | |
| Defendant. | : | January 12, 2018 |

**MEMORANDUM IN SUPPORT OF DEFENDANT DEMOS'S MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEMOS AS AN
AGENT OR THAT DEMOS HAD A FIDUCIARY DUTY TO THE COUNTERPARTIES**

It is indisputable that Principals like Mr. Demos do not owe a fiduciary duty to their counterparties. The Government has repeatedly conceded this point. *See e.g. Litvak Gov't Reply Brief,* at 1 (May 26, 2016) ("There has never been any dispute that, as a legal matter, firms like Jefferies are "dealers" engaged in "principal" trades that have no fiduciary duties to their counter-parties"); *Shapiro Gov't Brief in Opp.,* at 1 (July 25, 2016) ("There has never been any dispute that, as a technical matter, firms like Nomura are "dealers" engaged in "principal" trades that have no fiduciary duties to their counter-parties"); *Litvak Rulings Re: Motions in Limine,* at 3 (June 28, 2016) ("The government does not dispute this point"). However, if the Jury is permitted to infer that Mr. Demos owed a Fiduciary duty, Mr. Demos would be unfairly prejudiced. *See Litvak II,* 17-1464, Oral Arguments, at 14:55 (2d Cir. Dec. 11, 2017) (Judge Winters expressing disbelief that someone could be convicted based on the "buyer's misapprehension as to a matter of law"). Accordingly, this Court should bar the admission of any testimony that indicates or suggests that such a relationship existed. *See* Fed. R. Evid. 403.

The Second Circuit has consistently ruled that the use of incorrect terms is prejudicial when it "may lead a juror to believe that the . . . [defendant] engaged in improper or illegal conduct."

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 193 (S.D.N.Y. 2008). In *Highland*, the court forbade the innocuous on its face term "inside information" finding that "any probative value of the term is outweighed by its misleading nature." *Id.* Similarly, the term "tax haven," although also technically correct in that case, was precluded when it was found to be "irrelevant and inflammatory on its face." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 CIV 10014 PKL, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009); *see also United States v. Coscia*, No. 14 CR 551, 2015 WL 6153602, at *3 (N.D. Ill. Oct. 19, 2015) (ruling that terms that are not unfairly prejudicial are allowed). Terms that incorrectly indicate that a fiduciary duty via a relationship of trust existed between Mr. Demos and his counterparties are highly prejudicial since the jury might find fraud based on this nonexistent relationship. Therefore, based on this precedent, the Court must exclude such terms that indicate a non-existent fiduciary duty as irrelevant under Federal Rule of Evidence 401 and as unfairly prejudicial, likely to confuse the issues, or mislead the jury under Federal Rule of Evidence 403.

## ARGUMENT

### I. The Court Should Preclude The Government From Labeling Mr. Demos as an "Agent" to His Counterparties Since it Improperly Suggests a Fiduciary Duty Was Owed

Recognizing that the use of the term "agent" was both improper and prejudicial, the court in both *Litvak* and *Shapiro* foreclosed the government from any suggestion that the defendant was an agent of the counterparties ruling that "it would be highly improper for the Government to argue" such a point. *See Litvak Rulings Re: Motions in Limine*, at 3 (June 28, 2016); *Shapiro Telephone Conference*, at 65 (April 24, 2017) (granting defendant's motion to "exclude evidence that the defendants acted as agents or brokers or owed any agency duties to counterparties"). By the time the defense in *Shapiro* raised this issue, it was so well-settled that the Government agreed

stating: "[w]e *obviously concede* that we're not going to suggest that there's an agency relationship." *Shapiro Telephone Conference*, at 65 (April 24, 2017) (emphasis added); *see also United States v. Litvak*, 808 F.3d 160, 187 n.32 (2d Cir. 2015) (finding that the Government "conceded that Litvak was acting exclusively as a principal, and not as an agent").

