UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16-CR-220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DEMOS, | : | |
| | : | |
| Defendant. | : | February 2, 2018 |

## DEFENDANT DEMOS'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* REGARDING EXPERT WITNESSES

Defendant David Demos respectfully submits this memorandum of law in opposition to the Government's motion *in limine* for an order concerning Mr. Demos's experts. *See* Govt. Mot. Regarding Def. Expert Witnesses. (ECF 140) (hereinafter "Govt. Mot."). In its motion, the Government requested relief regarding Mr. Demos's expert witness' evidence, opinions, and testimony. *Id.* at 1.

The Government's arguments are without merit. First, their argument that the Court should limit the Defense to only presenting expert testimony currently disclosed in the Notice, Govt. Mot., at 2, should not be granted. Second Circuit precedent is clear that not allowing adequate expert testimony is reversible error. Moreover, additional precedent dictates that untimely disclosure of expert testimony is not an automatic bar on inclusion. Additionally, the Government's entire argument is based on the Court having discretion when it comes to admitting experts. The Court should not exercise its discretion in a manner that prematurely precludes the Defense from presenting additional expert testimony in light of the possibilities of additional disclosures by the Government, and testimony or evidence at trial, that makes it clear that additional expert testimony becomes necessary for Mr. Demos to present a complete defense to the charged crimes. Second, the Government's argument that Dr. Fabozzi's testimony

regarding the manner in which reasonable investors conduct business and what constitutes a breach of fiduciary duty of an investor should be barred, Govt. Mot., at 3-9, must be denied. The Government's argument rests on an entirely unsupported claim that academic knowledge is not adequate foundation, however academic exposure is enough to provide adequate foundation for an expert witness's testimony, and an expert does not have to have experience in the exact specialized field at issue in order to be qualified. Regardless, as the Notice details, Dr. Fabozzi has a plethora of experience beyond academic exposure. Moreover, the Government's argument that testimony about how a reasonable RMBS investor conducts business is a legal conclusion. *See* Govt. Mot., at 8-9, which rests on the false and unsupported equivalency between testimony by Dr. Fabozzi regarding the reasonable investor and the ultimate issue of materiality. The Government simply conflates the two without explanation in making their argument. Indeed, extensive precedent dictates that evidence about how a reasonable RMBS investor conducts business, and what constitutes a breach of fiduciary duty must be admitted. The Government's motion regarding expert witnesses must be denied.

## ARGUMENT

### I. THE COURT SHOULD NOT LIMIT DAVID'S EXPERT EVIDENCE TO THE NOTICE

Refusing to heed the Second Circuit's admonitions, the Government asks the Court to preclude the defense from "offering any expert opinions or bases for expert opinions that he has not already disclosed in the Notice, except as the parties have agreed." Govt. Mot., at 2.[1] This request is too broad. Although the Defense has no current plans to introduce experts not listed in

---

[1] This motion in no way changes the Defense's prior agreement that the expert opinions disclosed in the Notice would not be subject to change, and the Defense would update the Notice to disclose if either defense expert relies on any of the documents produced in response to defendant's Fed. R. Crim. P. 17(c) subpoenas as an additional basis for any existing opinion. This motion is specifically with regards to potential additional expert witnesses.

the Notice, the Defense must be permitted the possibility to introduce expert testimony to rebut unanticipated future Government disclosures and evidence or testimony at trial. Rather than ask for a blanket admission of such future experts, the Defense simply asks that the Court consider the circumstances of any future proposed experts at the time that the need for the additional expert testimony arises.

In the closely analogous case of *United States v. Litvak*, 808 F.3d 160 (2015), the Second Circuit found it to be reversible error to exclude expert testimony related to the many complexities of the RMBS market. For example, when explaining why it was reversible error to exclude one of the experts, the Second Circuit explained that it was because "[t]he pricing of RMBS is more complicated because it tend[s] to be more subjective, [is] available mainly or only from dealers, and [is] often based on models as opposed to prices from prior transactions." *Litvak*, 808 F.3d at 182 (internal quotations omitted).

