UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:16-CR-220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DEMOS, | : | |
| | : | |
| Defendant. | : | March 20, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DEMOS'S
MOTION TO COMPEL MARATHON'S COMPLIANCE WITH SUBPOENA**

Mr. Demos respectfully submits this Memorandum of Law in support of his Motion to Compel Marathon's Compliance with Subpoena (ECF 263), and respectfully moves this Court, pursuant to Fed. R. Crim. P. 17(c), D. Conn. L. Crim. R. 1(c) (incorporating civil rules), and D. Conn. L. Civ. R. 7, for an Order compelling non-party Marathon Asset Management, L.P. ("Marathon") to comply with the subpoena granted by this Court on December 14, 2017.

Specifically, Mr. Demos moves this Court to compel Marathon to produce responsive documents for the following Document Requests, as follows:

21. Documents reflecting Marathon's reliance on internal models including non-duplicative public filings and marketing materials regarding the purchase or sale of the Bonds, including pitch books, investor letters, etc.
22. All non-duplicative Documents constituting disclaimer communications by or to Marathon to counterparties in connection with any RMBS transactions.
23. All non-duplicative marketing materials (pitch books, PowerPoints, one pagers, etc.) and other documents advertising, describing, or discussing Marathon's services and business methods, including reliance on proprietary models/analytics and any strategic advantage differentiators, regarding transactions in RMBS.
24. All Marathon investor letters for the years 2011 through 2013.

**Exhibit A**, Mem. of Law in Supp. of Mot. for Pre-Trial Return of Docs. Under Rule 17(c)(1), Exhibit A at 9 (ECF 115-1) (hereinafter "Marathon Document Requests").

Moreover, Mr. Demos moves this Court to compel Marathon to reproduce all productions that have been provided where Marathon produced redacted material, in such a way as to make the produced materials unintelligible. *See, e.g.,* **Exhibit B**, Marathon Legacy Securities PPIP Management Discussion & Analysis, For Month Ended December 2011 (MARATHON00001781 to 1811); **Exhibit C**, Marathon Legacy Securities PPIP Management Discussion & Analysis, For Month Ended June 2012 (MARATHON00001812 to 1844). To date, Marathon has made eight productions to Mr. Demos, the overwhelming majority of which includes materials partially or fully redacted. Therefore, Mr. Demos moves this Court to compel Marathon's compliance and production of materials responsive to the Subpoena issued by this Court.

## BACKGROUND

On December 14, 2017, the Honorable Judge Alvin Thompson, of the Federal District Court for the District of Connecticut granted Mr. Demos's Motion for Early Return of Subpoena *Duces Tecum* Pursuant to Rule 17(c)(1). *United States v. Demos*, 3:16-CR-220 (AWT), (Dec. 14, 2017) (ECF 118); *see also* **Exhibit A**, Marathon Document Requests, at 5-10 (describing the specific Document Requests to Marathon Asset Management) (ECF 115-1). Thereafter, counsel for Mr. Demos discussed with and transmitted to counsel for Marathon the specific document Requests and a Waiver of Service.

On December 26, 2017, counsel for Marathon informed Mr. Demos's counsel that they "are authorized to accept service of the subpoena duces tecum on behalf of Marathon Asset Management, provided (1) such acceptance is with a full reservation of all rights, except service of process (e.g., scope) and (2) [counsel for Mr. Demos] would agree to extend the return date to late January." **Exhibit D,** Email from Attorney Rosenbaum to Counsel for Mr. Demos, (Dec. 26, 2017 8:30AM), at 1; *see* **Exhibit E** Acceptance of Service of Def. Demos's Early Return Subpoena

*Duces Tecum* Pursuant to Rule 17(c)(1), (Jan. 31, 2018) at 1 (service accepted by undersigned counsel, Jennifer Delgado, Partner at Lowenstein Sandler) (ECF 176).

