**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
                               :
UNITED STATES OF AMERICA       :
                               :
                               :
v.                             :     No. 3:16-cr-220(AWT)
                               :
                               :
DAVID DEMOS                    :
                               :
------------------------------ x
```

**ORDER RE GOVERNMENT'S MOTION IN LIMINE (DOC. NO. 140)**
**(Defendant's Expert Witnesses)**

For the reasons set forth below, Government's Motion <u>in</u> <u>Limine</u> Regarding Defendant's Expert Witnesses (Doc. No. 140) is hereby GRANTED, in part, and DENIED, in part.

**I.    Limiting Expert Evidence to the Notice**

The government moves for an order precluding all expert evidence not summarized in the November 9, 2017 letter from the defense regarding potential expert witnesses.  The motion is being **denied** to the extent it requests such an order.  To properly exercise its discretion in deciding an issue such as this, the court must take into account all of the facts and circumstances as they exist at the time a request to supplement an expert disclosure is made.  Thus, the court agrees with the defendant that it should not exercise its discretion in a manner that prematurely precludes the defense from presenting

1

additional expert testimony regardless of what happens in the future.

## II.   <u>Reasonable Investor and Breach of Fiduciary Duty Opinions</u>

The defense has disclosed Frank J. Fabozzi, Ph.D. as an expert witness.  The government moves for an order "precluding defendant from offering as expert opinions Fabozzi's unsupported legal arguments or conclusions (i) defining a "reasonable investor" and (ii) stating that the victims were unreasonable and breached their fiduciary duties by believing Demos's misrepresentations . . . ."  Government's Memorandum of Law ("Gov.'s Memo.") (Doc. No. 140) at 1.

The government does not object to Fabozzi testifying as to how RMBS investors typically conduct themselves, so long as the defendant lays a sufficient foundation based on Fabozzi's academic training and experience.  As was discussed at oral argument, **the defendant will supplement his disclosure with respect to Fabozzi's qualifications to express such opinions.**

However, the defendant's Rule 16 disclosure also reflects that Fabozzi will be asked to testify about what "reasonable investors" in the RMBS market do and do not do and what would constitute an investor acting reasonably and not reasonably. Fabozzi would also be asked to testify that it would be a breach

of the counterparties' fiduciary duties to their own investors to rely on the type of representations at issue in this case.

The relief requested by the government is being **granted** because the contested opinions would not be an aid to the jury, would be unduly prejudicial, and could only serve to confuse the jury.

"[I]n complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991). "Generally, the use of expert testimony is not permitted if it will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) (quoting Bilzerian, 926 F.2d at 1294).  In Duncan, the court explained:

> When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination.

Id.

These points are reinforced in the advisory committee's note to Federal Rule of Evidence 704:

> The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the

trier of fact.  In order to render this approach fully
effective and to allay any doubt on the subject, the
so-called "ultimate issue" rule is specifically
abolished by the instant rule.

The older cases often contained strictures
against allowing witnesses to express opinions upon
ultimate issues, as a particular aspect of the rule
against opinions. The rule was unduly restrictive,
difficult of application, and generally served only to
deprive the trier of fact of useful information.
. . . .

The abolition of the ultimate issue rule does not
lower the bars so as to admit all opinions. Under
Rules 701 and 702, opinions must be helpful to the
trier of fact, and Rule 403 provides for exclusion of
evidence which wastes time. These provisions afford
ample assurances against the admission of opinions
which would merely tell the jury what result to reach,
somewhat in the manner of the oath-helpers of an
earlier day.

United States v. Scop, 846 F.2d 135, 139-40 (2d Cir. 1988)

(quoting Fed. R. Evid. 704 advisory committee's note to 1972

proposed rules) (citations omitted).

Here, the jury will be informed, in substance, that to be

material, a false statement of fact must be of such importance

that it could reasonably be expected to cause a reasonable

investor to act or not act in some way with respect to the

transaction at issue.  The jury will be informed, in substance,

that a reasonable investor is an investor in the non-agency RMBS

market, which is an objective standard.  The jury will be asked

to consider evidence relating to the sophistication of the

investors in the non-agency RMBS market, their objectives, the

information available to them, the analysis they employed, and

the way the market worked, including testimony as to what investors did and why they did it. The contested opinions would not aid the jury in performing this task. After assessing such evidence, the jury can readily draw inferences as to what a reasonable investor would do. But having an expert tell the jurors what a reasonable investor would and would not do, rather than providing the groundwork to enable the jury to make its own informed determination, simply invites the jury to substitute the expert's judgment for its own.

Because it is not apparent how breach of a counterparties' fiduciary duty would be anything other than unreasonable, the court concludes that the contested opinions that would be couched in terms of breaching or satisfying fiduciary duty are, in substance, the same as opinions as to what a reasonable investor would or would not do.

Based on the foregoing, the court concludes that the contested opinions have little probative value, but do carry with them a substantial danger of unfair prejudice because they invite the jurors to simply substitute the conclusions of the defendant's expert for their own analysis. In addition, even were the jury instructed not to do so, there is a danger the jury could find confusing the task of distinguishing between assessing the credibility of an expert witness who has expressed

an opinion as to how a reasonable investor acts, and making its own determination as to how a reasonable investor acts.

The defendant contends that United States v. Litvak, 808 F.3d 160 (2d Cir. 2015), supports the admission of the contested opinions.  See Defendant's Opposition Memorandum (Doc. No. 197) at 10 ("The Second Circuit expressly ruled that expert testimony about what a reasonable investor would consider important must be allowed.").  However, the contested opinions here are more like the portion of the proposed expert opinion in Litvak that the court suggested was inadmissible on "ultimate issue" grounds, i.e., the part referring to statements being "unworthy of consideration in trading decisions."  Litvak, 808 F.3d at 182.

### III. Matters Covered in Other Motions in Limine

The government also moves, "consistent with the relief sought in the Government's other motions in limine[,] [for an order] precluding defendant's experts from testifying that (a) bonds traded in the charged scheme had fair market values or prices, (b) victims eventually made a profit on bonds they bought in the charged scheme, and (c) victims' purported lack of care or diligence is to blame for their entering into fraudulent trades with defendant."  Gov.'s Memo. at 1.

The court has issued the following rulings with respect to those issues:

6

a.  The motion relating to fair market value (see Doc. No. 137) was granted (see Doc. No. 246).

b.  The motion relating to victim profitability (see Doc. No. 138) was denied (see Doc. No. 254).

c.  The motion relating to blaming the counterparties (see Doc. No. 139) is being granted by order dated today.

It is so ordered.

Signed this 22nd day of March, 2018, at Hartford, Connecticut.


                              /s/ AWT
                              Alvin W. Thompson
                              United States District Judge