UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:16CR220 (AWT) |
| | : | |
| v. | : | |
| | : | |
| DAVID DEMOS | : | March 23, 2018 |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION TO ADMIT UNCHARGED TRADES AS "OTHER CRIMES" EVIDENCE UNDER F.R.E 404(B)**

The Government submits this reply in further support of its motion to admit under Fed. Rule Evid. 404(b) documents and testimony concerning certain of defendant David Demos's uncharged RMBS trades containing relevant misrepresentations and admissions. Demos asks the Court to preclude evidence he has known about for months and that directly rebuts his arguments.

**A.      Materiality**

Demos incorrectly asserts that 404(b) evidence is not admissible to prove materiality.

The text of Rule 404(b) does not purport to exhaustively list every proper purpose for admitting evidence of the defendant's other crimes. Fed. R. Crim. P. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent," *etc.*). Indeed, the Second Circuit has expressly stated that evidence of other crimes or acts is admissible for "any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

The parties agree that materiality will be a disputed issue at trial. The Government is entitled to lay the groundwork to enable the jury to find that Demos's misrepresentations were of such importance that they could reasonably be expected to cause a reasonable investor to act or not act in some way with respect to the charged transactions. Evidence is probative of that issue if

it helps establish that the victims in the charged trades were not behaving unusually in believing Demos's lies and in relying on the false information he provided to determine prices in those particular instances. The uncharged trades will establish that the victims and other reasonable RMBS investors did so on other occasions under similar circumstances. And more, where a victim of a charged trade was also the victim of an uncharged trade, evidence of the latter will corroborate their expected testimony that the false information provided by Demos caused them to take some action or was otherwise important in their decision-making. Where Demos will dispute that the testifying victims behaved like a reasonable investor, evidence that in other trades they and other RMBS investors behaved the exact same way is crucial evidence of materiality.

### B. Intent

The Government argued that other fraudulent trades—including those in which Demos sought to cover up his misrepresentations—circumstantially proves, among other things, his intent. In his opposition, Demos states several times that intent is not in dispute. Opp. at 10-12. But Demos also states that he "maintains that his intent was not culpable." Opp. at 11.[1]

The Government has the burden of proving that Demos "acted knowingly, willfully, and with intent to defraud." Sand *et al.*, *Modern Federal Jury Instructions* (2008), Instr. 57-20. If Demos concedes that he acted with the requisite intent he should say so plainly. But if he disputes some aspect of this intent standard—such as willfulness—then evidence that he took steps to

---

[1] Demos also claims that knowledge for purposes of 404(b) is only a proper purpose where either knowledge is part of *mens rea* or "past knowledge is relevant to explain current knowledge." Opp. at 11. The Government knows of no authority for this restrictive interpretation of "knowledge" under 404(b), and Demos cites none. Moreover, even if this were a true statement of the law, it is unhelpful to Demos: the *mens rea* required here includes knowledge, specifically "an awareness of the general wrongfulness of his conduct." *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010). Thus, a proper purpose of the Demos's admissions and conduct in the uncharged trades—including taking steps to conceal his misrepresentations from victims—is to show that he acted with knowledge that he was doing something wrongful.

conceal his misrepresentations from his victims is probative circumstantial evidence of a disputed issue.

### C. Opportunity

Demos argues that opportunity is not in dispute. In saying this, Demos misconstrues the meaning of "opportunity" in this case, which was not a matter of access to a location or a weapon, but to certain information.

Part of the Government's theory is that Demos took advantage of the structure of the RMBS market, which puts broker-dealers at an informational advantage over investors. Demos had access to pricing information from both the seller and the buyer in a trade, while each of them knew only what Demos chose to tell them. Demos, including through his expert witness, will argue that victims had other sources of information that they could have employed to ferret out the truth if they had cared, and thus did not believe or rely on Demos's false information. Def's Nov. 9, 2017 Expert Notice at 4 ("Dr. Fabozzi would also opine that, despite the generally opaque nature of the RMBS market, market participants such as the counterparties identified in the Indictment, had access to multiple sources of RMBS pricing information, including information provided by dealers;…[and] discussions with other market participants…."). The uncharged trades refute this argument and establish that Demos had and took advantage of this opportunity in two ways. First, they are proof that Demos claimed to be acting as an intermediary with his victims, supposedly relaying information back and forth in exchange for a separately-negotiated amount of "commission" or "pay on top." And second, they are proof that, in that purported role, Demos was able to deceive buyers and sellers about each other's price negotiations without detection, including by taking steps to cover up the information he was misrepresenting.

### D. Unfair Prejudice

Demos misleadingly portrays the Government's potential evidence of uncharged trades as threatening to overwhelm the rest of the trial and thus inadmissible under Rule 403.[2]

*First*, Demos exaggerates the trial burden posed by the Government's uncharged trade evidence. If the uncharged evidence is admitted, the Government would need to call, at most, four additional witnesses, not eight, as Demos suggests.[3] *See* Opp. at 6. Indeed, depending on timing and witness availability, the Government may well introduce uncharged trade evidence without calling any additional witnesses.

*Second*, Demos ignores that a portion of the uncharged trade evidence is part of both parties' anticipated evidence. For instance, three witnesses relevant to the uncharged trades (Abrams, Konaris, and Ulmer) are on both the Government and the defense witness lists. Likewise, documents concerning two of the eight uncharged trades (numbered 4 and 6 in the Government's motion) are on the defense list as part of a composite exhibit (DX32).[4] Demos also ignores that six of the eight uncharged trades concern either Marathon or DW Investments, the victims in Counts One through Three.

The Government's best estimate is that its uncharged trade evidence would add less than two trial days to its two-week case-in-chief. In this context, the evidence at issue is not so voluminous as to be substantially more prejudicial than probative.

---

[2] Demos also inaccurately claims that the Government intends to call every witness or introduce every exhibit at trial. The Government did its best to strike a balance between preserving flexibility and giving Demos fair notice of its case-in-chief. The Government is currently working on an updated and more targeted witness list, but under no circumstances does it intend to call every witness or introduce every exhibit.

[3] Assuming Demos stipulates to the authenticity of the documents.

[4] Lest this reference be mistaken for an implicit concession, the Government will likely object to the admission of DX32, which (like DX36) is a binder of various RMBS trades assembled by Cantor Fitzgerald's outside counsel.

## CONCLUSION

For the reasons set forth above and in the Government's motion, the Government respectfully requests that the Court allow the Government to offer evidence of the eight uncharged trades under 404(b).

    Respectfully submitted,

    JOHN H. DURHAM
    UNITED STATES ATTORNEY

    _____/s/_____
    HEATHER L. CHERRY
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. phv07037
    heather.cherry@usdoj.gov
    JONATHAN N. FRANCIS
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. phv05083
    jonathan.francis@usdoj.gov
    157 Church Street, 25th Floor
    New Haven, CT  06510
    Tel.: (203) 821-3700

- 6 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 23, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                  /s/
                              HEATHER L. CHERRY
                              ASSISTANT UNITED STATES ATTORNEY