```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------- x
                                 :
UNITED STATES OF AMERICA         :
                                 :
                                 :
v.                               :       No. 3:16-cr-220(AWT)
                                 :
                                 :
DAVID DEMOS                      :
                                 :
-------------------------------- x
```

### RULING ON DEFENDANT'S MOTION TO COMPEL
### (Marathon 17(c) Subpoena)

For the reasons set forth below, defendant David Demos's motion to compel compliance by Marathon Asset Management, L.P. ("Marathon") with the defendant's Rule 17(c) subpoena authorized by the court on December 14 , 2017 is being denied.

**I.   LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c) provides:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Courts may modify or quash a subpoena duces tecum "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Rule 17(c) is not intended to be used as a discovery device for criminal cases. United States v. Nixon, 418 U.S. 683, 698 (1974) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)).

1

Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." Id. at 698-99.  In Bowman Dairy, the Court quoted the following statement by a member of the advisory committee:

> [W]hile normally under a subpoena books and other things called for would merely be brought into court at the time of the trial, let us say immediately before they are to be offered in evidence, there is a provision in this rule that the court may, in the proper case, direct that they be brought into court in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose of course of enabling the party to see whether he can use it or he wants to use it.

341 U.S. at 220 n.5 (citing Statement of Mr. G. Aaron Youngquist, Member of the Advisory Committee, Federal Rules of Criminal Procedure, Proceedings of the Institute on Federal Rules of Criminal Procedure (New York University School of Law, Institute Proceedings, Vol. VI, 1946) ¶ 167-68).  "It is therefore necessary to guard against action under Rule 17(c) which, contrary to its spirit and purpose, is aimed at obtaining discovery." United States v. Jannuzzio, 22 F.R.D. 223, 227 (D. Del. 1958) (citing State v. Hutchins, 138 A.2d 342, 345-46 (Del. Super. 1957)).

   A party seeking pretrial production and inspection of documents and other objects must satisfy four requirements.  That party must show:

   (1)   that the documents and/or objects are evidentiary and relevant;

   (2)   that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and it is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700.

Under Nixon, the party seeking production must designate with specificity the documents or other objects to be produced. Id. at 700. The specificity requirement ensures that a 17(c) subpoena is not turned into a "fishing expedition to see what may turn up." Bowman Dairy, 341 U.S. at 221. "[T]he subpoena must refer to specific documents, or at least, to specific kinds of documents." United States v. Carroll, No. 96-20024, 1996 WL 442213, at *3 (D. Kan. July 3, 1996); see also United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997) (citing 2 Charles A. Wright, Federal Practice and Procedure ¶ 275 at 159 (1982)). This requirement is satisfied if the subpoena identifies "certain documents or sharply defined groups of documents," Ruedlinger, 172 F.R.D. at 456, and must, of course, be considered in light of the circumstances of the particular case.

The requirement of specificity provides the subpoenaed party with sufficient knowledge about what documents or other objects are being sought to formulate objections related to relevancy or admissibility. See Ruedlinger, 172 F.R.D. at 456. Failure to set forth "with sufficient specificity the evidentiary nature of the requested materials . . . forc[es] the court to speculate as to the specific

3

nature of their contents and its relevance." United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992). Where the requesting party broadly requests "any and all" documents in a broad category, courts will usually narrow the request or grant the motion to quash the request. See United States v. Anderson, 31 F. Supp. 2d 933, 943 (D. Kan. 1998) (narrowing request for "any and all express or implied threats against any expected government witness"); United States v. Colima-Monge, No.96-305-FR., 1997 WL 325318, at *5 (D. Or. June 6, 1997) (quashing request for "[a]ny and all records . . . setting forth guidelines, protocol, or other regulations promulgated by any agency concerning the operation of ROCN agents and informants . . . ."); Ruedlinger, 172 F.R.D. at 456 (quashing request for any and all audit reports prepared by IRS pertaining to defendant's company); United States v. Jackson, 155 F.R.D. 664, 668 (D. Kan. 1994) (quashing subpoenas and stating that the "subpoenas employ such terms as 'any and all documents' or 'including, but not limited to;' these are indicia of a fishing expedition"). Such broad requests, which courts often refer to as "fishing expeditions, fail to satisfy the specificity requirement."

