**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
                                :
UNITED STATES OF AMERICA        :
                                :
                                :
v.                              :    No. 3:16-cr-220(AWT)
                                :
                                :
DAVID DEMOS                     :
                                :
------------------------------- x
```

<u>ORDER RE DEFENDANT'S GROUP I MOTIONS</u>

For the reasons set forth below, the court takes the following actions with respect to the defendant's Group I Motions (Doc. No. 43): the defendant's motion to dismiss is hereby denied (without prejudice with respect to the multiplicity argument), his motion to strike is hereby denied without prejudice, his motion for a bill of particulars is hereby denied, and his motion for identification of <u>Brady</u> material is hereby denied.

## I.   Point One: Motion to Dismiss Indictment for Facial Insufficiency

### A.   Ground One: Nonmutual Collateral Estoppel

The defendant argues that "[t]he indictment should be dismissed because an essential element of all six charges – materiality – has been determined in favor of the defense in [<u>United States v. Litvak</u>, 15-cr-155 (RNC)], and the prosecution had a full and fair opportunity to litigate that element."

1

Memorandum in Support of David Demos's Group I Motions to Dismiss, to Strike and for a Bill of Particulars and Identification of <u>Brady</u> Material ("Def.'s Group I Memo.") (Doc. No. 44) at 9.  The defendant contends that, consequently, the government is precluded, by the doctrine of nonmutual collateral estoppel, "from relitigating this essential element in our case."  <u>Id.</u>  The defendant argues that "[t]he acquittals in <u>Litvak</u> established a reasonable investor standard in these kinds of trades that preclude a jury finding guilt in comparable trades, whether conducted by <u>Litvak</u> or someone else accused of comparable conduct."  <u>Id.</u> at 18.  The defendant acknowledges that <u>Standefer v. United States</u>, 447 U.S. 10 (1980), "clearly discourages the use of collateral estoppel in the typical non-mutual scenario," but he contends that this case is not typical and <u>Standefer</u> "did not announce an absolute rule." <u>Id.</u> at 19. The court finds unpersuasive defendant's argument that this case is one where collateral estoppel should be applied against the government.

In <u>United States v. Certified Environmental Services, Inc.</u>, 753 F.3d 72 (2014), the court stated that "the Supreme Court has held that nonmutual collateral estoppel is generally unavailable against the Government, and has long rejected application of nonmutual collateral estoppel against the Government in criminal trials."  753 F.3d at 100 (first citing <u>United States v.</u>

_Mendoza_, 464 U.S. 154, 159-64 (1984); and then citing _Standefer_,
447 U.S. 10, 21-25 (1980)) (citations omitted).

The defendant places emphasis on certain language in
_Standefer_, where the court quoted the following language from
the court of appeals opinion:

> The public interest in the accuracy and justice of
> criminal results is greater than the concern for
> judicial economy professed in civil cases and we are
> thus inclined to reject, <u>at least as a general matter</u>,
> a rule that would spread the effect of an erroneous
> acquittal to all those who participated in a
> particular criminal transaction.

447 U.S. at 25 (emphasis added).  The defendant argues that in
incorporating this language from the court of appeals opinion,
the Court implied that there might be exceptions to the rule
that nonmutual collateral estoppel is not applied against the
government in criminal cases.  However, the analysis in
_Standefer_ suggests that, assuming _arguendo_ that there might be
cases that would be an exception to the rule, the instant case
is not such a case.

The defendant argues that application of nonmutual
collateral estoppel is appropriate here because the government
had a full and fair opportunity to litigate the materiality
element in the _Litvak_ trial.  However, the discussion in
_Standefer_ makes it clear that the government did not have in the
_Litvak_ trial the "'full and fair opportunity to litigate' that
is a prerequisite of estoppel."  _Id._ at 22.

3

Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, and it cannot secure appellate review where a defendant has been acquitted.
. . . .
But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect.

Id. at 22-23 (citing Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3, 1976)) (citations omitted).  The defendant's argument here completely ignores the concern that in a criminal case the government has no avenue to correct errors.

Therefore, the motion to dismiss the indictment on the grounds of nonmutual collateral estoppel is being denied.

### B. Ground Two: Failure to Allege False Statement and/or Representation for Each Count

The defendant contends that although the indictment tracks the language of the statute and, for each of the six counts, lists the six bonds by name and trade date, it fails to comply with the requirements of Federal Rule of Criminal Procedure 7, because it does not specify, for each count, which statement made by the defendant was false or material.  Rule 7 requires that an indictment "must be a plain, concise and definite

written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. § 7(c)(1). The defendant emphasizes the language concerning a "statement of the essential facts."

