# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA : No. 3:16-CR-220 (AWT)

v.

DAVID DEMOS,

April 29, 2018

## DEFENDANT'S RESPONSE TO THE COURT'S JURY CHARGE

**I.   TO BE CRIMINALLY CULPABLE A DEFENDANT MUST ACT TO DO SOMETHING THAT IS "UNLAWFUL" NOT JUST "WRONGFUL" AS THE COURT PROPOSES**

On April 10, 2018 the Court detailed the third element of the offense of securities fraud upon which the Defense relied during the trial.

> The third element of the offense of securities fraud is that the defendant acted willfully, knowingly, and with intent to defraud. To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently, and not because of ignorance, mistake, accident or carelessness. To act "willfully" means to act with the intent to do something the law forbids, that is, with a bad purpose to disobey or disregard the law. To act with intent to defraud means to act with specific intent to deceive, i.e. deliberately using deception to induce another to act to his detriment; the defendant's conduct must have been the product of his conscious objective rather than the product of mistake.

Nowhere in the Court's instruction was the Defense put on notice the Court would expand its definition to now include the following language:

> The Government does not have to prove that the defendant knew he was violating any particular law, but it must prove he intentionally understood an act he knew was ***wrongful.***

(emphasis added).

This addition is highly prejudicial and inconstant with precent from the Supreme Court of the United States. In addition, the defense opend with a definition of "willfulness" and a written slide of that definition and articulated by the Court. Indeed, the Court approved the Defense opening statement slide that was published to the jury. Had the defense been aware the Court would eschew the original willfulness instruction and include an act the Defendant knew was wrongful, the defense trial strategy would have been significantly different. With this revised definition, the Defense anticipates that the Government will argue that Cantor Employee handbooks representing employment policies and procedures and Financial Industry Regulatory Authority ("FINRA") regulations prove that Mr. Demos knew his conduct was "wrongful" thereby meeting their burden to establish Mr. Demos's intent to violate the law. However, centuries of traditions and the common law confirm that is is incorrect to equate wrongful conduct with unlawful conduct. The former exists in the domain of civil torts, while the later belongs in the province of the criminal law.

Presumably, the Court's proposed willfulness standard as to wrongful conduct is derived from the factually dissimilar *United States v. Kaiser*. It cannot establish criminal liability in the context of this case and must be rejected by this Court. 609 F.3d 556 (2d Cir. 2010).

This instruction was specifically rejected by Judge Chatigny in *Shapiro* because of the factual dissimilarity between *Kaiser* and the *Litvak-Shapiro* RMBS securities fraud

prosecutions. In *Kaiser*, the defendant falsified SEC filings to manipulate share prices in connection with a tender offer. *See United States v. Kaiser*, 609 F.3d 556 (2d Cir. 2010). Even if the *Kaiser* defendant was unaware of the specific regulation he violated, there was no question that the defendant knew his conduct was illegal. In *Shaprio*, as here, it is not at all clear that defendants alleged misstatements were material to any of the underlying transactions and, as Judge Chatigny observed, many market participants did not realize this conduct could be criminal. *See United States v. Shapiro*, 3:15-CR-155 (RNC), Tr. Transcript, Vol. XIII, 2616-2618, **Exhibit A** at 2. ("I don't think you can be convicted under the Constitution unless you had a sufficiently culpable state of mind such that you made a conscious choice to cross an important line and expose yourself to potential imprisonment.").

In rejecting the *Kaiser* willfulness standard, Judge Chatigny in Shapiro further opined:

The Supreme Court has recognized that when a challenged action or course of conduct is a technical violation of the law as opposed to morally reprehensible it becomes more important to make it clear to the jury that the government has a burden to prove that the defendant knew his conduct was unlawful. Why? Because we don't want to be exposing people to conviction and incarceration if they didn't know that this is what they were risking.**Exhibit A** at 3.

When construing the statutory meaning of willfulness, the Supreme Court expressly considers whether the defendant knew his conduct was *illegal*, not merely wrongful. In *Ratzlaf v. United States,* a federal prosecution of a banking regulation, the

Supreme Court interpreted "willfulness" to mean knowledge of illegality: "[w]e hold that the 'willfulness' requirement mandates something more. To establish that a defendant 'willfully violat[ed]' the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." 510 U.S. 135, 137 (1994).

In construing the meaning of willfulness in federal firearms law, the Supreme Court offered the following analysis:

> The word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears…. Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind…. [A] variety of phrases have been used to describe that concept. As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose." In other words, in order to establish a "willful" violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful."

*Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal citations omitted).

## II. II. **IMPORTANCE AND MATERIALITY ARE NOT SYNONYMOUS**

The Defendant requested in his proposed jury instructions the following language in Section e under Securities Fraud-Second Element that the court did not adopt.

> While importance is undoubtedly a necessary element of materiality, importance and materiality are not synonymous.

4

The Defendant requests the following language be incorporated the jury Charge proposed by the Court.

