UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


– – – – – – – – – – – – – – – – x

UNITED STATES OF AMERICA          3:16CR00220(AWT)

       vs.

DAVID DEMOS
                          HARTFORD, CONNECTICUT
              Defendant     APRIL 30, 2018

– – – – – – – – – – – – – – – – x



**JURY TRIAL**

**VOLUME V**



   BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.

            and a Jury of Twelve



Corinna F. Thompson, RPR
Official Court Reporter

APPEARANCES:


    FOR THE GOVERNMENT:

        OFFICE OF THE UNITED STATES ATTORNEY
        915 Lafayette Boulevard,  Room 309
        Bridgeport,  Connecticut 06604
        BY:  HEATHER CHERRY, AUSA

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street
        New Haven, Connecticut  06510
        BY:  JONATHAN N. FRANCIS, AUSA

    FOR THE DEFENDANT:

        THE BAEZ LAW FIRM
        40 SW 13th Street
        Suite 901
        Miami, Florida  33130
        BY:  JOSE BAEZ, ESQ.

        LEONTIRE & ASSOCIATES
        66 North Second Street
        New Bedford, Massachusetts  02108
        BY:  GEORGE J. LEONTIRE, ESQ.
             FELICIA LEE CARBONI, ESQ.

        HARVARD LAW SCHOOL CRIMINAL JUSTICE INSTITUTE
        6 Everett Street
        Suite 5116
        Cambridge, Massachusetts  02138
        BY:  RONALD S. SULLIVAN, JR., ESQ.

        QUINN, EMANUEL, URQUHART & SULLIVAN
        51 Madison Avenue
        22nd floor
        New York, New York  10010
        BY:  ALEX SPIRO, ESQ.

        LAW OFFICE OF MICHAEL CHAMBERS, JR.
        100 Wells Street    Suite 2C
        Hartford, Connecticut  06103
        BY:  MICHAEL LINCOLN CHAMBERS, JR., ESQ.

## TABLE OF CONTENTS

JURY CHARGE ..................................... 844

1                              **1:18 PM**

2              THE COURT:  I'll just confirm with Mr. Demos

3       that he recalls -- Mr. Demos, you recall our

4       conversation last week about your decision not to

5       testify?

6              THE DEFENDANT:  I certainly do, Your Honor.

7              THE COURT:  And that it's your decision, but

8       one to be made by you only after you've had full

9       consultation with your attorneys?

10             THE DEFENDANT:  That occurred, yes, Your

11      Honor.

12             THE COURT:  Do you believe you had an

13      opportunity to have a full consultation with your

14      attorneys as to what is in your best interest in terms

15      of testifying or not testifying?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And have you concluded that it is

18      in your best interest not to testify?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And I guess on Friday I mentioned

21      that you could change your mind, but we're getting

22      pretty close to the defense resting.

23             So you understand that, right, sir?

24             THE DEFENDANT:  Yes.  I don't think my mind

25      will change.

1           THE COURT:  Okay, great.  Thank you.

2           Have people had a chance --

3               (Off the record.)

4           THE COURT:  Are we set on the exhibits?

5           MR. BAEZ:  Almost.

6               (Pause.)

7           MR. FRANCIS:  As soon as they tell me the

8   numbers, I'm ready.

9               (Pause.)

10          MR. FRANCIS:  Thank you.

11              (Pause.)

12          MR. SULLIVAN:  We're ready, Your Honor.

13          THE COURT:  You're set?

14          What will the exhibits be?

15          MR. BAEZ:  They are 499, 500, 501, 502, 503,

16  479, 480, 481 -- did I say 489?

17          THE COURT:  Not yet.

18          MR. BAEZ:  Okay 489, 490.

19          THE COURT:  Is that the one that was already

20  in?

21          THE CLERK:  489 is already in.

22          MR. BAEZ:  489 is already in?

23          490, 491, 493, 494, 495, 496, 497 and 498.

24          THE COURT:  Okay.

25          MR. BAEZ:  I'll try and put them in order so

1    when I say it I'm not bouncing around.

2         THE COURT:  Looks like we're ready.  What

3    we'll do is bring the jury in, we'll put in the defense

4    evidence.  I did have the government rest on Friday.

5    Then the defense will rest and then I'll explain to the

6    jurors what we'll do.  It will take a few minutes for

7    the court reporter to get set up, set up a separate

8    file.  So I'll tell them they'll have a five- or

9    ten-minute break.  Then we'll come back in, seal the

10   courtroom, and proceed to the first four parts of the

11   charge.

12        MR. BAEZ:  Perfect.

13        THE COURT:  I'll ask the jurors partway

14   through if they want a break or they want to keep going,

15   see how they're doing.

16        Okay.  Let's bring in the jury.

17             (Whereupon, the jury entered the

18   courtroom.)

19        THE COURT:  Good afternoon, everyone.

20        THE JURY:  Good afternoon.

21        THE COURT:  Please be seated, everyone.

22        Mr. Baez.

23        MR. BAEZ:  May it please the Court,

24   Mr. Francis.

25        Good afternoon, ladies and gentlemen.

1          THE JURY:  Good afternoon.

2          MR. BAEZ:  Your Honor, at this time the

3     defense would enter into evidence Defense Exhibit 479,

4     480, 481, 490, 491, 492, 493, 494, 495, 496, 497, 498,

5     499, 500, 501, 502, and 503.

6          THE COURT:  Thank you.  They are admitted.

7          MR. BAEZ:  At this time, Your Honor, the

8     defense rests.

9          THE COURT:  Thank you.

10          Ladies and gentlemen, that concludes the

11     evidence in this case.  Next what's going to happen is

12     I'm going to instruct you on the law.  And then

13     tomorrow -- well, I'm going to give you -- my

14     instructions have five parts.  I'm going to cover the

15     first four parts this afternoon, then tomorrow morning

16     you will hear closing arguments from counsel.  I expect

17     that that may go past lunchtime.  We're going to have

18     lunch due at noon.  We'll bring you in at 9:30.

19          And then after you get both of the closings,

20     then I'm going to give you the final part of my

21     instructions which deal with instructions for your

22     deliberations, which is a very short piece.

23          It will take a few minutes for me and the

24     court reporter to get set up to do the instructions on

25     the law so we'll just let you go next door for about

1    five or ten minutes and then we'll bring you back.  The

2    courtroom will be sealed, but if any of you have a

3    problem, let me know.