These precedential rulings should be applied here too. Just like in *Litvak* and *Shapiro*, there is no dispute that, as a legal matter, Mr. Demos was not an "agent" and that he did not owe a fiduciary duty to the counterparties. The law is clear that "juries should not be burdened with testimony" when an issue "has already been determined . . . as a matter of law." *United States v. Bifield*, 702 F.2d 342, 350 (2d Cir. 1983).

Furthermore, such testimony or argument, which is plainly contrary to the undisputed facts and settled legal status of Mr. Demos, would be highly prejudicial and likely to mislead the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury."). There is no question that testimony and argument that Mr. Demos had an agency relationship with his counterparties, argument belied by their actual legal relationship, would mislead the jury. *See Highland,* 551 F. Supp. 2d at 193. As AUSA Jonathan Francis himself explained in oral proceedings in *Litvak II*, the reason for the Government alluding that the defendant is an agent is to convince the jury that the defendant was "not operating at an arm's length from his victims" and instead was "*working for*" his counterparties. *Litvak,* 3:13-CR-19 (JCG), Oral Hearing, at 11 (June 16, 2016) (emphasis added). Therefore, the jury's inference from the use of that term – that Mr. Demos owed agency-type duties to those customers – would severely prejudice Mr. Demos.

Accordingly, the Court should foreclose the government from using terms such as, but not limited to, "agent," "facilitator," "middleman," or "matchmaker" which convey an agency relationship or a fiduciary duty between Mr. Demos and his counterparties. Instead, the Court should require that the Government use legally and factually correct terminology–either calling Mr. Demos a principal or a trader.

**II.     Terms Such as "Broker" And "Commission" Are Factually Incorrect And Highly Prejudicial And Therefore Must Be Excluded**

Under federal securities law, a "broker" is defined as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A) (emphasis added). In contrast, a "dealer" is "any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A) (emphasis added). Here, Mr. Demos traded in the RMBS market for the account of his employer, Cantor Fitzgerald, and, therefore, acted as a "dealer" trading for its own account rather than as a "broker" acting on behalf of others. *See* SIFMA, Best Execution Guidelines for Fixed Income Securities ("SIFMA Guidelines"), at 7 (Sept. 2008) ("[Fixed-income securities] dealers typically maintain inventories in the securities for which they stand ready to buy and sell . . ."); SEC Guide to Broker-Dealer Registration, at 5 (April 2008) ("Unlike a broker, who acts as agent, a dealer acts as principal"). In other words, Mr. Demos was paid by Cantor Fitzgerald based on the difference between where he bought and sold the spread rather than by his counterparties. It is undisputed that Mr. Demos never, at any time, acted as a "broker" within the meaning of the federal securities laws.

Permitting the Government to make reference Mr. Demos as a "broker," when he is plainly not, will serve to mislead the jury and prejudice Mr. Demos. The jury will likely be familiar with brokers from their everyday life (including for example interactions with real estate brokers,

4

stockbrokers, and insurance brokers). The jury is further likely to understand that brokers owe certain heightened duties to their customers, with whom they have an agency relationship. As Judge Hall explained: "I think that the problem is there's going to be likely members of the jury who have bought and sold houses, who have hired real estate brokers or agents and I presume have understood the duties owed to them." *Litvak,* 3:13-CR-19 (JCG), Oral Hearing, at 18 (June 16, 2016). As made plain above, there is no such agency relationship between Mr. Demos and the counterparties in this case, and therefore reference to a term (like "broker") that connotes precisely such a relationship is prejudicial. *See Highland*, 551 F. Supp. 2d at 193; *Aristocrat,* 2009 WL 3111766, at *7.