In the subsequent RMBS case of *U.S. v. Shapiro,* No. 15-cr-00155 (D.Conn 2016), when confronted with this same request by the Government, Judge Chatigny accepted the Second Circuit's assistance on this matter of law and denied the part of the Government's motion which, like here, asked the Court to preclude the defense from presenting any additional expert witnesses.[2] The lesson to be learned from these cases is that the Second Circuit looks harshly at the exclusion of expert testimony in RMBS cases and that it should only be done if the proper care is taken.

Beyond the Second Circuit's clear instruction regarding the exclusion of expert testimony in this case, further precedent dictates that the Court should deny the Government's

---

[2] The only part of the Government's motion which Judge Chatigny granted was the requirement that the Defense disclose in advance the substance of the anticipated expert testimony. *See Shapiro*, (ECF 253) (Oct. 26, 2016).

motion. While the Defense has no intention to introduce expert witnesses besides those listed in the Notice at this time, there is no basis for preemptive action. Unexpected or untimely disclosure of expert testimony is not an automatic bar to such testimony at trial. *See, e.g., United States v. Bernard*, No. 3:97-CR-48, 1998 WL 241205, at *4 (D. Conn. Apr. 2, 1998) (denying motion to exclude late disclosed expert testimony); *United States v. Chase*, No. 2:04–CR–135, 2005 WL 6733654, at *5 (D. Vt. Sept. 16, 2005) (same). To the extent circumstances arise that lead the defense to disclose additional expert testimony, the Court should address the merits of any such disclosure at that time, as opposed to issuing a blanket preclusion of any as-yet undisclosed experts. This is especially true in light of the Second Circuit's express acknowledgement of the importance of expert testimony in RMBS cases, like this one.

To support their argument for precluding any further expert testimony, the best argument the Government can muster is that "Rule 16(d)(2) gives the district court the ***discretion*** to preclude expert testimony regarding any topics or opinions not properly disclosed." Govt. Mot., at 2 (internal quotations and citations omitted) (emphasis added). It is clear that the Court should exercise its discretion by denying the Government's request for a blanket preclusion of the possibility of the Defense to offer additional experts, because it is premature. Instead, the Court should reserve the right to rule on any future experts the Defense might need to introduce to rebut future Government disclosures and testimony or evidence at trial.

## II. DR. FABOZZI'S TESTIMONY ABOUT HOW A REASONABLE RMBS INVESTOR WOULD ACT MUST BE ADMITTED

### a. There is Adequate Foundation to Support Dr. Fabozzi's Proposed Testimony About how a Reasonable RMBS Investor Would Act

The Government correctly cites the *Daubert* standard but then later improperly asserts that Dr. Fabozzi's opinions about the attributes of an "objective reasonable investor" do not rest

4

on a reliable foundation. Govt. Mot., at 8. The Government bases this argument on their alleged claim that "while Fabozzi has had extensive academic exposure to RMBS analysis and valuation . . . [Dr. Fabozzi] does not claim that he has any education, training or experience in legal matters or in actually trading RMBS or other fixed income securities." Govt. Mot., at 8.

As an initial matter, even accepting that Dr. Fabozzi does not have experience in actually trading RMBS, the Government provides *no support* for their argument that Dr. Fabozzi's educational experience is not enough to opine on this topic. In fact, courts in this Circuit have ruled that "formal education may also suffice to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying." *Valentin v. New York City*, No. 94 CV 3911 (CLP), 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997). Therefore, on this basis alone the Court should deny the Government's motion which is based on a completely unsupported claim about academic exposure.

Along this line, the Government quotes *Daubert* and Federal Rule of Evidence 702 in their "Applicable Legal Standard" section, but then, understanding that the law does not support their assertion, makes no mention of them in their argument. Govt. Mot., at 6, 8. Federal Rule of Evidence 702 says that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, **_or education_** may testify in the form of an opinion or otherwise if:
> (a) **the expert's scientific, technical, or other specialized knowledge** will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

It is indisputable that Dr. Fabozzi has educational experience in this field. Rule 702 explicitly allows a witness to be qualified as an expert based only on education. On the other hand, the Government cites no case law for its proposition that Dr. Fabozzi's "extensive academic exposure" is not enough to lay the foundation for his testimony about a reasonable investor. Govt. Mot., at 8. This is because it is not supported by law. Dr. Fabozzi's extensive academic exposure is sufficient under Rule 702 and Second Circuit case law to establish a proper foundation. Therefore, the Court should deny the Government's motion.