On February 14, 2018, Marathon indicated it objected to Requests 21, 22, 23 and 24. *See, e.g.,* **Exhibit F**, Letter from Attorney Delgado to Counsel for Mr. Demos, (Feb. 14, 2018), at 4-5. For Requests 21 & 23, 22, and 24 Marathon stated a blanket objection, writing counsel for Mr. Demos the following:

> Marathon objects to this request, as the request seeks information that is neither admissible, evidentiary, nor relevant, and is disproportional to the needs of the case. This request is overly broad, fails to meet the specificity requirements and is therefore indicia of a fishing expedition, is unduly burdensome, and calls for the production of proprietary and/or confidential information or trade secrets.

*Id.*

More specifically, regarding Requests 21 & 23 Marathon additionally wrote that "[it] will produce certain portions of its 'Marathon Legacy Securities PPIP Management Discussion & Analysis.'" *Id.* at 4. The production of Marathon's Legacy Securities PPIP Management Discussion & Analysis was heavily redacted. *See, e.g.,* **Exhibit B**, Marathon Legacy Securities PPIP Management Discussion & Analysis, For Month Ended December 2011 (MARATHON00001781 to 1811) (out of 31 pages produced 28 were entirely redacted); **Exhibit C**, Marathon Legacy Securities PPIP Management Discussion & Analysis, For Month Ended June 2012 (MARATHON00001812 to 1844) (out of 33 pages produced 30 were entirely redacted).

Moreover, regarding Request 22, Marathon additionally wrote that "[it] will not withhold or redact disclaimers that are contained in otherwise responsive documents." **Exhibit F** at 5. To date, Marathon has not produced any responsive documents that include disclaimers.

Finally, specific to Request 24 Marathon additionally clarified "[it] will not produce documents in response to this request." *Id.*

3

On February 22, 2018, Marathon produced documents responsive to Requests 3, 4, 7, 10, and 27. *See* **Exhibit G**, Letter from Attorney Delgado to Counsel for Mr. Demos, (Feb. 23, 2018), at 1. The production included: (1) 659 tif files in a folder labeled 001; and (2) 663 tif files in a folder labeled 002. A significant portion of this production includes materials redacted such that the materials are unintelligible. For example, 504 files of the 663 produced in folder 002 were produced with the entire page redacted. *See, e.g.,* **Exhibit H**, Marathon00002505. Of the remaining 159 files, 152 of them are partially redacted to remove specific information requested in the subpoena. *See, e.g.,* **Exhibit I**, Email from Adam Blitzer to Unknown (Feb. 27, 2012 15:23) Marathon00002934 (showing that the actual mark of the bond, sought in Request 3, was redacted from the document). Only 6 files in the folder labeled 002 were produced without any redaction.

Folder 001 follows a similar pattern to folder 002. Of the 663 tif files produced: 570 are entirely redacted, 25 are partially redacted, and 64 were produced unredacted. The 64 tif files that Marathon actually produced in an unreadacted format include multiple duplicated documents. For example, Marathon produced three pages (Marathon00001947-1949) which are partial screen shots of what appear to be email attachments, essentially unreadable as half the screen is missing from the screenshot. *See* **Exhibit J**, Marathon00001947-1949. These same three pages are again reproduced four more times. (Marathon00001954-1956; Marathon000019611963; Marathon00001968-1970; and Marathon00001975-1977).

The following day, on February 23, 2018, Marathon stated regarding Requests 21 & 23, "[it] will not provide unredacted versions of the documents bates stamped Marathon1781-1844 [Marathon Legacy Securities PPIP Management Discussion & Analysis], nor will it produce any other documents in response to Requests 21 and 23." **Exhibit K**, Letter from Attorney Delgado to Counsel for Mr. Demos, (Feb. 23, 2018), at 2; *see also* **Exhibit B**, Marathon Legacy Securities

4

PPIP Management Discussion & Analysis, Marathon1781-1811; **Exhibit C**, Marathon Legacy Securities PPIP Management Discussion & Analysis, Marathon1812-1844). In its letter to counsel for Mr. Demos, Marathon declined to produce on the basis that:

> The fact that your client is a defendant in a criminal matter does not entitle him to unfettered access to Marathon's portfolio holdings and analytics.$_7$ This information, and marketing materials describing Marathon's investment process, "[is] not relevant to whether the defendant committed the charged offenses and thus are unlikely to be admissible at trial." *See United States v. Carpenter*, No. 3:13-CR-226 (RNC), 2015 WL 9480449, at *3-4 (D. Conn. Dec. 29, 2015) (rejecting a request for "[a]ny documents or communications reflecting any profit or loss to the provider in connection with the policies" issued by a defendant indicated for conspiracy to defraud life insurance providers). Indeed, a pitch book is inadmissible hearsay. Moreover, even if relevant and admissible (which it is not), such information is not necessary to defendant's case.

**Exhibit K** at 2. The footnote states "[a]s we have discussed, Marathon's redactions in Marathon1781-1844 consisted of two categories: (1) material regarding CMBS, which is wholly irrelevant to this matter; and (2) information regarding Marathon's holdings and analytics related thereto." *Id.* at 2, fn. 7.

Thereafter, on February 27, 2018, Marathon made a partial replacement production of documents originally produced on February 22, 2018. However, the production merely provides additional Bloomberg chat communications, and also includes large amounts of tif files where the entire page is redacted.

As related specifically to Marathon's refusal to produce the holdings and analytics related to its management of funds through the Public-Private Investment Partnership ("PPIP"), this Court recently denied Mr. Demos's Motion *in Limine* to preclude reference to TARP and PPIP. Ruling on Def. Mot. in Limine (Doc. No. 155), Mar. 19, 2018 (ECF 244). In its order, this Court noted that "[t]he government intends to introduce evidence showing that one specific passive investor was the Department of the Treasury, through the Troubled Asset Relief Program ("TARP"), and

5

that one victim received funds through the 2009 Legacy Securities Public-Private Investment Partnership ("PIPP"). *Id.* at 2. Moreover, this Court noted that "[t]he Government also intends to introduce evidence that the Department of the Treasury selected and supervised that alleged victim with an eye towards profitability." *Id.* Mr. Demos anticipates that the Government will introduce evidence related to TARP and PPIP and that the evidence is relevant to materiality.

## ARGUMENT

### I. Legal Standard for Rule 17(c) Subpoena

"A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." Fed. R. Crim. P. 17(c)(1); *see United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1224 (E.D.N.Y. 1984) (discussing that Rule 17 enables a party to obtain and inspect evidentiary material prior to trial). Moreover, Rule 17 of the Federal Rules of Criminal Procedure establishes "a liberal policy for the production, inspection and use" of evidentiary materials in federal criminal cases. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Moreover, the "purpose of a 17(c) subpoena is 'to implement the Sixth Amendment guarantee that the defendant shall have compulsory process to obtain evidence in the defendant's favor.'" *United States v. Ferguson*, No. 06-CR-137, 2007 U.S. Dist. LEXIS 70786, at *2 (D. Conn. Sept. 26, 2007) (*quoting* 25 James Em. Moore et al., *Moore's Federal Practice* § 617.08[1] (3d ed. 2007)).

### II. Basis for Document Requests 21, 22, 23 and 24

Mr. Demos Requests specifically sought documents and materials from Marathon, which is a counterparty in this case, that relate to the investment process that Marathon was following at the time of Mr. Demos's alleged unlawful market conduct. Marathon is a management entity that

6

manages billions of dollars, and distributes a variety of marketing materials and yearly investor letters that describes their investment practices to both attract and maintain investors. Moreover, Marathon relies on internal models when making their investment decisions. Therefore, evidence of Marathon's reliance on internal models, disclaimers, marketing materials, advertisements, and investor letters will reflect what information the sophisticated counterparty Marathon distributed to their investors and their employees and had prior to making its investment decisions.

    a. *The Requested Materials are Relevant to the Charges Against Mr. Demos and Therefore Would Likely be Admissible*

For purposes of Rule 17(c)(1), the relevance test is satisfied if there is a "rational inference that at least part of the [materials] that relate to the offenses charged in the indictment." *United States v. Nixon*, 418 U.S. 683, 700 (1974). The requested materials directly address the materiality of the alleged misrepresentations in this case.

In the instance case, to prove the charges against Mr. Demos, "[t]he government must prove beyond a reasonable doubt that there was a substantial likelihood a reasonable investor in the non-agency RMBS market would view the misstated fact as one that significantly altered the total mix of information available to the investor; in other words, the government must prove that the misstated fact likely would have assumed significance in the deliberations of the reasonable investor." *United States v. Shapiro*, 3:15-CR-155 (RNC) Jury Instructions, Tr. at 2646-2647; *see Basic v. Levinson,* 485 U.S. 224, 231-32 (1998) (*citing TSC Indus., Inc. v. Northway, Inc.*, 436 U.S. 438, 449 (1976) (discussing that under Securities Laws, "to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'")).

7

Mr. Demos seeks documents and materials from counterparty Marathon that reflect the investment processes that Marathon was following during the relevant period, as evidenced through marketing materials, advertisements, and investor letters distributed to actual and potential investors, and which were utilized by Marathon and its employees. The determination of what information Marathon and its employees had on its investment process will directly inform whether the alleged material misrepresentations Mr. Demos made to Marathon and its agents would have affected the investment decisions of the reasonable RMBS investor. *See, e.g., United States v. Shapiro*, 3:15-CR-155 (RNC) Jury Instructions, Tr. at 2646-2647; *Basic v. Levinson,* 485 U.S. 224, 231-32 (1998); *TSC Indus., Inc. v. Northway, Inc.*, 436 U.S. 438, 449 (1976).

Moreover, documents and materials that advertise, describe, or discuss Marathon's reliance on proprietary modeling and analytics directly informs on what information Marathon had prior to its investment decisions. *Id.* Evidence of Marathon's pitch books and investor letters will specifically reflect what information this sophisticated counterparty had prior to making its investment decision. *Id.* Finally, Marathon's disclaimer communications will reflect specifically Marathon's position on unverified pricing information, which also directly impacts whether or not Mr. Demos's alleged misrepresentations were material. Therefore, as these materials directly inform on a specific element of the offense charged Marathon should be compelled to produce responsive materials to these Requests.

    b. *The Requested Materials are Admissible Because They Very Likely Fall Within the Exception to Hearsay for Business Records*

The materials requested are business records of Marathon relative to their investment process, and therefore are likely admissible under the business records exception to the hearsay rule. *See, e.g. United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000) ("Because the documents primarily seek business records, they are at this early stage likely to be admissible at

8

trial."). Mr. Demos has good faith basis that Marathon utilizes and maintains marketing materials, advertisements, pitch books, one pagers, disclaimers, and investor letters, in the ordinary course of business as financial management entity, in order for them to manage its business and market its services to potential and actual investors. Moreover, Marathon likely created and distributed these promotional materials like pitch books, PowerPoints, etc. as persuasive materials to convince investors to invest in Marathon. Similarly, these materials would be used in the ordinary course of business by Marathon to inform employees internally on Marathon's investment processes, investment strategies, and procedures to be utilized on behalf of Marathon. Finally, several of these documents were admitted as evidence in similar trials. *See, e.g., United States v. Litvak*, at 505:16-508:24, 519:12-525:13 (testimony of Katherine Corso of York Capital Management regarding offering documents and PowerPoints [e.g. Defense Ex. 2114] to solicit investment funds). For these reasons, it is highly likely these materials would be admissible in this action.

    c. *The Requested Materials are Admissible Because They are Specific Requests Known to Exist*

Mr. Demos has satisfied the third prong of the *Nixon* standard for Rule 17(c) Requests for production, because the scope of the Requests are specifically limited. First, these Requests are limited only to the timeframe in which the Government has alleged Mr. Demos's market conduct was unlawful. Therefore, Marathon would need only produce materials within the time range of October 2011 to February 2013. *See* **Exhibit A**, at 5 (limiting the Document Requests to a specific time period). Moreover, the Requests seek non-duplicative materials of a specific category, with examples of those materials identified in the Marathon Document Requests. *Id.* For example, the subpoena provides examples of marketing materials such as pitch books, PowerPoints, and one pagers. *Id.* The Requests for investors letters are specific because they are limited by the stated years which would only include 2011, 2012, and 2013. *Id.* Additionally, the Request for disclaimer

communications is limited to non-duplicative productions, and to disclaimers sent in connection with RMBS transactions. *Id.*

## II. The Materials Are Not Otherwise Available, Mr. Demos Cannot Properly Prepare for Trial Without Them, and the Requests are Made in Good Faith and not a "Fishing Expedition"

Here, pre-trial production is appropriate because the materials are not otherwise available, Mr. Demos cannot prepare properly for trial without them, and the Requests are made in good faith. *First*, Mr. Demos has no reasonable means to obtain these materials but through a subpoena because as business records, these materials are maintained as confidential records by Marathon. *Second*, Mr. Demos cannot properly prepare for trial without the production of the above described materials, because they inform directly on the highly contested element of materiality. *See, e.g., United States v. Shapiro*, 3:15-CR-155 (RNC) Jury Instructions, Tr. at 2646-2647; *Basic v. Levinson,* 485 U.S. 224, 231-32 (1998); *TSC Indus., Inc. v. Northway, Inc.*, 436 U.S. 438, 449 (1976). Indeed, to properly prepare for trial, Mr. Demos will need sufficient time to review and assess the materials requested. In other words, Mr. Demos does not expect that the production will be voluminous, but does anticipate that production of these materials may produce dense information that will necessarily require close and careful analysis.

*Third*, the Requests are made in good faith and do not represent a general fishing expedition as the materials requested will show specific information regarding Marathon's investment processes. Indeed, Marathon's "management team performs in-depth analysis to evaluate collateral at the loan / asset level and the capital structure of the securitization alike, and focuses on investments with downside protection through extensive stress testing and sensitivity analysis based on proprietary insights." Marathon Asset Management, *Strategies: Structured Credit,* WWW.MARATHONFUND.COM, https://www.marathonfund.com/strategies/#structuredcredit (last

visited Mar. 16, 2018). Therefore, the Requests 21, 22, 23 and 24 are not overbroad, as they seek specifically described materials that Mr. Demos has good faith basis to believe exists. For these reasons, Pre-trial production is appropriate because the materials are not otherwise available, Mr. Demos cannot prepare properly for trial without them, and the Requests are made in good faith.

## CONCLUSION

Mr. Demos moves this Court to compel Marathon to comply with the Subpoena, granted by this Court on December 14, 2017, and produce documents responsive to Requests 21, 22, 23 and 24, and reproduce the materials that contained partial or entire redaction.

Respectfully submitted,

DAVID DEMOS

By: _/s/ George Leontire_

Jose Baez
The Baez Law Firm
40 SW 13th Street, Suite 901
Miami, FL 33130
(305) 999-5111
jose@baezlawfirm.com

George Leontire
The Baez Law Firm
66 N. Second Street
New Bedford, MA 02108
(855) 223-9080
george@baezlawfirm.com

Felicia L. Carboni (phv09485)
The Baez Law Firm
66 N. Second Street
New Bedford, MA 02108
(855) 223-9080
felicia@baezlawfirm.com

Ronald S. Sullivan, Jr.
6 Everett Street
Cambridge, MA 02138
(617) 496-4777
prof.ron.sullivan@gmail.com

– and –

Michael L. Chambers, Jr. (ct28580)
100 Wells Street, Suite 2C
Hartford, Connecticut 06103
(860) 231-9535
chamberslegalservices@gmail.com

His Attorneys

## CERTIFICATION OF SERVICE

      I hereby certify that on this date a copy of the foregoing **Memorandum of Law** will be filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's system.

                                   */s/ George Leontire*
                                   George Leontire