Impeachment material or evidence that could, in turn, lead to exculpatory evidence, is not the type of evidence that is obtainable through a 17(c) subpoena. See United States v. Ferguson, Criminal No. 3:06CR137(CFD), 2007 WL 2815068, at *2 (D. Conn. Sept. 26, 2007) ("Neither of these types of evidence are obtainable through a 17(c) subpoena under Nixon."); United States v. Cuthbertson, 630 F.2d 139, 146 (3d Cir. 1980).

## II.  DISCUSSION

### A. Document Requests 21, 23 and 24

These Document Requests read as follows:

21. Documents reflecting Marathon's reliance on internal models including nonduplicative public filings and marketing materials regarding the purchase or sale of the Bonds, including pitch books, investor letters, etc.

23. All non-duplicative marketing materials (pitch books, PowerPoints, one pagers, etc.) and other documents advertising, describing, or discussing Marathon's services and business methods, including reliance on proprietary models/analytics and any strategic advantage differentiators, regarding transactions in RMBS.

24. All Marathon investor letters for the years 2011 through 2013.

Marathon has produced to the defendant the output of its internal models pertaining to the LXS Bond and the AMSI Bond, and the supporting cash flows.  It has "also produced PowerPoint documents that describe Marathon's views (at the time) on the RBMS market . . . . [and] quarterly reports regarding the PPIP program through September 2013, each which detailed information on the PPIP funds . . . ."  Marathon's Opposition to Motion to Compel/Motion to Quash ("Marathon's Opposition") (18-mc-35, Doc. No. 7) at 7.  Subsequently, in response to a request from the defendant's counsel, "Marathon also produced Marathon's Firm Brochure, which was publicly filed with the Securities and Exchange Commission . . . but no longer available on its website.  The Firm Brochure includes a description of 'Risks Related to RMBS,' and explains Marathon's investment processes during the relevant period.  For example, the Firm Brochure details, among other things, Marathon's use of models to predict (with no guarantee) price movements of securities."  Id. at 8.

5

Marathon objects on a number of grounds to further production with respect to these Document Requests.

To the extent that Document Request 21 seeks documents reflecting Marathon's reliance on internal models with respect to the LXS Bond and the AMSI Bond, it appears that Marathon has complied with the subpoena (except with respect to the marketing materials, which are discussed below). If the Request is for all such documents, then the defendant has not shown that the additional documents he is seeking are evidentiary. In addition, such a request has the indicia of a fishing expedition.

With respect to marketing materials regarding transactions in RMBS and investor letters for the years 2011 to 2013, the defendant has failed to show that such documents are evidentiary. The defendant argues that such documents are relevant and "therefore would likely be admissible." Defendant's Memorandum of Law (16-cr-220, Doc. No. 264) at 7. He asserts that these documents would "very likely" fall within the exception to the rule against hearsay for business records. See Rule 803(6). The defendant argues that these marketing materials and investor letters are business records for several reasons. The defendant asserts that:

> Marathon utilizes and maintains marketing materials, advertisements, pitch books, one pagers, disclaimers, and investor letters, in the ordinary course of business as [a] financial management entity, in order for them to manage its business and market its services to potential and actual investors. Moreover, Marathon likely created and distributed these promotional materials like pitch books, PowerPoints, etc. as persuasive materials to convince investors to invest in Marathon.

6

Defendant's Memorandum of Law at 7.  However, utilization of documents in the ordinary course of business does not make them business records.  Rather,

> [t]he record must have the following characteristics to qualify under Rule 803(6): (1) the document must have been prepared in the normal course of the activity; (2) it must have been made at or near the time of the events it records and (3) it must be based on the personal knowledge of the entrant or of an informant who had a duty to transmit the information to the entrant.  The record must have been kept in the course of a regularly conducted activity; and it must have been the regular practice of that business, occupation, or calling to have made the record.

5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.08(1) (Mark S. Brodin, ed., Matthew Bender 2d ed. 1997) (footnotes omitted); see also, e.g., In re Ollag Constr. Equip. Corp., 665 F.2d 43, 46 (2d Cir. 1981) ("[B]usiness records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations.").

It is helpful to keep in mind that:

> [p]rior to the 2011 amendment of the rule, it specifically stated that to qualify as a record under the rule, the record had to be in the form of a "memorandum, report, record or data compilation."  After the 2011 amendment, the rule just refers to a "record."  The change was intended to be stylistic only and there was no intent to change any result in any ruling on evidence admissibility.