In his moving papers, the defendant cites to <u>United States v. Nance</u>, 533 F.2d 699 (D.C. Cir. 1976), and <u>United States v. Trotta</u>, 525 F.2d 1096 (2d Cir. 1975). These cases are inapposite for the reasons set forth by the government in its opposition. <u>See</u> Government's Memorandum in Opposition to Defendant's Omnibus "Group I" Motion ("Gov.'s Opp.") (Doc. No. 51) at 8-10.

Both sides cite to <u>Hamling v. United States</u>, 418 U.S. 87 (1974), where the Court stated,

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."

418 U.S. at 117-18 (first quoting <u>United States v. Carll</u>, 105 U.S. 611, 612 (1882) and then quoting <u>United States v. Hess</u>, 124 U.S. 483, 487 (1888)).

The court agrees with the government that, here, the
indictment not only pleads the elements of the charge of
securities fraud but also "identifies the six charged executions
of Demos's fraud by date and name of the RMBS bond being traded,
and it alleges Demos's method of perpetrating his scheme,
including how it differed when his victim was a buyer versus a
seller.  Gov.'s Opp. at 8 (citing Superseding Indictment (Doc.
No. 47) ¶¶ 18, 19, 23 & 26).

The requirements of Rule 7 are meant to ensure that the
indictment first, "fairly informs the defendant of the charge
against which he must defend, and second, enables him to plead
an acquittal or conviction in bar of future prosecutions for the
same offense."  Hamling, 418 U.S. at 117.  Here, the indictment
satisfies those requirements and what the defendant
characterizes as "essential facts of the offense" is evidentiary
detail.

Such a conclusion is consistent with an additional case
also cited to by both parties, United States v. Stringer, 730
F.3d 120 (2d Cir. 2013).  In Stringer, the defendant was
convicted, in Count Two, of "unlawful use of another person's
means of identification in relation to . . . bank fraud in
violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(5)."  730 F.3d at
121.  He contended that "Count Two was constitutionally
deficient for failure to name or sufficiently identify the

person or persons whose means of identification he used in the bank fraud scheme." Id. The court concluded that Stringer's indictment included more than adequate "limiting specificity" because it "provided substantial additional detail as to the means by which Stringer committed the offense . . . . [n]otwithstanding its failure to specify the names of persons whose identifying documents were used . . . ." Id. at 124. The court supported its analysis by citing to United States v. Resendiz-Ponce, 549 U.S. 102 (2007):

> In that case, the Supreme Court rejected the contention that an indictment charging a previously deported alien with illegal "attempt" to reenter the United States was deficient for failure to specify the overt acts constituting the attempt. The Court agreed with the defendant's proposition that "an overt act qualifying as a substantial step towards the completion of" the illegal objective was an essential element of the crime of attempt, but nonetheless concluded that an indictment asserting the "attempt" without specification of the acts constituting the attempt was legally sufficient.

Id. at 126 (citing 549 U.S. at 107-08).

Therefore, the motion to dismiss the indictment on the grounds that it does not allege the false statement and/or representation with respect to each count is being denied.

## C.   Ground Three: Multiplicity (Counts 4 and 5)

The defendant contends that Counts 4 and 5 should be dismissed as multiplicitous. He argues that "Counts 4 and 5 plead two different bonds that were sold to the *same*

7

*counterparty* in *the same* transaction based on the *same representations*.  They were a package deal: they traded at one price and were negotiated as one price."  Def.'s Group I Memo. at 22.

"An indictment 'is multiplicitous when a single offense is alleged in more than one count.'  A claim of multiplicity cannot succeed, however, 'unless the charged offenses are the same in fact and in law.'"  United States v. Jones, 482 F.3d 60, 72 (2d Cir. 2006) (first quoting United States v. Roshko, 969 F.2d 9, 12 (2d Cir. 1992); and then quoting United States v. Estrada, 320 F.3d 173, 180 (2d Cir. 2003)).

In United States v. Josephberg, 459 F.3d 350 (2d Cir. 2006), the court concluded that the district court's dismissal of a count prior to trial on the grounds of multiplicity was "at best, premature."  459 F.3d at 355.  The court stated that "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed."  Id.  Josephberg was a case where, unlike here, the defendant maintained that he was being prosecuted under two different statutes for the same conduct. In that context, the court stated that "it is well established that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the

prosecutor's discretion," and "a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution . . . ."  Id. at 354 (quoting United States v. Batchelder, 442 U.S. 114, 124, 125 (1979)).  The court concluded:

> Accordingly, "[i]f, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense."  If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment.  If the jury convicts on more than one multiplicitous count, the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts.

Id. at 355 (quoting Ball v. United States, 470 U.S. 856, 865 (1985)).

In United States v. Rigas, 281 F. Supp. 2d 660 (S.D.N.Y. 2003), the court observed that a multiplicitous indictment "also risks prejudicing the jury by suggesting that [the] 'defendant committed not one but several crimes.'"  281 F. Supp. at 666 (quoting United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981); and citing 1A Charles Alan Wright, Federal Practice and Procedure § 142 n.19 (3d ed. 1999)).  In Rigas, the court observed that "[w]hen conduct is alleged to have violated the same statute multiple times, as in the present case, the relevant question–one of statutory interpretation–is

identification of the "unit of prosecution" established by the statute." Rigas, 281 F. Supp. 2d at 666.  "[E]ach transaction in a securities fraud case constitutes a separate offense." United States v. Dioguardi, 492 F.2d 70, 83 (2d Cir. 1974).  In analyzing the "unit of prosecution" in Rigas, the court reasoned that "Section 10(b) and Rule 10b-5, then, forbid not only fraudulent schemes, but other fraudulent activities that are connected to the purchase or sale of any security, which may be generally described as 'transactions.'"  Rigas, 281 F. Supp. 2d at 667.  Here, the government asserts that Counts 4 and 5 "are not multiplicitous because they relate to transactions in two distinct securities."  Gov.'s Opp. at 11.  The government asserts that Count 4 and Count 5 are each based on "a different RMBS transaction."

The court concludes that a determination as to whether Counts 4 and 5 are multiplicitous and, if so, whether the appropriate remedy is to enter judgment on only one of the multiplicitous counts in the event of a conviction on both counts, should be resolved on a fuller record.  Therefore, the motion to dismiss Counts 4 and 5 as multiplicitous is being denied without prejudice to renewal at the end of the government's case-in-chief.

## II.   Point Two: Motion to Strike

The defendant moves to strike from the indictment numerous instances of what he characterizes as irrelevant and prejudicial allegations.

As discussed during the hearing on December 14, 2017, the motion to strike is being denied without prejudice to renewal after the close of evidence, as the indictment will not be read to the jury prior to that time.

## III. Point Three: Motion for a Bill of Particulars

The defendant argues that the indictment fails to specify the alleged false representations and "they should be fleshed out because the unstated false representations are the fulcrum for each securities fraud charge."  Def.'s Group I Memo. at 35.

In <u>United States v. Bortnovsky</u>, 820 F.2d 572 (2d Cir. 1987), the court explained that the purpose of Rule 7(f) of the Federal Rules of Criminal Procedure is to:

> permit[] a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [a] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

820 F.2d at 574.  "An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet.  Under this test, an indictment

11

need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime[.]"  United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975) (citations omitted).  "Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."  Bortnovsky, 820 F.2d at 574; see also United States v. Matlock, 675 F.2d 981, 986 (8th Cir. 1982) (indictment apprised defendant of charges); United States v. Society of Independent Gasoline Marketers, 624 F.2d 461, 466 (4th Cir. 1979) (no bill of particulars required where extensive disclosure of documents and testimony), cert. denied, 449 U.S. 1078 (1981).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y.), aff'd 875 F.2d 857 (2d Cir. 1989).

"The crucial question is whether the information sought is necessary, not whether it is helpful."  United States v. Love, 859 F. Supp. 725, 738 (S.D.N.Y.), aff'd, 41 F.3d 1501 (2d Cir. 1994) (internal citation omitted).  A bill of particulars is not a general investigative tool for the defense through which a defendant can require the government to preview its evidence or expose its legal theory prior to trial.  See United States v.

Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973).

Moreover, because a bill of particulars "confines the government's proof to the particulars furnished, requests for a bill of particulars should not be granted where the consequence would unduly restrict the government's ability to present its case." Feola, 651 F. Supp. at 1132.

In deciding whether to grant or deny a motion for a bill of particulars, the court should consider the following factors: "the complexity of the offenses charged in the indictment, the clarity of the indictment, and the degree of discovery otherwise available to a defendant." United States v. Shoher, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). The request for a bill of particulars should be denied "if the information sought by the defendant is provided in the indictment or in some acceptable alternate form." United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998) (upholding denial of motion for bill of particulars where government's discovery enabled defendant to prepare defense and prevent unnecessary surprise).

Here, the indictment identifies with sufficient particularity the nature of the charges pending against the defendant in that it advises the defendant of the specific acts of which he is accused. For each of the six counts in the indictment, the specific security and the trade date are

specified.  The indictment also specifies that the defendant would defraud victims who were buying RMBS by falsely overstating the price that Cantor Fitzgerald had agreed to pay to the selling customer and states that he would defraud victims selling RMBS by understating the price at which the buyer had agreed to purchase the RMBS.  See Superseding Indictment ¶¶ 19, 23.  The indictment also specifies that the defendant used electronic communications with victims, including email, instant messages, and electronic group chats to communicate false statements and misrepresentations.

Thus, this case is not at all like Bortnovsky, where the indictment charged that the defendants had submitted false claims for burglary losses, but failed to identify which of the defendants' insurance claims for burglary losses were fraudulent, and "which of the many invoices submitted to substantiate [those] claims were falsified."  Bortnovsky, 820 F.2d at 573-74.  The court concluded that the defendants had been hindered in preparing their defense because the government did not "reveal crucial information: the dates of the fake burglaries and the identity of the three fraudulent documents." Id. at 574.  Rather, defendants were "forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending."  Id. at 574-75.

14

Nor is this case like <u>United States v. Nachemie</u>, 91 F. Supp. 2d 565 (S.D.N.Y. 2000).  There, the government "produced over 20,000 pieces of paper in hundreds of boxes and files relating to 2,000 Medicare claims.  But [had not] informed the defendants which of these claims were false and in what way they were false."  91 F. Supp. 2d at 571.  There were multiple defendants in that case and, although the indictment specified five ways in which claims were falsified, the claims were not identified by defendant, type of falsity, claim number, and date.  Not surprisingly, the court concluded that the government had not complied with its obligation to provide adequate notice to the defense.

Here, the defendant seeks much more than what is necessary to identify the specific acts with which he is charged.  He seeks to have the indictment specify the alleged false representations that each of the six counts of securities fraud is based on, but the crime charged is securities fraud, not making a false representation.  Thus, he does not seek information that is necessary, but rather information that constitutes evidentiary detail of the prosecution's case.

Therefore, the motion for a bill of particulars is being denied.

IV.   **Point Four: Motion for Identification of Brady Material**

The defendant moves for an order directing the government to describe the Brady material contained in the documents it has provided to the defense.  The defendant argues that "[i]t is not enough for the government to provide us with millions of pages of material (as it has) and assert that it has discharged its Brady obligations to the extent any Brady material is contained in that discovery."  Def.'s Group I Memo. at 40.

In Brady v. Maryland, 373 U.S. 83 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

> The government's obligations under Brady v. Maryland, 373 U.S. 83 (1963), are seemingly well-established. The prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment.  This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness. Brady does not, however, require the prosecution to disclose all exculpatory and impeachment material; it need disclose only material "that, if suppressed, would deprive the defendant of a fair trial."  In the context of Brady, a defendant is deprived of a fair trial only where there is a reasonable probability that the government's suppression affected the outcome of the case, or where the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (first quoting United States v. Bagley, 473 U.S. 667, 675(1985); and then quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)) (citations omitted).  "Some courts have reasonably suggested that burying exculpatory material within a production of a voluminous, undifferentiated open case file might violate the government's obligations."  United States v. Kirk Tang Yuk, 885 F.3d 57, 86 (2d Cir. 2018).

The government's opposition memorandum makes it clear that the government is aware of and sensitive to its obligations under Brady, and the government represents that it has met its obligations under Brady.  It represents that "[t]his is not a situation where the Government is aware of information favorable to the defense, but buried it in the proverbial haystack of discovery."  Gov.'s Opp. at 31.

In support of his motion, the defendant relies on a portion of the government's December 22, 2016 discovery letter to the defense.  That letter reads, in part:

> Moreover, in response to the Government's offer and
> despite our warning that the materials are voluminous
> and possibly irrelevant to the defendant's case, you
> have requested that we provide you with substantially
> all of the documents collected and agents' reports and
> notes of interviews conducted in the course of the
> Department of Justice's investigations into various
> fixed income broker-dealers other than Cantor
> Fitzgerald. Given this extraordinary level of
> disclosure by the Government, defendant's counsel can

17

> make its own assessment of what might fall within the
> relevant scope [of Brady].

Id. at 30.  The defendant highlights the last sentence of this excerpt in support of his contention that the government has simply made a voluminous production in which any exculpatory evidence is buried.  However, it is clear from the context of the sentence relied upon by the defendant that the statement was made in reference to the government's production of "materials collected or created by the Department of Justice in the course of separate investigations concerning alleged fraud schemes similar to Demos's by traders at other broker-dealers," id. at 29-30, which the government had offered to make available to the defendant despite "their enormous volume," and the fact that the government viewed them as of "questionable relevance."  In light of the foregoing, the court is persuaded that the government's statement that "the defense is on the exact same footing as the Government with respect to documents" is accurate.  Id. at 30.

Therefore, the defendant's motion for identification of Brady material is being denied.

It is so ordered.

Signed this 22nd day of April, 2018, at Hartford,

Connecticut.


                              ___/s/ AWT_____
                              Alvin W. Thompson
                              United States District Judge