> The second element the government must prove with respect to the count you are considering is materiality. Under the relevant statutes, not every false statement in connection with a purchase or sale of securities is a crime. Stated another way, not all lies are material and telling a lie is not necessarily a crime under the relevant statutes. Rather, making a false statement in connection with a purchase or sale of securities is criminal only if it concerns a "material" fact.
>
> The word "material" serves to distinguish statements of fact that a reasonable investor likely would view as significantly altering the total mix of available information from statements that would not be given such weight by a reasonable investor. So, while "importance" is undoubtedly a necessary element of materiality, importance and materiality are not synonymous. *City of Pontiac v. UBS, et al.,* 752 F.3d 173, 185 (2nd Cir. 2014). Instead, to be "material," a false statement of fact must have such a high degree of importance that it could reasonably be expected to cause a reasonable investor to act or not act, in some way, with respect to the transaction in question.

### III. **THE REASONABLE INVESTOR DEFINITION IS INSUFFICIENT AS A MATTER OF LAW.**

The Court defined the Reasonable Investor as follows:

"For purposes of this case, a "reasonable investor" is an investor in the non-agency RMBS market. Accordingly, in determining whether an alleged misstatement was material, you must consider the matter from the standpoint of such a reasonable investor. To do that, you should consider all the evidence about what such a reasonable investor would consider important when making an investment decision and approach the question of materiality objectively. You must assess whether a false statement was material in light of the norms and practices in the non-agency RMBS market that existed at the time of the transaction and not based on hindsight. Jury Instruction pg 15

The Defense specifically requests the third sentence of the first paragraph of Courts proposed instruction be substituted with the following sentence as was proposed in the Defendant's proposed jury instructions.

> To do that, you should consider the evidence relating to the sophistication of the investors in the non-agency RMBS market, their objectives, the information available to them, the analyses they employed and their reliance on proprietary information, and the prevailing market practices at the time of these transactions.

The jury should be instructed that "a 'reasonable investor" is an investor in the non-agency RMBS market." In *Litvak*, the Second Circuit suggested that expert testimony about what "mattered to sophisticated investors" was "relevant to the element of materiality.*" United States v. Litvak*, 808 F.3d 160, 185 (2d Cir. 2015). The Court of Appeals added that "district courts in this Circuit have held repeatedly in the analogous

civil context that the sophistication of the investor is relevant both to the adequacy of the defendant's disclosure, and to the extent of the investor's reliance on any alleged misrepresentations." Id. (internal quotation marks omitted) (internal alterations omitted) (emphasis added). The Court of Appeals ultimately held that the sophistication of investors in the RMBS market was integral to the materiality inquiry:

> [A] jury could reasonably have found that misrepresentations by a dealer as to the price paid for certain RMBS would be immaterial to a counterparty that relies not on a "market" price or the price at which prior trades took place, but instead on its own sophisticated valuation methods and computer model. The full context and circumstances in which RMBS are traded were undoubtedly relevant to the jury's determination of materiality

Id. at 183.

Other cases confirm that the "reasonable investor" is drawn from the only group of investors capable of being deceived: those buying and selling the securities. *See, e.g.*, *S.E.C. v. Rorech*, 720 F. Supp. 2d 367, 372 (S.D.N.Y. 2010) ("SEC has failed to prove that either piece of alleged information was material" because "these two pieces of information were not considered material to reasonable investors in VNU CDSs," whom the Court noted were "sophisticated high yield bond buyers.") (emphasis added); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 01CIV.11448 (JGK) (HBP), 2006 WL 1206333, at *1 (S.D.N.Y. May 2, 2006) ("[T]he parties cannot seriously dispute that plaintiffs' financial sophistication and their knowledge concerning [the securities] has some relevance in this securities fraud action"); *Basso Sec. Ltd. v. Interstate Bakeries Corp., No.* CIV.01CV575 (PCD), 2002 WL 32255352, at *4 n. 3 (D. Conn. Jan. 182002) ("Plaintiff [in a Rule 10b-5 case] would also appear to face a formidable obstacle in alleging that the misstatement in the IBC press release was material" because "[t]he notion that a sophisticated plaintiff would rely on a summary of a shareholder agreement

7

appearing within a press release without referring to the document to which it refers is a dubious proposition.") (emphasis added); *see also Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) ("In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."); *In re Enron Corp. Securities*, 529 F. Supp. 2d 644, 749 (S.D. Tex. 2006) ("[T]he Court concludes that factors affecting debt securities must also be examined analytically, not cursorily or superficially, with a view to their distinctive nature and to the kinds of news that would move their market price in contrast to the kind of information that might affect the more volatile stock market . . . ."); *cf. United States v. Wei*mert, 819 F.3d 351, 358 (7th Cir. 2016) ("[N]egotiating parties, and certainly the sophisticated businessmen in this case, do not expect complete candor about negotiating positions, as distinct from facts and promises of future behavior. Deception about negotiating positions—about reserve prices and other terms and their relative importance—should not be considered material for purposes of mail and wire fraud statutes.").

## IV. THE COURT HAS NOT INCLUDED THE STANDARD CHARGE REGARDING GUESSWORK AND SPECULATION.

The Defendant requests the following instruction be added to the Charge.

> An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a fact exists based on the existence of another fact. There are times when different inferences can be drawn from facts whether proven by direct or circumstantial evidence. The Government asks you to draw one inference while a defendant asks you to draw another. It is for you to decide what inference you will draw. The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a reasonable deduction or conclusion that you, the jury, are permitted to draw, but are not

required to draw, from facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should use your common sense.

*1 Leonard B. Sand, et al., Modern Federal Jury Instructions § 6.01, instr. 6–1 (1997); See Zale v. Sikorsky Aircraft Corp*., No. 3:97CV00125JBA, 2000 WL 306943, at *3 (D. Conn. Feb. 7, 2000); and *4 Leonard B. Sand, et. al., Modern Federal Jury Instructions, Instr. 75–1 (Oct.2001); S.E.C. v. Alejandro Duclaud Gonzalez de Castilla, 184 F. Supp. 2d 365, 376 (S.D.N.Y. 2002).*

1997 refers to "An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a fact exists based on the existence of another fact."; and 2000 refers to *(charging jurors that "[t]he process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.").*

## V.  AGENCY v. PRINCIPAL RELATIONSHIP

On March 20, 2018 the Court filed its order Document 258 in part regarding ruling on Victim Testimony About Perceiving the Defendant as Functioning as an Agent or Fiduciary.

The Court held at page 6

> The government represents that it has no present intention to "introduce victim testimony that they perceived Demos to be functioning in the capacity of an agent or fiduciary." Gov.'s Opp. at 3. Therefore, the motion is being **granted**, absent objection, as to this point.

At trial Mr. Cong testified he didn't know what the obligations of a broker-dealer are to the buyer and seller legally, he did not view the transaction as a principal-to-principal purchase and when asked if he was unaware that this was a principal-to-principal transaction he responded it was a transaction between myself and the seller.

> Q. So nobody has any legal obligations to one another, right?
> Is that a yes? You're nodding your head. You have to answer yes.

9

> A. So what I would say is that nobody has any legal obligations as I know them. **I don't know what the obligations of a broker-dealer are to the buyer and seller legally.**
> (emphasis added).

Unofficial Trial Transcript Day 2 page 61

> Q. He's dealing this bond to you, right? You guys are at opposite ends of the table. He's not brokering anything for you.
> A. Can you just define what you mean by "dealer."
> Q. You don't know what the term "dealer" means, sir?
> A. Versus broker.
> Q. Right. As it relates to David Demos with the AMSI bonds, sir, he was acting in the capacity of a dealer to you, correct? **This was a principal-to-principal purchase.**
> A. **That is not how I viewed it.**
> (emphasis added).

Unofficial Trial Transcript Day 2 page 73-74

> Q. So you were unaware that -- **you were unaware that this was a principal-to-principle transaction?**
> A. So from my perspective, as I had mentioned, I have not ever broken a trade in the T-plus-three settlement period. **In my mind it was an investment or transaction between myself and the seller,** and it was a riskless transaction for Cantor Fitzgerald.
> (emphasis added).

Unofficial Trial Transcript Day 2 page 74

To avoid any confusion by the jurors as to the legal relationship between the Defendant and the counter-parties the Defendant requests paragraph 15 of his proposed jury instruction be included in the Charge.

> A person is an agent if he is authorized to act on behalf of another, known as a principal. An agent owes certain duties to his principal. I instruct you that, as a matter of law, the defendant was at all times acting as a principal on behalf of

10

Cantor and not as an agent of the counterparties. In other words, when the defendant bought an RMBS from a counterparty, he was not the agent of that seller. And when the defendant sold an RMBS to a counterparty, he was not the agent of that buyer. As a principal, the defendant owed no duty of loyalty to the counterparties and was acting in his own self-interest, not the interest of the counterparty.

Respectfully submitted,

DAVID DEMOS

By: /s/ George Leontire

George Leontire
Leontire & Associates, P.C.
66 N. Second Street
New Bedford, MA 02108
(855) 223-9080
george@leontirelaw.com

Felicia L. Carboni (phv09485)
Leontire & Associates, P.C.
66 N. Second Street
New Bedford, MA 02108
(855) 223-9080
felicia@leontirelaw.com

Jose Baez
The Baez Law Firm
40 SW 13th Street, Suite 901
Miami, FL 33130
(305) 999-5111
jose@baezlawfirm.com

Ronald S. Sullivan, Jr.
6 Everett Street
Cambridge, MA 02138
(617) 496-4777
prof.ron.sullivan@gmail.com

Alex Spiro

Quinn Emanuel Urquhart &
Sullivan, LLP
51 Madison Ave
Ste Floor 22
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com

and

Michael L. Chambers, Jr. (ct28580)
100 Wells Street, Suite 2C
Hartford, Connecticut 06103
(860) 231-9535
chamberslegalservices@gmail.com

His Attorneys