4              We'll recess.

5                   (Whereupon, a recess followed.)

6

7              THE COURT:  Looks like we're ready for the

8    jury.

9              MR. SULLIVAN:  Yes, Your Honor.

10             THE COURT:  Bring the jury in.

11                  (Whereupon, the jury entered the

12   courtroom.)

13             THE COURT:  Please be seated, everyone.

14             Members of the jury, at this time it is my

15   duty to give you the instructions of the Court as to the

16   applicable law in this case.

17             While you are deliberating, you will have a

18   copy of these instructions with you.  If you decide you

19   would like additional copies of these instructions,

20   please let the courtroom deputy know.

21             You have faithfully discharged your duty to

22   observe and listen carefully to each witness who

23   testified.  I ask that you give me that same careful

24   attention as I instruct you on the law.

25             My instructions will be delivered in five

1    parts, some of which will be a reminder and some of

2    which will be new:

3           First, I will give you some instructions on

4    general rules that define the role of the Court and the

5    duty of the jury in a criminal case.

6           Second, I will give you instructions that

7    define what are called the elements of the offenses

8    charged in the indictment; that is, the elements the

9    government must prove beyond a reasonable doubt to make

10   its case.

11          Third, I will state for you the defendant's

12   theory of defense.

13          Fourth, I will give you some additional rules

14   and guidelines for your deliberations.

15          And, fifth, after counsel give you their

16   closing arguments, I will instruct you on certain

17   procedures you must follow once the jury retires to

18   deliberate.

19          So first let me talk about the province of the

20   Court and that of the jury.

21          It is your duty as jurors to follow the law as

22   I state it to you and to apply that law to the facts as

23   you find them from the evidence in this case.  You are

24   not to single out one instruction alone as stating the

25   law, but you must consider these instructions as a

1    whole.

2          You will determine the facts from all of the

3    testimony you have heard and from the other evidence

4    that has been submitted.  You are the sole and exclusive

5    weighers of the facts, and in that area, neither I nor

6    anyone else may invade your province.  On the other

7    hand, and with equal emphasis, I instruct you that you

8    are bound to accept the rules of law that I give you

9    whether or not you agree with them.

10         Now, counsel may, quite properly, refer to

11   some of the governing rules of law in their arguments.

12   If, however, any difference appears to you between the

13   law as stated by counsel and that stated by the Court,

14   you are to be governed by the Court's instructions.

15   Similarly, statements as to the facts made by counsel

16   during the course of the trial, including those

17   statements made in the form of a question, do not

18   constitute evidence, and characterizations of the

19   evidence by counsel should be considered by you only if

20   supported by your recollection of the evidence.

21         Now, nothing I say in these instructions is to

22   be taken as an indication that I have any opinion about

23   the facts of the case or what that opinion is.  In any

24   event, it is not my function but yours to determine the

25   facts.

1          I want to talk with you about the nature and

2    function of the indictment.

3          In this case, the indictment charges the

4    defendant, David Demos, with multiple counts of

5    securities fraud.

6          The defendant pled not guilty to the charges

7    against him.  Consequently, the prosecution, in order to

8    support a verdict of guilty on a particular charge, must

9    prove each element of that charge beyond a reasonable

10   doubt.

11         Later in these instructions I will explain to

12   you the elements of the offenses with which Mr. Demos is

13   charged.  At this time, however, I instruct you that the

14   indictment is not, and may not be considered to be,

15   evidence supporting any of these elements.

16         The indictment is merely a formal accusation

17   by a grand jury and can in no sense be considered proof

18   of Mr. Demos's guilt.  No juror should permit himself or

19   herself to be influenced against Mr. Demos because of or

20   on account of the indictment or because of Mr. Demos

21   having to stand trial here.

22         That Mr. Demos has been accused and is on

23   trial is not evidence of guilt, and you are not

24   permitted to infer or speculate from this that the

25   defendant is more likely to be guilty than innocent.  In

1    reaching your determination of whether the government

2    has proven the defendant guilty beyond a reasonable

3    doubt, you may consider only the evidence introduced or

4    the lack of evidence.

5         Let me tell you about the fact that we have

6    multiple counts in this case.

7         You are being asked to consider five counts

8    charging the defendant with securities fraud.  You must

9    consider each charge separately, and you must return a

10   separate verdict for each charge.  The number of charges

11   is no evidence of guilt and should not influence your

12   decision in any way.

13        At the beginning of the trial I gave you some

14   basic rules about criminal trials.  I will now restate

15   them for you.  You may recall there are three basic

16   rules.

17        The first rule is that a defendant is presumed

18   innocent of a crime unless and until proven guilty.

19   Thus a defendant, although accused of a crime in an

20   indictment, begins a trial with a clean slate; that is,

21   with no evidence against him.  This presumption was with

22   the defendant when the trial began.  It remains with him

23   now as I speak to you, and it will continue with the

24   defendant into your deliberations as to each charge

25   unless and until every one of you is convinced that the

1      government has proven his guilt as to that charge beyond

2      a reasonable doubt.

3              As I have instructed you, the indictment is

4      merely an accusation and only that.  It is not evidence

5      of any kind that the defendant committed an offense.

6      The law permits nothing but legal evidence presented

7      before the jury in court to be considered in support of

8      the charges against the defendant.  The presumption of

9      innocence alone, therefore, is sufficient to acquit the

10     defendant as to a charge if the government has failed to

11     prove that charge beyond a reasonable doubt.

12              That brings us to the second rule.

13              In a criminal case the burden is always on the

14     government to prove guilt beyond a reasonable doubt.  It

15     has that burden throughout the entire trial.  This

16     burden never shifts to the defendant, for the law never

17     imposes upon a defendant in a criminal case the burden

18     or duty of calling any witnesses or producing any

19     evidence.  The defendant is not even obligated to

20     produce any evidence by cross-examining the witnesses

21     for the government.

22              The third rule is that the government must

23     prove each element of an alleged crime beyond a

24     reasonable doubt.  It is not required that the

25     government prove guilt beyond all possible doubt.  The

1    test is one of reasonable doubt.  A reasonable doubt is

2    a doubt based upon reason and common sense, the kind of

3    doubt that would make a reasonable person hesitate to

4    act.  Proof beyond a reasonable doubt must, therefore,

5    be proof of such a convincing character that a

6    reasonable person would not hesitate to rely and act

7    upon it in the most important of his or her own affairs.

8           Next I want to talk with you about a couple of

9    terms I'll be using, the word "find" and the word

10   "prove."

11          Throughout the remainder of my instructions to

12   you, I will use the word "prove" from time to time with

13   reference to the government's burden.  I shall also

14   speak of your finding various facts as to the elements

15   of the crimes charged in this case.

16          Throughout my instructions you should

17   understand that whenever I say that the government has

18   to "prove" a fact to you, I mean that it has to prove

19   that fact to you beyond a reasonable doubt, as I just

20   explained that term to you.  You are to understand my

21   use of the word "prove" to mean prove beyond a

22   reasonable doubt, even if I do not always repeat those

23   exact words.

24          Similarly, when I say that you must "find" a

25   fact in order to return a guilty verdict, you must find

1    that fact to have been proven by the government beyond a

2    reasonable doubt, even if I simply use the word "find."

3              I next want to talk about matters that a jury

4    may not consider.

5              Your verdict must be based solely upon the

6    evidence developed at this trial or the lack of

7    evidence.  You must perform your duty as jurors without

8    bias or prejudice as to either party.  It is improper

9    for a juror to consider any personal feelings he or she

10   may have about the gender, age, race, religion, national

11   origin, wealth, lifestyle or other characteristics of

12   the parties.  It would also be improper for you to allow

13   any feelings you might have about the nature of the

14   crimes charged or the conduct you have heard described

15   to interfere with what must be your fair and impartial

16   decision-making process.  All persons who come before

17   the Court charged with a criminal offense are entitled

18   to the presumption of innocence and the government

19   always has the burden of proof as I just described to

20   you.

21             Let me also talk with you about sympathy and

22   bias.

23             You have been chosen as jurors to try the

24   issues of fact and reach a verdict on the basis of the

25   evidence or lack of evidence presented here.  Under the

1  terms of your oath as jurors you are not to be swayed by

2  sympathy or bias that you may have towards either party.

3  You are to be guided solely by the evidence in this

4  case, and the crucial, central question that you must

5  ask yourselves as you sift through the evidence on each

6  charge is:  Has the government proven the guilt of the

7  defendant beyond a reasonable doubt?

8          It is for you alone to decide whether the

9  government has proven that the defendant is guilty of

10  the offenses charged solely on the basis of the evidence

11  and subject to the law as I charge you.  If you let fear

12  or prejudice or bias or sympathy interfere with your

13  thinking, there is a risk that you will not arrive at a

14  true and just verdict.

15          I also want to talk with you about the fact

16  that the government is a party in this case.

17          As I just mentioned, you are to perform your

18  duty as jurors of finding facts without bias or

19  prejudice as to either party.  You are to perform your

20  duty in an attitude of complete fairness and

21  impartiality.

22          This case is important to the government, for

23  the enforcement of criminal laws is a matter of prime

24  concern to the community.  Equally, it is important to

25  the defendant who is charged with serious crimes.

1                The fact that the prosecution is brought in

2      the name of the United States of America entitles the

3      government to no greater consideration than that

4      accorded any other party to litigation.  By the same

5      token, it is entitled to no less consideration.  All

6      parties, whether the government, individuals,

7      corporations or other entities, stand as equals at the

8      bar of justice.

9                And lastly in this section, I want to talk

10     with you about possible punishment.

11               You are instructed that the question of

12     possible punishment of the defendant is no concern of

13     the jury and should not, in any sense, enter into or

14     influence your deliberations.  In the event of a

15     conviction, the duty of imposing sentence rests

16     exclusively with the Court, that is, the judge.

17               The function of the jury is to weigh the

18     evidence in this case and determine whether the

19     defendant is guilty or not guilty solely upon the basis

20     of such evidence.  Under your oath as jurors, you cannot

21     allow a consideration of the punishment which may be

22     imposed upon the defendant, if convicted, to influence

23     your verdict in any way.

24               That brings us to the second part of these

25     instructions.  I'm going to talk with you about the

1    elements of the charged offenses.

2           You are being asked to consider five counts

3    that charge the defendant with securities fraud in

4    connection with the purchase or sale of certain RMBS

5    bonds.  The five counts are as follows:

6           Count One, the bond name is LXS 2005-5N, and

7    then a 3A2, and the date of the trade is May 11, 2012.

8           Count Two, the bond name is AMSI 2003-8, then

9    M2, and the date of the trade is July 6, 2012.

10          Count Four, the bond name is CNF 2000-1 M1,

11   and the date of the trade is September 26, 2012.

12          Count Five, the bond name is CNF 2001-2 M1,

13   and the date of the trade is also September 26, 2012.

14          And Count Six, the name of the bond is CSFB,

15   and that is 2003-8, and then CB1, and the date of the

16   trade is January 4, 2013.

17          Each of these counts charges a violation of

18   the same statute, but you must consider each count

19   separately.

20          And now I want to talk with you about the

21   statutes and the regulation that are the law in this

22   case.

23          The charges in these counts arise under the

24   Securities Exchange Act of 1934, which is codified in

25   Title 15 of the United States Code, and

1    Section 240.10b–5 of Title 17 of the Code of Federal

2    Regulations, which is known as Rule 10b–5.

3              Section 78j, Subsection (b), of Title 15

4    provides, in relevant part:

5              "It shall be unlawful for any person, directly

6    or indirectly, by the use of any means or

7    instrumentality of interstate commerce or of the mails,

8    or of any facility of any national securities exchange,"

9              Then Subsection (b), "To use or employ, in

10   connection with the purchase or sale of any security,

11   any manipulative or deceptive device or contrivance in

12   contravention of such rules and regulations as the SEC

13   may prescribe as necessary or appropriate in the public

14   interest or for the protection of investors."

15             Section 78ff, Subsection (a), of Title 15

16   provides in relevant part:

17             "Any person who willfully violates any

18   provision of this chapter, or any rule or regulation

19   thereunder, the violation of which is made unlawful or

20   the observance of which is required under the terms of

21   this chapter shall be guilty of a crime."

22             And Rule 10b–5 provides:

23             "It shall be unlawful for any person, directly

24   or indirectly, by use of any means or instrumentality of

25   interstate commerce, or of the mails or of any facility

1    of any national securities exchange,

2              "(a) to employ any device, scheme or artifice

3    to defraud,

4              "(b) to make any untrue statement of a

5    material fact or to omit to state a material fact

6    necessary in order to make the statements made, in light

7    of the circumstances under which they were made, not

8    misleading, or

9              "(c) to engage in any act, practice or course

10   of business which operates or would operate as a fraud

11   or deceit upon any person in connection with the

12   purchase or sale of any security."

13             And now I'm going to talk with you about the

14   elements of the offense.

15             In order to sustain its burden of proof with

16   respect to a charge of securities fraud, the government

17   must prove beyond a reasonable doubt the following four

18   elements:

19             One, in connection with the purchase or sale

20   of the security identified in the count you are

21   considering, the defendant

22                  (a) employed a device, scheme or artifice

23   to defraud, or

24                  (b) made an untrue statement of fact or

25   omitted to state a fact which made what was said, under

1    the circumstances, misleading, or

2                        (c) engaged in an act, practice or course

3    of business that operated, or would operate, as a fraud

4    or deceit upon a purchaser or seller, and

5           Two, the statement or conduct related to a

6    fact that would be material to a reasonable investor in

7    the non-agency RMBS market,

8           Three, the defendant acted willfully,

9    knowingly and with the intent to defraud, and

10          Four, the defendant knowingly used, or caused

11   to be used, any means or instruments of interstate

12   commerce in furtherance of the fraudulent conduct.

13          I will now explain each of these elements.

14          The first element the government must prove

15   with respect to the count you are considering is that,

16   in connection with the purchase or sale of the RMBS bond

17   identified in that count, the defendant did one or more

18   of the following:

19          One, employed a device, scheme or artifice to

20   defraud; or

21          Two, made an untrue statement of material fact

22   or omitted to state a material fact which made what was

23   said under the circumstances misleading; or

24          Three, engaged in an act, practice or course

25   of business that operated or would operate as a fraud or

1      deceit upon that purchaser or seller.

2           As used here, a "device, scheme or artifice"

3      is a plan for accomplishing an objective.  The term

4      "fraud" refers to conduct intended to deprive another of

5      money or property by dishonest or deceitful means.  And

6      an "untrue statement" means a statement that was false

7      when made and known to be false by the person making it

8      or causing it to be made.  A statement that is literally

9      true can be deliberately misleading depending on the

10     circumstances in which the statement is made.  If a

11     statement concerns a material matter, the party may have

12     a duty to disclose information in order to avoid

13     committing fraud.

14          The government need not prove that a defendant

15     engaged in all three types of unlawful conduct in order

16     to prove this first element of securities fraud.  Any

17     one of the three types of conduct is sufficient.

18     However, you must be unanimous as to which type of

19     unlawful conduct you find to have been proven beyond a

20     reasonable doubt.  In addition, if you find that the

21     only type of fraudulent conduct the government has

22     proven beyond a reasonable doubt is that the defendant

23     made an untrue material statement, which I will define

24     later, then you must be unanimous as to the particular

25     statement the defendant made that was untrue.

1            The fraudulent or deceitful conduct need not

2    relate to the investment value of the RMBS bond in

3    question.

4            To find that the defendant participated in

5    fraudulent conduct in connection with the purchase or

6    sale of the RMBS bond identified in the count you are

7    considering, you need not find that he directly

8    participated in the purchase or sale.  The "in

9    connection with" requirement is satisfied if you find

10   there was some nexus between the defendant's allegedly

11   fraudulent conduct and the purchase or sale of that RMBS

12   bond.

13           I'm now going to talk with you about the

14   second element.

15           The second element the government must prove

16   with respect to the count you are considering is

17   materiality.  Under the relevant statutes, not every

18   false statement in connection with a purchase or sale of

19   securities is a crime.  Rather, making a false statement

20   in connection with a purchase or sale of securities is

21   criminal only if it concerns a material fact.

22           The word "material" serves to distinguish

23   statements of fact that a reasonable investor likely

24   would view as significantly altering the total mix of

25   available information from statements that would not be

1    given such weight by a reasonable investor.  To be

2    material, a false statement of fact must be of such

3    importance that it could reasonably be expected to cause

4    a reasonable investor to act or not act in some way with

5    respect to the transaction in question.

6         If you find that the government has proven

7    beyond a reasonable doubt that the defendant made an

8    untrue statement of fact in connection with the

9    transaction in question, you must determine whether the

10   untrue statement was material under the circumstances

11   that existed at the time of the transaction.  In order

12   for you to find that a misrepresentation was material,

13   the government must prove beyond a reasonable doubt that

14   there was a substantial likelihood a reasonable investor

15   in the non-agency RMBS market would view the misstated

16   fact as one that significantly altered the total mix of

17   information available to the investor.  In other words,

18   the government must prove that the misstated fact likely

19   would have assumed significance in the deliberations of

20   a reasonable investor.  The government need not prove,

21   however, that a reasonable investor would necessarily

22   have relied on the misrepresentation.

23        For purposes of this case, a "reasonable

24   investor" is an investor in the non-agency RMBS.

25   Accordingly, in determining whether an alleged

1    misstatement was material, you must consider the matter

2    from the standpoint of such a reasonable investor and

3    the full context and circumstances in which RMBS bonds

4    were traded at the time.  To do that, you should

5    consider all the evidence about what such a reasonable

6    investor would consider important when making an

7    investment decision and approach the question of

8    materiality objectively.

9           You must assess whether a false statement was

10   material in light of the norms and practices in the

11   non-agency RMBS market that existed at the time of the

12   transaction and not based on hindsight.

13          That brings us to the third element.

14          The third element the government must prove

15   with respect to the count you are considering is that

16   the defendant acted knowingly, willfully and with the

17   intent to defraud.

18          "Knowingly" means to act voluntarily and

19   deliberately, rather than mistakenly or inadvertently,

20   and not because of ignorance, mistake, accident, or

21   carelessness.

22          "Willfully" means to act with the intent to do

23   something the law forbids; that is to say, with a bad

24   purpose to disobey or disregard the law.  The government

25   does not have to prove that the defendant had the

1    specific intent to violate any particular law, but it

2    must prove that he had an awareness of the general

3    wrongfulness of his conduct.

4            To act with "intent to defraud" means to act

5    with the specific intent to deceive.  A person acts with

6    intent to defraud when he deliberately uses deception to

7    induce another to act to his detriment.  An act is

8    intentional only if it is deliberate and purposeful.  To

9    be intentional, the defendant's conduct must have been

10   the product of his conscious objective rather than the

11   product of mistake.  For purposes of securities fraud,

12   the government need not prove that a defendant intended

13   to cause harm to a victim.  It is enough that he

14   intended to deceive the victim.

15           The question whether the defendant acted

16   knowingly, willfully and with the intent to defraud is a

17   question of fact for you to determine like any other

18   fact question.  This question involves the defendant's

19   state of mind.  Direct proof of a person's state of mind

20   is almost never available.  It would be a rare case

21   where it could be shown that a person wrote or stated

22   that, as of a given time in the past, he committed an

23   act with a particular state of mind.  Such direct proof

24   is not required.

25           State of mind may be proven by circumstantial

1    evidence based upon a person's outward manifestations,

2    his words, his conduct, his acts and all the surrounding

3    circumstances disclosed by the evidence and the rational

4    or logical inferences that may be drawn from them.

5    Circumstantial evidence, if believed, is of no less

6    value than direct evidence.  But, regardless of whether

7    the evidence is circumstantial or direct, the government

8    must prove the essential elements of the crime charged

9    beyond a reasonable doubt.

10           Because an essential element of the offense is

11   intent to defraud, the defendant cannot be convicted if

12   he acted in good faith.  A defendant does not have the

13   burden to prove he acted in good faith.  Rather, the

14   burden is on the government to prove beyond a reasonable

15   doubt that the defendant acted with fraudulent intent.

16           A defendant's honest belief that ultimately no

17   one would lose money or even that everyone would make a

18   profit is not a defense to securities fraud.  If all the

19   essential elements of securities fraud are proven, a

20   defendant's belief that a fraudulent scheme would

21   ultimately turn out to be profitable for the victim does

22   not relieve him of criminal liability.

23           Next I'm going to talk with you about the

24   fourth element.

25           The fourth element the government must prove

1    with respect to the count you are considering is that

2    the defendant knowingly used or caused to be used

3    instruments of communication in interstate commerce in

4    furtherance of the fraudulent conduct.

5              Instruments of communication in interstate

6    commerce include the mails, wires, and electronic

7    communications over the internet such as e-mails, chats

8    and messaging.

9              It is not necessary for the government to

10   prove that the defendant was personally involved in the

11   use of an instrument of communication in interstate

12   commerce.  If the defendant engaged in conduct he knew

13   or reasonably could foresee would naturally and probably

14   result in the communication, then you may find that he

15   is responsible for the communication even though he did

16   not participate in the communication directly.

17             To support a conviction for securities fraud,

18   a use of the mails, interstate wires or internet need

19   not be central to the execution of the fraud.  Indeed,

20   the actual purchase or sale need not be accompanied or

21   accomplished by the use of interstate means of

22   communication.  Moreover, the matter sent through the

23   mails, interstate wires or internet need not contain

24   fraudulent material or anything criminal or

25   objectionable.  However, to prove that a use of

1     interstate means of communication was in furtherance of

2     fraudulent conduct, the government must prove that the

3     use did serve to further or advance in some way the

4     object of the fraudulent conduct.

5              I'm now going to state for you the defendant's

6     theory of defense.

7              The defendant maintains that he is innocent of

8     each and every charged count.

9              The defendant was a trader in the non-agency

10    RMBS market for Cantor Fitzgerald, and he was engaged in

11    principal-to-principal transactions.  Thus, he was

12    acting in his own self-interest and not the interest of

13    any counterparty.  And while the defendant does not have

14    the burden of proof on any issue, he maintains that he

15    did not have an intent to defraud and acted in good

16    faith at all times.

17             With respect to materiality, the defendant

18    maintains that there was not, at the time of the trades

19    at issue in this case, a substantial likelihood a

20    reasonable investor in the non-agency RMBS market would

21    view the misstated facts as one that significantly

22    altered the total mix of information available to the

23    investor.

24             We're about 60 percent through what I was

25    going to cover today, so I'll keep going unless I get an

1    indication that some member of the jury would like to

2    stretch their legs or take a short break.

3                    (No response.)

4              Everybody good to go still?

5              This is Part IV of the instructions, some

6    instructions for your deliberations.

7              First I want to talk with you about evidence.

8              You must consider only the evidence or lack of

9    evidence in deciding this case.  You may, however, draw

10   reasonable inferences from the testimony and other

11   evidence as you feel are justified in the light of

12   common experience.  You may make deductions and reach

13   conclusions that principles of reason and common sense

14   lead you to make from all of the evidence presented.

15             You may recall that there are two kinds of

16   evidence that you may consider.  One is direct evidence.

17   Direct evidence is where a witness testifies to what he

18   or she saw, heard or observed.  In other words, when a

19   witness testifies about what the witness asserts is

20   known to the witness of his or her own knowledge by

21   virtue of his or her own senses -- what the witness

22   claims he or she saw, touched or heard -- that is called

23   direct evidence.

24             The other kind of evidence is indirect or

25   circumstantial evidence.  Circumstantial evidence is the

1    proof of certain circumstances that tends to prove or

2    disprove the presence or lack of certain other facts.

3    To remind you of the example I gave you in the

4    preliminary charge, if you see water on the street

5    outside your window, you can infer that it has rained.

6    On the other hand, there might be other plausible

7    reasons for water being on the street.  The point being

8    made here is that you may infer on the basis of reason

9    and experience and common sense from an established fact

10   the existence or nonexistence of some other relevant

11   fact.

12          Now, an inference is not a suspicion or a

13   guess.  It is reasoned, logical conclusion based on the

14   fact another fact.  There are times when different

15   inferences can be drawn from facts whether proven by

16   direct or circumstantial evidence.  The government asks

17   you to draw one inference while the defendant asks you

18   to draw another.  It is for you to decide what inference

19   you will draw.  The process of drawing inferences from

20   facts in evidence is not a matter of guesswork or

21   speculation.  An inference is a reasonable deduction or

22   conclusion that you, the jury, are permitted to draw,

23   but are not required to draw, from facts that have been

24   established by either direct or circumstantial evidence.

25   In drawing inferences, you should use your common sense.

1          It is a general rule that the law makes no

2     distinction between direct and circumstantial evidence.

3     The law, rather, requires that the jury find the facts

4     from the evidence, including direct and circumstantial

5     evidence, and leaves it to the discretion of the jury to

6     make such findings.

7          Now, the evidence from which you are to decide

8     what the facts are comes in three forms:

9          First, there is the sworn testimony of

10    witnesses, both on direct and cross-examination.

11         Second, there are the exhibits that have been

12    received into the trial record.

13         Third, there is the evidence in the form of

14    stipulations that contain facts which the parties agree

15    are true.  You must accept these facts as true.

16         Now, certain things are not evidence and are

17    is not to be considered as such:

18         First, arguments or statements by lawyers are

19    not evidence.  They are designed and permitted to give

20    the lawyers the opportunity to tell you how they think

21    you should evaluate the evidence.

22         Second, the questions to the witnesses are not

23    evidence.  Any questions or comments by me are not

24    evidence.  Let me also emphasize that a lawyer's

25    question is not evidence.  While you must at times

1    consider a lawyer's question to give content and meaning

2    to the witness's answer, it is the witness's answer that

3    is evidence.  Also, at times, a lawyer may have

4    incorporated into a question a statement which assumed

5    certain facts to be true and asked the witness if the

6    statement was true.  If the witness denies the truth of

7    a statement and there is no evidence in the record

8    proving that the assumed fact is true, then you may not

9    consider the fact to be true simply because it was

10   contained in the lawyer's question.  In short, questions

11   are not evidence, answers are.

12          Third, objections and arguments are not

13   evidence.

14          Fourth, testimony that has been excluded,

15   stricken or that you have been instructed to disregard

16   is not evidence and must be disregarded.  In addition,

17   some testimony and exhibits have been received only for

18   a limited purpose.  Where I have given any limiting

19   instruction about evidence that you heard or saw, you

20   must follow that limiting instruction.  Also, exhibits

21   marked for identification but not admitted as evidence

22   may not be considered as evidence.

23          Fifth, anything you may have seen or heard

24   outside the courtroom is not evidence and must be

25   disregarded entirely.  You are to decide the case solely

1    on the evidence offered and received in the trial.  Of

2    course, you should consider the evidence presented in

3    light of your own common sense and experience, and you

4    may draw reasonable inferences from evidence.  However,

5    your verdict must be based solely on the evidence

6    presented in this courtroom.

7           I remind you that you must completely

8    disregard any media reports on this matter or any

9    similar matter.  Indeed, it would be unfair to consider

10   such reports since they are not evidence and the parties

11   have no opportunity of challenging their accuracy

12   otherwise explaining them away.  In short, it would be a

13   violation of your oath as jurors to allow yourselves to

14   be influenced in any manner by such publicity.

15          Next I want to talk with you about the fact

16   that I've made rulings as to evidence.

17          From time to time in the course of this trial

18   I have ruled on the admissibility of certain evidence.

19   It is imperative that you understand that any evidence

20   as to which an objection was sustained by the Court, and

21   any evidence stricken by the Court, must be entirely

22   disregarded.  You should have no concern with the

23   reasons for any rulings I have made and you are not to

24   draw any inferences from my rulings.  Issues concerning

25   the admissibility of evidence are questions of law for

1    the Court to decide.

2              In admitting evidence as to which an objection

3    has been made, the Court does not determine what weight

4    should be given to the evidence in question or pass on

5    the credibility of the evidence.  These are matters for

6    you to decide.

7              You must disregard any evidence that has been

8    ruled out of the case by the Court, and you must refrain

9    from speculation about any communications between the

10   lawyers and the Court that were held out of your

11   presence and hearing.

12             Now, it is the duty of the attorney on each

13   side of a case to object when the other side offers

14   testimony or other evidence that the attorney believes

15   is not properly admissible.  Counsel also have the right

16   and duty to ask the Court to make rulings of law and to

17   request conferences at the bench out of the hearing of

18   the jury.  All those questions of law must be decided by

19   the Court.  You must not show any bias against an

20   attorney or his or her client because the attorney

21   objected to the admissibility of evidence, or asked for

22   a conference out of the hearing of the jury, or asked

23   the Court for a ruling on the law.

24             Next I want to talk with you about trades that

25   are not in the indictment.

1          The government introduced evidence concerning

2     conduct related to trades in addition to those that are

3     the subject of the indictment.  This other conduct is

4     not the conduct charged in the indictment.  Rather, the

5     government contends that this other conduct supports a

6     conclusion that the defendant engaged in the charged

7     conduct.

8          In that connection, I instruct you that the

9     defendant is not on trial for engaging in this alleged

10    other conduct.  Accordingly, evidence of alleged other

11    conduct is not a substitute for proof that the defendant

12    committed the charged offenses.  Nor may you consider

13    such evidence as proof that the defendant has a criminal

14    personality or bad character.  The evidence of the

15    alleged other conduct was admitted for much more limited

16    purposes, and, if you choose to credit this evidence,

17    you must consider it only for those limited purposes.

18         The second element of the offense requires

19    that the statement or conduct at issue related to a fact

20    that would be material to a reasonable investor in the

21    non-agency RMBS market.  You may consider evidence with

22    respect to this alleged other conduct with respect to

23    the second element of the offense.

24         With respect to the third element of the

25    offense, if you determine that the defendant committed

1      acts charged in the indictment and committed some or all

2      of the alleged other conduct as well, then you may, but

3      you need not, draw an inference that in doing the acts

4      charged in the indictment the defendant acted knowingly,

5      willfully and with the intent to defraud.

6              In addition, you may consider evidence with

7      respect to the alleged other conduct with respect to the

8      issue of whether the defendant had a motive to commit

9      the charged offenses.

10             Evidence with respect to the alleged other

11     conduct may not be considered by you for any other

12     purpose.  Specifically, you may not use this evidence to

13     conclude that because the defendant engaged in the other

14     alleged conduct he must also have committed the acts

15     charged in the indictment.

16             Now I want to talk with you about the fact

17     that a principal is not an agent.

18             A person is an agent if he is authorized to

19     act on behalf of another who's known as a principal.  An

20     agent owes certain duties to his principal.  I instruct

21     you that, as a matter of law, the defendant was at all

22     times acting as a principal on behalf of

23     Cantor Fitzgerald and not as an agent of the

24     counterparties.  When the defendant bought an RMBS from

25     a counterparty, he was not the agent of that seller, and

1    when the defendant sold an RMBS bond to a counterparty,

2    he was not the agent of that buyer.  As a principal, the

3    defendant owed no duty of loyalty to the counterparties

4    and was acting in his own self-interest, not the

5    interest of the counterparty.

6              However, I instruct you it is not an element

7    of the offense charged that the defendant was an agent

8    or had a fiduciary duty.  Even someone who's not an

9    agent and does not have a fiduciary duty can be guilty

10   of securities fraud.

11             Next I want to talk with you about use of

12   particular witnesses or investigative techniques.

13             You are instructed that there is no legal

14   requirement that the government use any specific

15   investigative techniques to prove its case.  Law

16   enforcement techniques are not your concern, nor is your

17   concern if and why certain persons have not been

18   arrested.  Your concern is to determine whether or not,

19   based upon all the evidence in the case, the defendant

20   has been proven guilty beyond a reasonable doubt.

21             In this regard I also charge you that all

22   persons who may have been present at any time or place

23   mentioned in the case, or who may appear to have some

24   knowledge of the issues in this case, need not be called

25   as witnesses, nor does the law require that all things

1    mentioned during the course of the trial be produced as

2    exhibits.

3         Next I'm going to talk with you about

4    credibility of witnesses.

5         In deciding the facts of this case you will

6    have to evaluate the credibility of the witnesses.  You,

7    as jurors, are the sole judges as to the credibility of

8    the witnesses and the weight that their testimony

9    deserves.  You may accept as true everything a witness

10   says, only part of it, or none of it.  In deciding what

11   part of a witness's testimony to believe you may

12   consider a number of factors, including the following:

13        One, the witness's ability to see or hear or

14   know the things to which the witness testified.

15        Two, the quality of the witness's memory.

16        Three, any bias the witness may have.

17        Four, the witness's manner while testifying.

18        Five, whether the witness was contradicted by

19   anything the witness said or wrote before trial or by

20   other evidence.

21        And six, how reasonable was the witness's

22   testimony when considered in light of other evidence

23   which you believe?

24        Now, inconsistencies or discrepancies in the

25   testimony of a witness or between the testimony of

1    different witnesses may or may not cause you to

2    discredit such testimony.  Two or more persons

3    witnessing an incident or a transaction may see or hear

4    it differently.  Innocent misrecollection, like failure

5    of recollection, is not an uncommon experience.  In

6    weighing the effect of a discrepancy, however, you may

7    wish to consider whether it pertains to a matter of

8    importance or an unimportant detail and whether the

9    discrepancy results from innocent error or intentional

10   falsehood.

11           In evaluating the credibility of the witnesses

12   you should take into account any evidence that the

13   witness who testified may benefit in some way from the

14   outcome of this case.  Such an interest may sway the

15   witness to testify in a way that advances his or her own

16   interest.  Therefore, if you find that any witness whose

17   testimony you are considering may have an interest in

18   the outcome of this trial, then you should bear that

19   factor in mind when evaluating the credibility of the

20   witness's testimony.

21           This is not suggest that a witness who has an

22   interest in the outcome of this case will testify

23   falsely.  It is for you to decide to what extent, if at

24   all, the witnesses interest has affected or colored the

25   witness's testimony.

1          Now I'm going to talk with you about the

2     concept of impeachment of a witness.

3          A witness may be discredited or impeached by

4     contradictory evidence by showing that the witness

5     testifies falsely concerning a material matter or by

6     evidence that at some other time the witness had said or

7     done something, or has failed to say or do something,

8     which is inconsistent with the witness's present

9     testimony.  If you believe that any witness has been so

10    impeached, then it is your exclusive decision to give

11    the testimony of that witness such credibility or

12    weight, if any, as you think it deserves.

13         In determining the weight to give to the

14    testimony of a witness you should ask yourself whether

15    there was evidence tending to prove that the witness

16    testified falsely about some important fact, or whether

17    there was evidence that at some other time the witness

18    said or did something, or failed to say or do something,

19    that was different from the testimony the witness gave

20    at the trial.

21         Where a witness testified inaccurately and you

22    do not think that the inaccuracy was consciously

23    dishonest, you should bear this inaccuracy in mind and

24    scrutinize the whole testimony of the witness.  If,

25    however, you conclude that a witness has not only

testified inaccurately, but that the witness has done so
intentionally or willfully, this casts a very serious
doubt on all of the witness's testimony and you are
entitled to conclude that you cannot accept any of the
witness's testimony.  Whether you should disregard all
the witness's testimony or believe some parts of it is
for you to decide.

You should remember that a simple mistake by a
witness does not necessarily mean that the witness was
not telling the truth.  People may tend to forget some
things or remember other things inaccurately.  If a
witness has made a misstatement, you must consider
whether it was simply an innocent lapse of memory or an
intentional falsehood, and that may depend upon whether
it concerns an important fact or an unimportant detail.

I also want to talk with you about prior
inconsistent statements.

The testimony of a witness may be discredited
or impeached by showing that the witness previously made
statements that are inconsistent with the witness's
testimony in court.  It is up to you to determine what
credibility, if any, you will give a witness who has
been impeached by an earlier inconsistent statement.

Next I want to talk with you about
uncontradicted testimony.

1              You are not required to accept testimony, even

2      though the testimony is uncontradicted and the witness

3      is not impeached.  You may decide, because of the

4      witness's bearing and demeanor, or because of the

5      inherent improbability of the witness's testimony, or

6      for other proper reasons sufficient to you that such

7      testimony is not worthy of belief.

8              The last thing I want to address in this

9      section is the defendant's right not to testify.

10             The defendant did not testify in this case.

11     Under our Constitution a defendant has no obligation to

12     testify or to present any other evidence because it is

13     the prosecution's burden to prove his guilt beyond a

14     reasonable doubt.  A defendant is never required to

15     prove that he is innocent.

16             You may attach no significance to the fact

17     that the defendant did not testify.  No adverse

18     inference may be drawn by you because the defendant did

19     not take the witness stand.  You may not consider this

20     against the defendant in any way in your deliberations

21     in the jury room.  Indeed, it would be a violation of

22     your duty as jurors if you were to draw an inference

23     against the defendant or penalize him in any way because

24     he exercised his constitutional right not to testify.

25             That's the end of the first four parts of the

1    instructions.  We'll finished in time for you to get

2    plenty of rest for tomorrow.

3              I remind you of two things:

4              I've been giving you directions through out

5    the trial.

6              Secondly, that you will be coming in at 9:30,

7    hearing the arguments of counsel.  I expect that will go

8    past our 12:00 lunch time.  Then I will give you final

9    instructions with respect to procedures.

10              Also, I remind you that you will get a copy of

11    the instructions that I just gave you, so if you didn't

12    get to write down every word, don't worry.

13              With that, I'd like to thank you for your hard

14    work throughout the trial and today and we'll bring you

15    in tomorrow morning at 9:30.

16                  (Whereupon, the jury left the courtroom.)

17              THE COURT:  Please be seated everyone.

18              Let me point out a few changes I made on the

19    fly as I was reading through.  I always find something.

20              So you may have noticed that at the very

21    beginning -- counsel have their copy of the charge

22    handy?  Is somebody looking?

23              MR. SULLIVAN:  Yes.

24              THE COURT:  At the very beginning I just

25    substituted the first clause.  I put in "at this time"

1    since they hadn't heard the arguments of counsel.

2           And then in the second paragraph at the end

3    after "copy of these instructions" I put "with you."

4           And then on page 13, three lines from the

5    bottom, "identified," I put, "in the count you are

6    considering."

7           And then page 17, the last full line, I added

8    "that."

9           And then on page 20, the next to last line,

10   the misstated facts, I added "as ones."  Since I made

11   facts plural, I made ones plural.

12          For my purposes, at least, the objections that

13   were made with respect to the charge that were discussed

14   this morning are preserved, but sometimes counsel like

15   to just list them just so they're clear.  For my

16   purposes they are preserved.

17          MR. SULLIVAN:  For our purposes as well, Your

18   Honor.

19          THE COURT:  Okay.

20          So –– yes, Mr. Francis.

21          MR. FRANCIS:  We just want to make sure that

22   the defense is going to file on the docket the documents

23   they submitted electronically to the law clerk.

24          THE COURT:  I'm sure they'll remember to do

25   that.

1          And then we just need to make sure we've gone

2     through all the exhibits with the courtroom deputy.  I

3     think she has to meet with our IT person to go through

4     the JERS system.  It might be nice if you all could look

5     at that, just to double-check to make sure that

6     everybody's on the same page.  I don't look at that

7     myself.  I'd ask counsel to designate someone to do it.

8     It should match up with what's been admitted.

9          And I'm assuming, since the jury is coming in

10    at 9:30 and I've given each side up to 90 minutes, that

11    the government will go, we'll be taking a break for the

12    jury and the court reporter.  The defense will get

13    started, but probably not exhaust all of its time before

14    the lunch break, so have some carryover after lunch, and

15    then the government will have its rebuttal and then a

16    short break and I'll finish the charge to the jury.

17         During that break I will ask counsel to confer

18    with the courtroom deputy and my law clerk to make sure

19    we all have the same information as to who the two

20    alternates are, assuming everybody comes in tomorrow.

21         Anything else?

22         MR. SULLIVAN:  Your Honor, I nearly forgot.

23    At the close of our case, we renew our motion for

24    judgment of acquittal.

25         THE COURT:  Noted.

1        MR. SULLIVAN:  Very well.

2        THE COURT:  And is the podium set up in a way

3    that's –– I forgot if I mentioned to you we have a

4    portable podium that has a –– are the jurors gone?  When

5    we break and the jurors have gone, Hannah can show you.

6    Right over here we have a podium that sort of tilts.  It

7    doesn't have a microphone on it.  If that would be

8    something better for you to use, you can use that.  We

9    can bring it in.  Once they're gone you can look through

10   the door and see that.

11       If you want any easels or anything like that,

12   they don't have to be in a position so I can see them in

13   case you're using demonstratives.

14       I'm trying to think if I neglected anything

15   else.

16       MR. LEONTIRE:  At what point will we know who

17   the alternates are?

18       THE COURT:  You know now.  I like to forget.

19   If you look at your list from jury selection when we

20   went through and noted them.

21       If it's helpful for you I'll have my law clerk

22   show you my chart.  I put Js in red for the 12 and then

23   I put A1, A2, A3, A4.  I didn't keep track of who's out,

24   but the last two people there will be the Alternate 1

25   and 2.

1          MR. LEONTIRE:  If we could get that.

2          THE COURT:  Sure.  You can look at my chart.

3          MR. LEONTIRE:  Thank you.

4          THE COURT:  I like to not know while I'm

5     giving the charge because I find it distracting.  There

6     was one time I knew someone was an alternate and they

7     were writing down everything I said.

8          MR. LEONTIRE:  Sometimes helpful when you're

9     making that.

10          THE COURT:  You have that information

11     somewhere in the records.  I think the government knows.

12          MR. FRANCIS:  They do.  I don't know if I have

13     it in my head.

14          THE COURT:  It doesn't matter to me until they

15     go into the jury room because something could happen at

16     the last minute.  A juror throws a water bottle at one

17     of you, I'm going to have a concern.

18          I think that's all I have.

19          If you have any questions this evening, just

20     send an e-mail and we'll get back to you.

21          MR. SULLIVAN:  Very well, Your Honor.

22          THE COURT:  We'll bring the jury in at -- are

23     people going to be using the equipment during their

24     closings?

25          MR. FRANCIS:  Yes, Your Honor.

1          THE COURT:  You all have that mastered if

2   you're going to use them.

3          MR. FRANCIS:  Correct.

4          MR. SULLIVAN:  We're going to use them.

5          THE COURT:  Don't look for any help from me.

6          Have a good evening.

7              (Proceedings adjourned at 3:20 PM.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3            UNITED STATES V DAVID DEMOS

4                  3:16CR00220(AWT)

5

6

7            I, Corinna F. Thompson, RPR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages, pages 837 – 885, are a true and

11   accurate transcription of my shorthand notes taken in

12   the aforementioned matter on April 30, 2018, to the best

13   of my skill and ability.

14

15

16

17

18            /s/_____

19            CORINNA F. THOMPSON, RPR
              Official Court Reporter
20            450 Main Street, Room #225
              Hartford, Connecticut 06103
21               (860) 547-0580

22

23

24

25