The Government argued not to remove this prejudicial term from the Superseding Indictment because they expected witnesses to use this term. *See* Gov't. Mem. in Opp. to Def. Demos Grp. I Mot., at 18. (ECF 51). However, in *Litvak II,* Judge Hall was familiar with the witnesses who used the term "broker" colloquially in the prior trial. Despite this, Judge Hall did not allow the term "broker" due to the expectation that some witnesses commonly used the term and would do so in the coming trial. Instead, she only allowed the term "broker" because in the prior trial the correct term "dealer" and the incorrect term "broker" were improperly used interchangeably. *See Litvak Rulings Re: Motions in Limine*, at 6 (June 28, 2016). Therefore, since the Government would be allowed to reference that *former* testimony and the contents of documents from the first trial, Judge Hall allowed the Government to use the term "broker" since it did not make sense to require the Government to use the "proper terminology" when even Litvak conceded that he would not ask the court to strike the incorrect terms from the documentary record of the prior trial. *Id.* Judge Hall reasoned that since the jury would be peppered with those terms from the Government anyhow from the prior trial documents that it would not be prejudicial to

allow the Government to otherwise use the incorrect terms. *See id.*

These proceedings are at a much earlier stage than the *Litvak* proceedings. Barring the Government's use of these incorrect and prejudicial terms would actually work to stop Mr. Demos from being prejudiced since, unlike in *Litvak*, the terms will not get in otherwise. Judge Hall could have denied Litvak's motions based on the Government's argument here. However, she recognized that without the unique circumstances at play in *Litvak* such a term would be prejudicial. Therefore, the ruling in *Litvak* further demonstrates the need to exclude the Government from the use of these incorrect and prejudicial terms like "broker" from the start.

Similarly, the Court should exclude testimony that David or Cantor Fitzgerald received "commissions" from trading counterparties. By acting as a "dealer" (buying and selling for its own account) rather than a "broker" (buying and selling for the account of someone else), Cantor Fitzgerald earned profits through spreads, and not commissions. *See* SIFMA Guidelines, at 8-9 ("Dealers . . . make a profit through a 'spread,' the difference between the issuer's fixed-income security price and the marked-up price offered to buyers . . . or the difference between the quoted bid and ask prices.").

Just as with the terms "agent" and "broker," the term "commission" has a common meaning to a jury that would improperly imply some duty of agency or quasi-agency owed by Mr. Demos when dealing with counterparties. *See The Merriam-Webster Dictionary* (2016) (defining "commission" as "*a fee paid to an agent* or employee for transacting a piece of business or performing a service") (emphasis added), *accord, Black's Law Dictionary* (10th ed. 2014) (defining "commission" as *"[a] fee paid to an agent* or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction") (emphasis added). Indeed, the term "commission" commonly refers to compensation for services rendered by an agent. Jurors

6

are likely to understand the use of the term "commissions" from their dealings with real estate agents or stockbrokers who earn commissions. Such confusion on a point that the Government must certainly concede would prejudice Mr. Demos without shedding any light on issues relevant to this trial. *See Highland*, 551 F. Supp. 2d at 193; *Aristocrat,* 2009 WL 3111766, at *7.

Luckily, there are fine alternatives to this prejudicial term. Despite the Government's opposition to using less prejudicial terms than "commission" they themselves explained in this case that commissions are "commonly referred to as a payment 'on top.'" Govt. Mem. in Opp. to Def. Grp. I Mot., at 8 (ECF 51) (citing to the Superseding Indictment's use of the terminology "on top" at paragraph 12). Even more recently, the Government explained that the term "commission" can be used interchangeably with non-prejudicial words like "markup" and "spread." *See Litvak II,* 17-1464, Appellee Brief, 16 (Oct. 10, 2017). The correct, and not prejudicial, use of the phrase "on top" when referring to these payments has also been used in lieu of "commission" quite successfully by both the Government in their questioning and witnesses in their answers. *See id.* at 20, 21, 37, 58.

"Jurors are fact finders, not lawyers or judges," *United States v. Desnoyers*, 637 F.3d 105, 111 (2d Cir. 2011), who "will not have been chosen for their legal acumen." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 277 (S.D.N.Y. 2015). Asking the jury to "decode" these "nuanced" terms is a job for lawyers and leaving it to the jury will lead to a "great risk" of error which will prejudice David and be to the "detriment of the trial's truth-seeking function." *Id.* Terms such as "inside information" or "tax haven," which, *while technically true, have still been banned* for their prejudicial effect. *Highland*, 551 F. Supp. 2d at 193; *Aristocrat,* 2009 WL 3111766, at *7. As explained above, David was *not* a "broker" and did *not* receive a "commission." These terms were not correct even if some people incorrectly used them. When arguing for the admission of

these terms in the Superseding Indictment, the Government itself admitted that in this case they would be using these terms "regardless of the technical legal definitions." Govt. Mem. in Opp. to Def. Demos Grp. I Mot., at 23 (ECF 51). The Government cannot be allowed to purposefully confuse the jury with prejudicial terms by disregarding their "technical legal definitions," especially when alternatives exist. *Id.*

Therefore, since these words are demonstrably prejudicial since they will cause the jury to infer a nonexistent fiduciary duty, the Court should preclude the Government from using them. *See id.* Accordingly, the Court should prohibit the Government from using these terms, and any other technically incorrect terms, which will have the prejudicial effect of indicating the existence of a fictitious fiduciary duty under Rule 403.

### III. Exclusion of Legally Incorrect References to Fiduciary Duties is Not Overly Burdensome And Therefore Must be Granted

For the obvious and explained reasons, incorrectly indicating that Mr. Demos had a fiduciary duty to his counterparties is highly prejudicial. Not only is it wrong but it also strikes at the very heart of the defense's case. However, all the defense is asking is for the Court to require the Government to use the correct terminology and to refrain from using inaccurate and misleading terms. Using the incorrect terms are "unnecessary to prove a claim" and do nothing to impede the government's ability to present their arguments. *Aristocrat,* 2009 WL 3111766, at *7. All the Government would be required to do is use correct terminology. Any limited burden imposed by precluding the government from using these terms pales in comparison to the highly prejudicial nature of these terms. Therefore, the Court should preclude the Government from using terms including, but not limited to, "agent," "middleman," "matchmaker," "broker," and "commission" from which a juror could incorrectly infer that a fiduciary duty existed and order the Government to refer to Mr. Demos by his legal title as either a "Principal" or "trader".

**IV.    Witness Testimony That the Incorrectly Perceived a Fiduciary Relationship with Mr. Demos Must Be Excluded**

As explained above, Mr. Demos was not an agent of his counterparties and did not owe them any fiduciary duty. Therefore, the use of any terms that indicate that Mr. Demos owed a fiduciary duty to his counterparties is prejudicial and must be excluded. This applies to counterparties' incorrect perception of their relationship with Mr. Demos as well.

### a. Witness Testimony Incorrectly Perceiving a Fiduciary Relationship is Irrelevant and Prejudicial and Must be Excluded

A party's perception of the relationship is not relevant to the duties owed by one party to another because, "when parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Litvak*, 808 F.3d at 187 (quoting *In re Mid-Island Hosp.*, Inc., 276 F.3d 123, 130 (2d Cir. 2002) (internal quotations omitted); *see also Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 274 (2d Cir. 2013). In this case, materiality is an objective standard which must be determined by reference to a reasonable investor in the RMBS market and not any particular counterparty. *See In re WorldCom, Inc. Sec. Litig.*, No. 02-Civ.-3288 (DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) ("[T]he 'reasonable investor' is equivalent to the market itself.") (quoting *In re ICN/Viratek Sec. Litig.*, No. 87-Civ.-4296 (S.D.N.Y. July 15, 1996)). This has been specifically affirmed when it comes to the RMBS cases. *See Shapiro,* Tr. at 2648-2649 ("in determining whether an alleged misstatement was material, you must consider the matter from the standpoint of such a reasonable investor").

AUSA Jonathan Francis recently argued that the point of showing witness perception in these cases is to "show what a reasonable investor would have thought." *Litvak II,* 17-1464, Oral Arguments, at 13:05 (2d Cir. Dec. 11, 2017). It flies in the face of reality to conclude that a

reasonable investor in the RMBS market–composed of the world's most sophisticated hedge funds and asset managers–misunderstood the fundamental nature of its relationship with Mr. Demos and Cantor Fitzgerald. A counterparty with such an erroneous view cannot be a proxy for the reasonable investor. Neither can the testimony of such a mistaken counterparty as to the nature of the relationship be probative of an objective standard of materiality. For example, the Government elicited testimony from a witness in *Litvak* who claimed to perceive the defendant as "clearly working on my behalf." *Id.* at 16:56. AUSA Francis admitted that this incorrect and prejudicial statement was one "oddball thing." *Id.* at 16:27. An "oddball thing" is not the belief of a reasonable investor and such perceptions cannot be allowed to prejudice the jury.

Establishing materiality is an objective standard and therefore cannot be a reason for finding such evidence to be probative or relevant. Since such evidence is not relevant or probative, under Rule 401 and 403 the government should be barred from introducing witnesses' perception of their relationship with Mr. Demos and Cantor Fitzgerald. *See Litvak II,* 17-1464, Oral Arguments, 14:55 (2d Cir. Dec. 11 2017) (Judge Winters: I just don't understand why there was evidence that was simply mistaken . . . evidence that might have lead someone to convict him when the guy was just wrong as a matter of law").

*Johnson v. Priceline.com, Inc.*, provides further proof that such testimony is not relevant and must be excluded. There, customers sought to recover alleged "secret profits" earned by Priceline through its website, which served as an intermediary between purchasers of travel services and travel operators. *See* 711 F.3d at 274. Plaintiffs alleged that, although the applicable contract had established an arms-length relationship, an agency relationship arose between Priceline and its customers because the website "represented itself as a travel agent with the client's best interests in mind," and that, by failing to disclose its "spread," or profit, the website had

breached its duties as plaintiffs' agent. *Id*. at 274-75. The Second Circuit held the plaintiffs' subjective view to be of "*no concern,*" and thus rejected plaintiffs' claim that Priceline owed agency-type duties to its customers. *Id.* at 279-80 (emphasis added).

The same is true here. The trading counterparties' perception of their relationship with Mr. Demos is of no concern and irrelevant, as that relationship is defined as a matter of law. As such, testimony suggesting an agency relationship would confuse the jury, and prejudice Mr. Demos by intimating – incorrectly – that Mr. Demos unlawfully breached a fiduciary relationship or relationship of trust that Mr. Demos owed to his counterparties.

Recognizing the weakness of their counterargument, the Government's response in *Shapiro* to the *Priceline* argument was rightly relegated to a footnote. *Shapiro Gov't Brief in Opposition*, 2, n.1 (July 25, 2016). There, the Government's footnoted response to the *Priceline* precedent was that in *Priceline* the Government was seeking to establish an agency relationship as opposed to allowing witnesses to testify as to their perception of the relationship. *See id.* This supposed distinction is nonsense. *Priceline* demonstrates that counterparties' *perception of the relationship is irrelevant* when it comes to arm-length relationships such as the ones in the RMBS market. That is what is important here is that it makes no difference what the context of the perception is. Irrelevant evidence must not be allowed under Rule 401 and especially when it would be prejudicial as it would be here under Rule 403.

Such testimony of witnesses' perception is not relevant because it provides no basis for finding materiality and it is prejudicial since it has no relevance to the case. Therefore, the Court should prohibit any of David's counterparties' from referring to their perception of their relationship with Mr. Demos and Cantor Fitzgerald as an "agent," "agency," "middleman," "matchmaker," "broker," and from using the terms "commission," "go between," "intermediary,"

11

or anything, including analogies, that could cause the jury to mistakenly believe that a fiduciary duty existed between Mr. Demos and his counterparties as inadmissible under Rule 401 and 403.

### b. *Witness Testimony Incorrectly Perceiving a Fiduciary Relationship is Inadmissible Lay Witness Opinion Testimony and Must be Excluded*

Unless qualified as experts under Rule 702, counterparties' testimony regarding the legal status of the relationship between them and Mr. Demos constitutes "specialized knowledge" which lay witnesses are precluded from testifying about. Rule 701 precludes testimony based on specialized knowledge by a lay witness "in the form of an *opinion*," regardless of the purpose for which the opinion is offered. Fed. R. Evid. 701 (emphasis added). The Second Circuit has ruled that "[i]f the opinion rests *in any way* upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (emphasis added) (citation and internal quotation marks omitted). Understanding the nature of the RMBS market, and certainly understanding the distinction between the relationship of Principals like Mr. Demos, and non-principals with a fiduciary duty, to their counterparties, requires "specialized knowledge." The Government itself admitted in *Litvak* that evidence regarding the defendant's relationship to the counterparties "would call for a legal conclusion which 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Litvak Gov't Reply Brief*, 12 (May 26, 2016) (quoting *Garcia*, 413 F.3d at 215). Consequently, opinion testimony regarding the relationship between Mr. Demos and his counterparties is barred under Rule 701.

Furthermore, how the counterparties understood the relationship between themselves and Mr. Demos is similarly barred under Rule 701's specialized knowledge prong. First, the matter at dispute in this case is how highly knowledgeable Qualified Institutional Buyers conduct business. A major part of the trial will revolve around the expertise of Mr. Demos's counterparties and the

12

idea that such established institutional actors' expertise meant that Mr. Demos's misrepresentations were not material. The Court in *Garcia* explained that "the purpose of this final foundation requirement [barring opinion testimony based on specialized knowledge] is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony." *Garcia*, 413 F.3d at 215. Allowing these knowledgeable counterparties' perception of their relationship with Mr. Demos to be admitted will directly counter this stated purpose for the specialized knowledge requirement. Permitting the introduction of such evidence will mean that the jury will hear some of the world's most knowledgeable hedge fund and asset managers detail what they believe the relationship is when they engage in making a deal.

Coming from these witnesses steeped in expertise will give the testimony about the relationship the "aura of expertise" that Rule 701 and the Second Circuit expressly forbids. *Id.*; *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (explaining that the specialized knowledge requirement is to ensure that the expert witness requirements are not "evaded through the simple expedient of proffering an expert in lay witness clothing"). Lay jurors who hear this incorrect perception will be left incorrectly thinking that an agency relationship existed since it will – rightfully – seem inconceivable that a witness with the attainment of Qualified Institutional Buyer status would be so mistaken about such an important aspect of their business. However, this is indisputably legal error. Since in this case, the incorrect evidence is coming from parties with extremely specialized knowledge whose explanations are thereby cloaked in an aura of expertise, the Court should prevent the jury from hearing this testimony.

Second, this testimony is unequivocally specialized knowledge which means the proponents must be qualified under Rule 702. Simply because the witnesses have "personal

familiarity with the facts of case" does not make it admissible opinion testimony under Rule 701. *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, No. 15-0563-CV, 2017 WL 5176230, at *4 (2d Cir. Nov. 8, 2017). What matters is whether the "reasoning processes [are] *familiar to the average person in everyday life.*" *Garcia,* 413 F.3d at 215 (emphasis added); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) ("to the extent Huang's testimony was not a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error"); *United States v. Ferguson*, No. CRIM 3:06-CR-137 (CFD), 2007 WL 4556625, at *1 (D. Conn. Dec. 20, 2007).

It simply "is not apparent . . . that the average person, with no . . . experience, would have known" what fiduciary relationship exists between Principals and Qualified Institutional Buyers in the Residential Mortgage Backed Securities market. *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-06530 EAW, 2017 WL 1498080, at *2 (W.D.N.Y. Apr. 25, 2017). Understanding such complicated relationships is not for those inexperienced in the intricate RMBS market. Any witness who would testify to their misguided perception of the relationship are basing their perception "exclusively in his expertise" in the RMBS market. *Rigas,* 729 F.3d at 224; *see also Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2015 WL 685159, at *3 (S.D.N.Y. Feb. 18, 2015). This testimony is based on expertise that the average person simply does not have and could not have "resulted from a process of reasoning familiar in everyday life" since average people know virtually nothing about this area. *Rigas*, 490 F.3d at 224. Accordingly, such testimony is inadmissible under Rule 701. Of course, the government is welcome to attempt to qualify these witnesses as experts under Rule 702 in which case such testimony would be admissible. Therefore, the Court should preclude the Government from eliciting testimony of the

14

witnesses' perception of the relationship between themselves and Mr. Demos both because it is not relevant and because it is impermissible lay opinion testimony.

V.     **Government Suggestions to Jurors of an Agency Relationship Must be Excluded**

Simply not using words like "agent" and not arguing that Mr. Demos owed his counterparties a fiduciary duty is not enough. The Government must also be forbidden from pursuing arguments that *suggest* to the jury that Mr. Demos acted as an agent or owed fiduciary duties to his counterparties even if they do not explicitly say so or use explicit terms indicating so. The lesson to be learned from *Litvak* and *Shapiro* is that the Government will persist in making these prejudicial arguments despite their inaccuracy. The Government has made it clear that they will obstinately continue to make these improper arguments and force the Court to correct their misbehavior through jury charges. Therefore, the Government needs to be strictly policed in this case. Since the likelihood of them introducing incorrect and improper testimony is extremely high, the Court should ensure, from the start, that the Government does not improperly suggest this relationship to jury.

In *Litvak*, despite later admitting that the defendant was not an agent and did not owe fiduciary duties to his counterparties, the Government pursued a trial strategy of suggesting this relationship to the jury. For example, the Government asked one of Mr. Litvak's counterparties, "[a]re you familiar with the distinction between trading as an agent and trading as a principal?" Trial Tr. 943:11-944:3, Litvak, No. 3:13-CR-19 (Feb. 21, 2014). When the witness affirmed that he understood the distinction, the Government asked the witness, with respect to a trade referenced in the indictment, "[s]o in effect which is Mr. Litvak in this trade?" *Id*. The witness responded, mistakenly, "[i]n this one he's acting as an agent, a broker." *Id*. The Government did nothing to make clear–to the witness or the jury–that the witness's perception was contrary to the truth.

15

The Government did not just stop there. In its closing argument, the Government did everything in its power to suggest an agency relationship between Mr. Litvak and his counterparties, going so far as to analogize the bond trader's undisputedly principal-to-principal relationship to that of a home buyer and real estate agent:

> Think about the transaction this way. It is very simple. You can come up with your own analogies when you're deliberating because a lot of this stuff is – it's not just about bonds. It's about anything. If you had a real estate transaction where a seller of a house agreed with a Realtor to sell the house for them. Let's say the price was $200,000. You're going to pay the Realtor $10,000. The Realtor said, I've got you a buyer, $200,000. I will keep 10,000 and you'll get 190 and we'll have sold your house. And you're the seller, the homeowners that sell the house and may say, great, $200,000, I will take that price. You get 10, I'll keep the 190. Only you come to learn later that the Realtor sold it for 225 and kept $35,000. That's just like Ms. Corso's bond. *And anybody would consider that an out-and-out fraud. A price that you agreed to but you didn't know that the house sold for $25,000 more than that and that the Realtor or bond trader kept the money to increase their profits.*

Trial Tr. 2462:23-2463:15, Litvak, No. 3:13-CR-19 (Mar. 5, 2014) (emphasis added). Even at the second trial, the Government again tried to make this argument with AUSA Francis replying in the affirmative to Judge Hall's question whether he intended to argue to the jury "as you argued in the first trial that he was their agent." *Litvak,* 3:13cr19 (JCG), Oral Hearing, at 15 (June 16, 2016). The Government's argument to the jury was clear: the bond trader negotiating a principal transaction with a counterparty should be held to the same standard (and Mr. Litvak should owe the same duties) as the real estate agent acting on behalf of her client. This argument is directly contrary to the law, and was therefore outside the bounds of fair advocacy. *See Litvak*, 808 F.3d at 187 ("When parties deal at arm's length – as the parties did here – no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.") (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (internal quotations omitted)).

The Government's mockery of the proper legal arguments did not end there. They bookended their closing statement in *Shapiro* with improper arguments alleging the non-existent fiduciary duty. They began their closing argument again using analogies that inferred a fiduciary duty:

> You cannot lie about significant things in order to take other people's money. It's a simple straightforward rule. It's not a novel idea. If we step back five weeks before we started this trial, and I told you about that rule, your common sense would have told you that that sounds right, *that people know that you cannot lie about important things to take other people's money. It's true whether you're a used car salesman, it's true if you're in the real estate business, and it's particularly true if you're in an industry responsible for, tasked with control of, the wealth of people and all the critical institutions you heard about during the course of this trial, things like pension funds, endowments, charities.*

*Shapiro*, Tr. Vol. XII, 2675-76 (emphasis added). The government then capped their closing by arguing: "We have simple, straightforward rules: Don't lie about important things to take other people's money or property." *Id.* at 2744. Similarly, in rebuttal, the government argued that "Just because you're not someone's agent, doesn't mean you get to rip them off . . . *Here, you don't rip your clients off by lying to them. It's not a new rule.*" *Shapiro*, Tr. Vol. XIV, 2955-56 (emphasis added).

Once again, the Government's closing argument revolved around attempting to convince the jury that a fiduciary duty existed despite the Government's consistently stated recognition that no such duty exists. As Judge Hall explained in *Litvak*: "I don't understand how you can try to draw an analogy to something which we know as a matter of law is a false analogy." *Litvak,* 3:13-cr-19 (JCG), Oral Hearing, at 13 (June 16, 2016).

Such arguments are wildly prejudicial. As a matter of law, this relationship does not exist between Mr. Demos and his counterparties. Despite knowing that this argument is false, the Government has persisted in unlawfully trying to suggest such a relationship in the previous

17

RMBS cases – perhaps because they know just how prejudicial such an argument is. Recognizing this, the *Shapiro* Court granted defendant's motion barring "*any suggestion* by the Government that the defendants owed fiduciary duties to the counterparties." *Shapiro Telephone Conference*, at 65 (April 24, 2017) (emphasis added). Despite this ruling, the Government still made these prejudicial statements. It is undisputed that Mr. Demos did not owe any fiduciary duty to his counterparties. The Government's prior attempts to circumvent this accepted fact shows the need for constant vigilance ensuring that, in this case too, the Government does not suggest this improper, and highly prejudicial, relationship to the jury. With such a history of introducing this argument, the Court must put a stop to it being introduced from the start and not rely, again, on jury instructions to clear up the Government's purposeful improper arguments. Therefore, the Court should rule that *any* suggestion by the Government of such a fiduciary relationship during the trial, or use of terms or analogies that could convey such an agency relationship to the jury, must be excluded under Rule 401 and 403.

## CONCLUSION

Defendant Demos respectfully requests this Honorable Court preclude (1) the Government from using the terms including, but not limited to, "agent," "agency," "middleman," "matchmaker," "broker," and "commission" from which a juror could incorrectly infer that a fiduciary duty existed and order the government to refer to David by his legal title as either a "Principal" or "trader;" (2) the counterparties' from testifying as to their perception of their relationship with Mr. Demos; (3) the Government from eliciting testimony of the witnesses' perception of the relationship between themselves and Mr. Demos, both because it is not relevant and because it is impermissible lay opinion testimony; and (4) *any* suggestion by the Government of a fiduciary relationship during the trial, or use of terms or analogies that could

convey such an agent or agency relationship to the jury.

          Respectfully submitted,

          DAVID DEMOS

    By:  */s/ George Leontire*

          Jose Baez
          The Baez Law Firm
          40 SW 13th Street, Suite 901
          Miami, FL 33130
          (305) 999-5111
          jose@baezlawfirm.com

          George Leontire
          The Baez Law Firm
          66 N. Second Street
          New Bedford, MA  02108
          (855) 223-9080
          george@baezlawfirm.com

          Ronald S. Sullivan, Jr.
          6 Everett Street
          Cambridge, MA 02138
          (617) 496-4777
          prof.ron.sullivan@gmail.com

          – and –

          Michael L. Chambers, Jr. (ct28580)
          100 Wells Street, Suite 2C
          Hartford, Connecticut 06103
          (860) 231-9535
          chamberslegalservices@gmail.com

          His Attorneys