Furthermore, the Government has conceded that Dr. Fabozzi can be qualified as an expert to testify about "what RMBS investors generally do or think." Govt. Mot., at 8. The Government is only opposing the foundation for Dr. Fabozzi to specifically testify about how a reasonable investor would act. However, even accepting this proposition, it is widely accepted within this Circuit that "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *See, e.g., In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citing *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 80 (2d Cir.1997)); *see also Sullivan v. Ford Motor Co.*, No. 97CIV 0593 (RCC), 2000 WL 343777, at *5 (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion"). Since even the Government concedes that Dr. Fabozzi is qualified to testify about the general RMBS field, even accepting that Dr. Fabozzi does not have specific expertise in trading RMBS, case law is clear that he may still present testimony about how reasonable RMBS investors conduct business.

Similarly, the Second Circuit has consistently ruled that "the place to quibble with [an expert's] academic training is on cross-examination and goes to his testimony's weight . . . not its admissibility." *United States v. Joseph*, 542 F.3d 13, 21–22 (2d Cir. 2008) (internal quotations omitted); *see also Milliman v. Mitsubishi Caterpillar Forklift Am., Inc.*, 594 F. Supp. 2d 230, 237 (N.D.N.Y. 2009) (same). The Government cites no case law for their unsupported assertion because precedent indisputably dictates an opposing conclusion. It is simply not factual to claim that Dr. Fabozzi's extensive formal education is not enough to qualify him as an expert witness to opine about a reasonable investor. Therefore, for this reason as well, the Court should deny the Government's unsupported argument and allow Dr. Fabozzi to testify about how reasonable RMBS investors conduct business.

Additionally, Dr. Fabozzi does have more than just academic exposure to RMBS analysis and valuation. The Government misleadingly cites page 4 of the notice and claims that "[t]he only basis identified for Fabozzi's opinions are his 'education, training and experience.'" Govt. Mot., at 8. The Government then bases its argument on the claim that Dr. Fabozzi only has "extensive academic exposure." *Id*. However, the Government ignores the prior 3 pages which detail Dr. Fabozzi's extensive qualifications which go beyond academic exposure. For example, the Notice clearly states that "Dr. Fabozzi has been a trustee for a complex of funds sponsored by BlackRock Inc. (the closed-end funds) since its inception in 1988." Govt. Mot. at 13 (Defendant's Expert Notice, at 3). BlackRock, then Blackstone, is the world's largest asset management firm who made their name working with mortgage backed securities. During Dr. Fabozzi's tenure with the company he has been tasked with ensuring that BlackRock's investors act in a reasonable manner by conducting rigorous, independent analysis, and exercising due diligence when trading RMBS. In Dr. Fabozzi's role he needs to worry about being sued if

7

investors do not act reasonably when making investment decisions. Therefore, it is nonsensical to claim that his expert opinions about a reasonable investor do not rest on a reliable foundation.

The Notice also details that Dr. Fabozzi has been retained by the bond market to provide training and to "help establish sales and trading desks" at more than 30 firms. Govt. Mot. at 13 (Defendant's Expert Notice, at 3). Surely, the Government cannot argue that in this role he would not have experience about how reasonable investors act beyond simply academic exposure. Dr. Fabozzi has educated traders on how to properly trade RMBS. Since Dr. Fabozzi does have practical experience in dealing with how reasonable investors act, the Court should further deny the Government's motion and allow Dr. Fabozzi's expert testimony about how reasonable RMBS investors conduct business.

The Government's argument is unsupported by precedent, which clearly permits experts with academic exposure. Moreover, Dr. Fabozzi is a world-renowned expert in the RMBS field. The Government's quibbling can be adequately dealt with on cross-examination. Therefore, the Court should deny the Government's motion and allow Dr. Fabozzi to testify about how a reasonable RMBS investor would act.

> **b. The Court Should Not Preclude Expert Testimony About How Reasonable RMBS Investors Conduct Business and What Constitutes a Breach of Such an Investors' Fiduciary Duty**
>
> > **i.** The Government makes an unsupported false equivalency between testimony about a reasonable investor and testimony about the actual ultimate issue of materiality.

The Government makes an unsupported assertion that Dr. Fabozzi's proposed testimony about "reasonable investors" is an inadmissible legal conclusion. Govt. Mot., at 8-9. This is in error. The Defense agrees that Dr. Fabozzi is forbidden from specifically testifying about whether Mr. Demos's statements were material to his counterparties. However, the Government

8

incorrectly *equates testifying about how a reasonable investor would act with an actual legal conclusion about materiality*. The Government argued:

> Dr. Fabozzi's proposed testimony **is the equivalent of this argument**: (i) reasonable investors are never duped, and it is a breach their fiduciary duties to let themselves be duped; (ii) if the victims fell for Demos's lies, then they cannot be reasonable investors; (iii) **therefore, Demos's misrepresentations cannot be material because they were only important to unreasonable investors like the victims.**

Govt. Mot., at 8-9. It is the Government that is making this argument about materiality, not Dr. Fabozzi. The word "material" is not found in any of the numerous bullet points from Dr. Fabozzi's proposed testimony that the Government quotes. Govt. Mot., at 3-4. The Government spends much time arguing that Dr. Fabozzi testifying about a reasonable investor is an impermissible legal conclusion. However, this is all based on the unexplained faulty equation the Government attempts to import into Mr. Demos's expert disclosure.

As the Government concedes, the "defendant can argue this [materiality] in closing." Govt. Mot., at 9. That is exactly what the Defense intends to do. Dr. Fabozzi will not be testifying regarding the legal conclusion of whether Mr. Demos's misrepresentations were material. Dr. Fabozzi will be testifying about how a reasonable RMBS investor would act. Materiality will not be discussed. Then, as the Government concedes must be permitted, the Defense will argue in closing that, based in part on what Dr. Fabozzi presents about a reasonable RMBS investor, Mr. Demos's misrepresentations were not material to his counterparties. Dr. Fabozzi will not mention materiality and it is simply a red herring for the Government to make their unsupported assertion that testifying about a reasonable RMBS investor is the same as testifying about whether Mr. Demos's misrepresentations were material. Therefore, the Court should deny the Government's motion and allow Dr. Fabozzi to testify about how a reasonable RMBS investor conducts business.

> ii. Precedent dictates the admission of evidence related to how reasonable RMBS investors conduct business.

Not only is the Government's assertion simply a false equivalency based on unexplained and faulty logic, but also, the Second Circuit in *Litvak* expressly found that this evidence in Dr. Fabozzi's proposed testimony is not an impermissible legal conclusion and must be allowed. In *Litvak*, the Second Circuit dealt with the District Court's exclusion of an expert witness who was to testify for the defense on the materiality element of the crime. As the Second Circuit explained there, it is reversible error to not allow David to introduce expert testimony that either "the specific statements at issue in the case . . . or the types statements at issue are generally not important ***to the reasonable investor***." *Litvak,* 808 F.3d at 183-84 (emphasis added). The Court explained that if the expert were not allowed to testify about how a reasonable investor would act, "Litvak would be left only with the 'victims' of his conduct as sources of potential testimony on this issue, an odd limitation where the jury is to evaluate materiality in an objective manner." *Id.* at 183–84. What is important to a reasonable investor is exactly what the Government claims without support to be an inadmissible legal conclusion. The Second Circuit expressly ruled that expert testimony about what a reasonable investor would consider important must be allowed. Therefore, the Court should deny the Government's motion and allow Dr. Fabozzi to testify about how reasonable RMBS investors make investment decisions.

The Second Circuit's decision is based in part on the idea that in the context of misrepresenting RMBS prices, materiality "is the central issue in the case." *Id.* at 182. Accordingly, David must be permitted to present a defense to this central issue of the case. *Id.* at 183 (ruling that defendants should be permitted to offer evidence to "counter the government's argument that a reasonable investor would have found [the defendant's] statements material."); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due

10

Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense") (internal citations omitted). As the Government concedes, the legal standard is what an objectively reasonable RMBS investor would deem material. Govt. Mot., at 3. This explains why the Second Circuit found it so vital that expert testimony about what a reasonable investor would consider in making their investment decisions be admitted. Thus, not allowing Dr. Fabozzi to testify about what a reasonable RMBS investor would consider in making their investment decisions would violate Mr. Demos's Federal Constitutional right to present a complete defense.

>Furthermore, Ram Willner, the expert at issue in *Litvak* was to testify in part that:
>
>**[W]here a manager follows rigorous valuation procedures, as was the case here, consideration of, or reliance on, statements by sell-side salesmen or traders concerning the value of a RMBS or the price at which the broker-dealer acquired it or could acquire it, are not relevant to that fund's determination with respect to how much to pay for a bond**. In Mr. Willner's opinion, such statements from sell-side sales representatives or traders are generally biased, often misleading, and *unworthy of consideration in trading decisions. Accordingly, such statements from sell-side sales representatives or traders are not material to a professional investment manager's decision-making.*

*Litvak,* 808 F.3d at 182 (italics in original) (bold added). The Second Circuit foreclosed the Government's argument here. The Government argued that all of Willner's testimony was an impermissible legal conclusion. *See id.* The Court rejected this argument and explained that only the last sentence and half, the "italicized portion," where the expert attempted to explicitly testify that the misrepresentations were not material is an impermissible legal conclusion. *Id.* The Second Circuit expressly ruled that the rest of the expert's proposed testimony *is not a legal conclusion*. The first part of the proposed testimony is about a manager who "follows rigorous procedures" – surely the equivalent of a "reasonable investor." *Id.* The Court found that it is

reversible error to not admit testimony about what this reasonable manager who follows "rigorous valuation procedures" would "consider[] or "rel[y]" on when making the "determination with respect to how much to pay for a bond." *Id.*

That is exactly what the statements the Government takes issue with are going to. All of the statements excerpted by the Government are evidence about what a reasonable investor would consider and rely on when making their investment decision. Nowhere does Dr. Fabozzi's proposed testimony argue that certain statements "are not material." *Id.* at 182. In other words, based on the *Litvak* Court, expert testimony about what a reasonable investor would consider and rely on when making their investment decision must be admitted while only testimony that specific statements are not material are inadmissible legal conclusions. Therefore, the Second Circuit again expressly rejects the Government's false equivalence between arguing about a reasonable investor and arguing the actual legal conclusion of materiality. Thus, the Court should deny the Government's motion and allow Dr. Fabozzi's proposed testimony about how reasonable RMBS investors conduct business.

Moreover, in *Litvak II*, Judge Hall was tasked with the same issue about excluding expert witnesses, but this time, she had the Second Circuit's opinion meant "to assist the District Court on remand" when it came to excluding expert witnesses. *Id.* at 187. The Defense in *Litvak II* introduced a motion to supplement expert disclosure with the proposed testimony of Philip R. Burnaman III, John Dolan, Marc Menchel, and Walter Torous. *See Litvak*, No. 3:13CR19, Mr. Litvak's Unopposed Motion to Supplement Expert Disclosure, (Dec. 27, 2016). Throughout this Disclosure is proposed testimony about how "reasonable investors" in the RMBS market conduct business. *See id.* at 3, 4, 6, 7, 9, 22. However, understanding that the Second Circuit had

12

explicitly found that it was an abuse of discretion to exclude such evidence, the Government did not oppose the motion and Judge Hall allowed the proposed expert testimony.

To explain just how similar the proposed testimony there was to what the Government is asking the court to exclude here, we can compare some of the Government's objections in this case to the proposed testimony in *Litvak II*. The Government's first bullet in their motion is about Dr. Fabozzi's proposed testimony that: "Reasonable investors in this market conduct rigorous, independent analysis and due diligence . . ." Govt. Mot., at 3. As explained above, they argue without explanation, that such statements are impermissible legal conclusions. However, in the proposed witness testimony in *Litvak II*, the Defense proposed that Burnaman "may offer his opinion that a reasonable investor in this market conducts rigorous, independent analysis and due diligence . . ." *Litvak*, No. 3:13CR19, Mr. Litvak's Unopposed Motion, at 3. These two statements are virtually the same. Yet, understanding the Second Circuit's instructions, the Government did not even oppose this proposed testimony and Judge Hall granted the Defense's motion.

The Government now opposes proposed testimony about "how reasonable investors go about acquiring, compiling, evaluating and verifying such information." Govt. Mot., at 4. Yet in *Litvak II*, the Government had no opposition, and Judge Hall granted the motion, allowing proposed testimony about "how reasonable investors go about acquiring and confirming such information." *Litvak*, No. 3:13CR19, Mr. Litvak's Unopposed Motion, at 4. Virtually every bullet point quoted by the Government in its brief is directly countered by proposed expert testimony admitted unopposed in *Litvak II*, based on the Second Circuit's opinion in *Litvak I*.[3]

---

[3] To avoid wasting the Court's time, here are some relevant statements from the proposed expert testimony in *Litvak II* that directly counters the Government's argument here. For example, Judge Hall admitted there without opposition Mr. Burnham's testimony: "that a reasonable

13

The Second Circuit was unequivocal about the fact that expert testimony about how reasonable RMBS investors conduct business must be permitted. Indeed, the Second Circuit concluded that the District Court exceeded their discretion in excluding expert testimony on materiality, and "[o]n this basis alone," vacated Mr. Litvak's convictions for securities fraud and remanded for a new trial. Litvak, 808 F.3d at 179. To that end, in *Litvak II,* Judge Hall explicitly let in expert testimony that is virtually the same as that the Government now seeks to exclude. Therefore, in addition to the Government's argument being an unsupported false equivalence, based on this indisputable precedent, the Court should deny the Government's motion and allow Dr. Fabozzi to testify about how reasonable RMBS investors conduct business.

> iii. Precedent dictates that evidence about what constitutes a breach of a reasonable RMBS investors' fiduciary duty must be admitted.

The Government further asserts that references to an investor's fiduciary duty are likewise improper legal conclusions. Once again, the Government provides no argument for this assertion beyond the Government's limited argument about a reasonable investor. Realizing their absolute lack of basis, this argument is treated as an add-on to the reasonable investor argument without legal analysis provided. The header of the section containing purportedly substantive

---

investor in this market had multiple sources of information at their disposal at the time," *Id.* at 6, "why a reasonable investor may decide to execute a particular trade with a particular trader," *Id.*, and "that any reasonable investor would heavily discount the value of unverified information by any trader, salesperson, or analyst and that, accordingly, such information would not be important to the investment decision regarding the purchase or sale of a non-agency RMBS. Mr. Burnaman may also opine that a reasonable investor would discount the value of unverified information based on indications that traders routinely provide false information." *Id.* at 7. Similarly, Judge Hall allowed in without opposition Mr. Dolan's proposed expert testimony "that a reasonable investor had to have a robust analytical platform in order to understand how to value the bond," *id.* at 9, and "that a reasonable investor in this market would have a variety of information at their disposal, which they could consult in making an investment decision." *Id.* at 10. Dr. Torous's proposed testimony that Judge Hall admitted without opposition included that "reasonable investors during this time period paid varying prices for the same RMBS during the same time periods." *Id.* at 22.

legal arguments for exclusion (and not based on Dr. Fabozzi's impeccable qualifications) is titled: "The Reasonable Investor Opinions Are Inadmissible Legal Arguments and Conclusions" without mention of "fiduciary duty." *See* Gov't Brief at 8-9. Likewise, the only two references to "fiduciary duty" in the section are simply tacked on to the unsupported reasonable investors arguments without explanation. *See id.* ("reasonable investors are never duped, and it is a breach their fiduciary duties to let themselves be duped"; "if defendant were to delete the term "reasonable" from Dr. Fabozzi's reasonable investor opinions contained in the Notice (along with all references to what constitutes a breach of an investor's fiduciary duties)").

However, whether investors would be violating their fiduciary duty to rely on dealer representations clearly goes to how an objectively reasonable RMBS investor would act. Common sense dictates that an objectively reasonable RMBS investor would not take action that they understand to be in violation of their fiduciary duty. The Government agrees that the standard the jury will have to decide is whether David's misrepresentations would have been material to an objectively reasonable RMBS investor. Gov't Brief at 3. The U.S. Constitution guarantees David "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. at 690. Therefore, David cannot be denied the opportunity to demonstrate what an objectively reasonable RMBS investor would view as constituting a breach of their fiduciary duty.

Furthermore, as explained above, the Government in *Litvak* argued that all of Willner's expert testimony was an impermissible legal conclusion. *Litvak,* 808 F.3d at 182. However, the Second Circuit ruled that only the part which specifically spoke about "materiality" constituted an impermissible legal conclusion. *Id.* Part of Willner's proposed testimony was exactly what the Government here argues, without explanation, should be excluded. As the Government's motion

in *Litvak* detailed, Willner proposed to argue that:

- "[T]he nature of an investment manager's **fiduciary duty** to his or her client (i.e., the investment fund and the investors therein)[.]"
- "[H]ow that **fiduciary duty** mandates that certain professional standards be adhered to, including rigorous analysis and valuation procedures, which make irrelevant consideration of, or reliance on, statements by sell-side salesmen or traders concerning the value of a RMBS or the price at which the broker-dealer acquired it or could acquire it."

*Litvak,* No. 3:13CR19(JCH), Government's Motion to Compel Defendant to Comply with Fed. R. Crim. P/ 16(b)(1)(C) Or, In The Alternative, To Preclude Defendant's Expert Testimony, (December 13, 2013), at 3 (emphasis added). However, despite the Government arguing that the totality of Willner's proposed testimony was an impermissible legal conclusion, the Second Circuit explicitly ruled that only the part that explicitly dealt with materiality was a legal conclusion. *Litvak,* 808 F.3d at 182. Therefore, precedent dictates that such expert testimony should not be excluded on legal conclusion grounds.

Thus, for the same reasons that expert testimony about a reasonable investor is not equivalent to the argument regarding the legal conclusion of materiality, expert testimony about investors' fiduciary duty is not an improper legal conclusion either.

The Government's argument is based on an unsupported false equivalency between testimony about a reasonable investor and testimony about the legal conclusion of materiality. Furthermore, direct precedent dictates that David be allowed to present expert testimony about a reasonable RMBS investor. Therefore, the Court should deny the Government's motion and allow Dr. Fabozzi's testimony about what a reasonable investor would consider when making investment decisions and what constitutes a breach of a reasonable RMBS investors' fiduciary duties.

### III. THE GOVERNMENT SIMPLY RESTATES ITS MOTIONS IN LIMINE

The Government seeks to exclude several topics of expert testimony that it has already sought to wholly exclude from trial in separately filed motions in limine. *See* Gov't Br. at 9. To avoid duplication of argument, the Defense respectfully refers the Court to their briefs in opposition to the Government's motions in limine.

### CONCLUSION

For the foregoing reasons, the Defense respectfully requests that the Court deny the Government's motion and not prematurely limit the Defense's experts evidence to the Notice, and allow Dr. Fabozzi to testify about how reasonable RMBS investors conduct business and what constitutes a breach of an RMBS investor's fiduciary duty.

Respectfully submitted,

DAVID DEMOS

By: */s/ George Leontire*

Jose Baez
The Baez Law Firm
40 SW 13th Street, Suite 901
Miami, FL 33130
(305) 999-5111
jose@baezlawfirm.com

George Leontire
The Baez Law Firm
66 N. Second Street
New Bedford, MA  02108
(855) 223-9080
george@baezlawfirm.com

Ronald S. Sullivan, Jr.
6 Everett Street
Cambridge, MA 02138
(617) 496-4777
prof.ron.sullivan@gmail.com

– and –

Michael L. Chambers, Jr. (ct28580)
100 Wells Street, Suite 2C
Hartford, Connecticut 06103
(860) 231-9535
chamberslegalservices@gmail.com

His Attorneys