Weinstein & Berger, supra, § 803.08(3) (footnotes omitted).

The defendant also asserts that "these materials would be used in the ordinary course of business by Marathon to inform employees internally on Marathon's investment processes, investment strategies, and procedures to be utilized on behalf of Marathon."  Defendant's Memorandom of Law at 9.  It is not apparent how this would be the case and, in any event, the defendant's assertion is contradicted by

7

Marathon's description of the way in which these documents are used at Marathon: "[P]itch books are generated for particular clients with a specific purpose.  Likewise, investor letters contain analysis concerning trading and performance information, not just a regurgitation of facts."  Marathon's Opposition at 10.  Marathon cites to two cases, each of which supports its position.  See Potamkin v. Cadillac Corp. v. B.R.I Coverage Corp., 38 F.3d 627, 633 (2d Cir. 1994) (a document that "required significant selection and interpretation of data, not simply a downloading of information previously computerized in the regular course of business" did not satisfy the requirements for the business records exception rule); Park W. Radiology v. CareCore Nat. LLC, 675 F. Supp. 2d 314, 331 (S.D.N.Y. 2009) ("Business Plan Document is hearsay and not admissible under the business records exception to the hearsay rule because it is a unique document not kept in the regular course of business").

### B. Document Request 22

Document Request 22 seeks:

22. All non-duplicative Documents constituting disclaimer communications by or to Marathon to counterparties in connection with any RMBS transactions.

The defendant explains that "Marathon's disclaimer communications will reflect specifically Marathon's position on unverified pricing information."  Defendant's Memorandum of Law at 8.  "Marathon agreed that it would not withhold 'disclaimer' material if it appeared on otherwise responsive documents, but objected to a broad search for the term 'disclaimer,' as it would yield a significant number of irrelevant documents, including communications to and from

8

individuals, including lawyers, whose email accounts automatically insert a disclaimer at the bottom of each communication." Marathon's Opposition at 11.  In addition, "Marathon agreed to produce internal emails reflecting Marathon's attempt to verify price information provided by the Defendant concerning the AMSI and LXS Bonds, to the extent they exist, for the period two days before and after each of the relevant trades with the Defendant."  Id. at 11 n.9.

Marathon represents that the defendant did not object to this position and that Marathon has performed accordingly, so the motion to compel is moot with respect to Document Request 22.

Based on the foregoing, the court concludes that no other production should be ordered.

### C. Redactions to Exhibits B and C, and Bloomberg Chats

Marathon represents that "[w]ith respect to Exhibits B and C to Defendant's motion, the redactions consisted of two categories: (1) material regarding commercial mortgage-backed securities, which is wholly irrelevant to the subject matter of Defendant's case, and not requested in the First Marathon Subpoena; and (2) irrelevant, confidential and/or proprietary information regarding Marathon's holdings and analytics related thereto."  Marathon's Opposition at 12.  With respect to the material redacted in the Bloomberg chats, Marathon represents that the redacted material "is non-responsive and contains irrelevant, confidential, and proprietary trading and holdings information."  Id.  Marathon elaborates with respect to the Bloomberg chats that:

> the redactions made to the Bloomberg chats were
> necessitated by the capabilities of the server that stores

>  those documents.  Specifically, given the wide date range
>  of the request for the Bloomberg chats, many of these
>  documents contained responsive information concerning not
>  only the LXS and AMSI bonds but also separate chats
>  containing information concerning Marathon's other trading
>  activity, which Marathon redacted.

Id. at 12-13.  Marathon explains that without a system upgrade, it is not possible for it to produce the Bloomberg chats in a format such that no redaction would be required and that such an upgrade would take several weeks and impose a financial burden on Marathon. Marathon also explains that it conducted an additional review of its production to determine if it could remove some of the redactions to provide further context for the chats and has, as a result, produced a number of entirely unredacted pages as well as a number of additional pages with fewer redactions than when the chats were originally produced.

Based on the foregoing, the court concludes that the defendant's motion seeks the production of non-responsive confidential proprietary information.

### III. CONCLUSION

Accordingly, Defendant Demos's Motion to Compel Marathon's Compliance with Subpoena (Doc. No. 263) is hereby DENIED.

It is so ordered.

Signed this 10th day of April, 2018, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge
